**Exhibit 1 (Part 1 of 2)**

**Declaration of Theodore Whitford
(Vice Chairman, Chippewa Cree Tribe)
With Attachments (Exhibits A-C)**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA

**Richmond Division**

|  |  |
|---|---|
| DARLENE GIBBS, STEPHANIE EDWARDS, LULA WILLIAMS, PATRICK INSCHO, and LAWRENCE MWETHUKU, *on behalf of themselves and all individuals similarly situated,* | Civil Action No. 3:17-cv-495-MHL |
| Plaintiffs, | **DECLARATION OF THEODORE WHITFORD** |
| vs. |  |
| PLAIN GREEN, LLC and GREAT PLAINS LENDING, LLC, |  |
| Defendants. |  |

**DECLARATION OF VICE-CHAIRMAN THEODORE WHITFORD**

I, Theodore Whitford, hereby declare the following based on first-hand knowledge:

1.      I serve as Vice-Chairman of the Chippewa Cree Indians of the Rocky Boy's Reservation (the "Tribe").

2.      The Tribe is a federally-recognized Indian tribe. *See* Federal Register, List of "Indian Entities Recognized and Eligible to Receive Services from the United States Bureau of Indian Affairs," a true and correct copy of which is attached hereto as <u>Exhibit A</u>. The Tribe's reservation is located in the north central region of present-day Montana (the "Reservation").

3.      The Tribe is an independent sovereign nation within the United States with a government that provides jobs, and infrastructure, and social and educational services, among other services, to its nearly 7,000 members, 3,500 of whom live on the Reservation.

1

4. Although the Tribe's inherent sovereignty long predates the United States, the Tribe is organized under a Constitution and Bylaws adopted by the members of the Tribe pursuant to the Indian Reorganization Act of 1934, ch. 576, 48 Stat. 984 (25 U.S.C. § 461 *et seq.*)(the "Constitution"). A true and correct copy of the Constitution is attached hereto as Exhibit B.

5. Under Article VI of the Constitution, the Chippewa Cree Business Committee (the "Business Committee") is the governing body for the Tribe and, in that capacity, is vested with the authority to enact laws and ordinances to promote the general welfare of the Tribe.

6. The Chippewa Cree Tribe Limited Liability Company Act (the "LLC Act") was adopted by the Business Committee to provide a structure and process for forming and operating limited liability companies under Tribal law. A true and accurate copy of the current version of the LLC Act is attached hereto as Exhibit C.

7. Plain Green was duly organized under the LLC Act, and a true and accurate copy of Plain Green's Articles of Organization is attached hereto as Exhibit D.

8. The Business Committee has amended Plain Green's Articles of Organization three times since Plaint Green's establishment in 2010, most recently in 2015 by Resolution No. 39-15 (April 13, 2015), in 2016 by Resolution No. 79-16 (August 11, 2016), and 2016 by Resolution No. 109-16 (October 16, 2016), which are collectively attached hereto as Exhibit E.

9. The Tribe is the sole member of Plain Green LLC, which is operated as a manager-managed LLC, and the Tribe holds the exclusive authority to appoint and remove the manager.

10. Plain Green operations are located on the Reservation and it controls and operates its own platforms and its loan products; it markets, underwrites, funds, processes, and

collects on all Plain Green loans to its customers. In short, Plain Green alone controls everything about its business cradle-to-grave from the Tribe's Reservation.

11.　The Tribe formed Plain Green to serve the social, economic, educational, and health needs of the Tribe; to generate Tribal revenues for governmental programs and projects; to enhance the Tribe's economic self-sufficiency and self-determination; and to provide positive, long-term social, environmental and economic benefits to Tribal members by enhancing the Tribe's business undertakings and prospects. Ex. D.

12.　Through authorization and adoption of Plain Green's Articles of Organization, the Tribe conferred upon Plain Green all of the Tribe's right, privileges and federal immunities, including sovereign immunity, to the same extent that the Tribe would have such rights, privileges, and immunities, it if engaged in the activities undertaken by Plain Green. Ex. D.

13.　The sole purpose of Plain Green is to be an "economic arm of the Tribe" and to have profits inure to the benefit of the Tribe and its tribal members on and off the Reservation.

14.　Plain Green serves a critical role in the Tribe's efforts to generate revenues as a means of promoting increased economic independence and self-determination. The Tribe utilizes revenue from Plain Green for a variety of Tribal initiatives aimed at promoting the general welfare of the Tribe and its members, including development of a Tribal health clinic; funding Tribal community events, such as ceremonies and pow-wows; funding school supplies and medical equipment for Tribal members; and funding subsistence distributions to Tribal members, among other Tribal initiatives. Without revenues from Plain Green, it would be much more difficult for the Tribe to meet the needs of its members and provide them with necessary governmental services, including law enforcement, fire, public utility, housing, and other fundamental welfare services.

15.     As "an arm of the Tribe" engaged in consumer financial services, Plain Green is subject to regulation under the Chippewa Cree Tribal Lending and Regulatory Code. The Tribal Lending and Regulatory Code regulates a variety of Plain Green's activities, including extension of credit, application of usury and interest rates, and required loan agreement disclosures, among other topics. A true and accurate copy of the Tribal Lending and Regulatory Code is attached hereto as Exhibit F.

16.     Plain Green is also subject to regulatory oversight by the Tribal Consumer Protection Bureau ("TCPB"), which is an independent governmental regulatory subdivision of the Tribe. Ex. F at Chapter 4. The TCPB conducts quarterly compliance audits of Plain Green in additional to an annual on-site review. *See id.*, §§ 10-4-108, 10-4-111.

17.     As "an arm of the Tribe" that engages in consumer financial services, Plain Green is subject to the licensure requirements outlined in Chapter 5 of the Tribal Lending and Regulatory Code. Plain Green maintains a current license granted by the TCPB under the terms of the Tribal Lending and Regulatory Code. A true and accurate copy of the license is attached hereto as Exhibit G.

I declare, under penalty of perjury of the laws of the United States and the Tribe, that the foregoing is true and correct as executed on this _18th_ day of September, 2017.

Theodore Whitford

# EXHIBIT A

**SUPPLEMENTARY INFORMATION:** In accordance with the December 12, 1988 court order in *National Coalition for the Homeless* v. *Veterans Administration,* No. 88–2503–OG (D.D.C.), HUD publishes a Notice, on a weekly basis, identifying unutilized, underutilized, excess and surplus Federal buildings and real property that HUD has reviewed for suitability for use to assist the homeless. Today's Notice is for the purpose of announcing that no additional properties have been determined suitable or unsuitable this week.

Dated: January 21, 2016.

**Brian P. Fitzmaurice,**

*Director, Division of Community Assistance, Office of Special Needs Assistance Programs.*

[FR Doc. 2016–01513 Filed 1–28–16; 8:45 am]

**BILLING CODE 4210–67–P**

# DEPARTMENT OF THE INTERIOR

## Bureau of Indian Affairs

**[167 A2100DD/AAKC001030/ A0A501010.999900]**

## Renewal of Agency Information Collection for Tribal Self-Governance Program

**AGENCY:** Bureau of Indian Affairs, Interior.

**ACTION:** Notice of submission to OMB.

**SUMMARY:** In compliance with the Paperwork Reduction Act of 1995, the Bureau of Indian Affairs (BIA) is submitting to the Office of Management and Budget (OMB) a request for approval for the collection of information for Tribal Self-Governance Program authorized by OMB Control Number 1076–0143. This information collection expires January 31, 2016.

**DATES:** Interested persons are invited to submit comments on or before February 29, 2016.

**ADDRESSES:** You may submit comments on the information collection to the Desk Officer for the Department of the Interior at the Office of Management and Budget, by facsimile to (202) 395–5806 or you may send an email to: *OIRA_ Submission@omb.eop.gov.* Please send a copy of your comments to: Sharee M. Freeman, Director, Office of Self-Governance, 1951 Constitution Avenue NW., Mail Stop 355–G SIB, Washington, DC 20240; telephone: (202) 219–0240, email: *Sharee.Freeman@bia.gov.* Please be sure to include the applicable OMB Control Number in the subject line of your comment.

**FOR FURTHER INFORMATION CONTACT:** Sharee Freeman, (202) 219–0240. You may review the information collection request online at *http:// www.reginfo.gov.* Follow the instructions to review Department of the Interior collections under review by OMB.

**SUPPLEMENTARY INFORMATION:**

## I. Abstract

The Office of Self-Governance is seeking renewal of the approval for information collection Tribal Self-Governance Program, as required by the Paperwork Reduction Act of 1995. The information collected will be used to establish requirements for entry into the pool of qualified applicants for Self-Governance and to meet reporting requirements of the Tribal Self-Governance Act.

## II. Request for Comments

On October 27, 2015, BIA published a notice announcing the renewal of this information collection and provided a 60-day comment period in the **Federal Register** (80 FR 65796). There were no comments received in response to this notice.

The BIA requests your comments on this collection concerning: (1) The necessity of this information collection for the proper performance of the functions of the agency, including whether the information will have practical utility; (2) The accuracy of the agency's estimate of the burden (hours and cost) of the collection of information, including the validity of the methodology and assumptions used; (3) Ways we could enhance the quality, utility, and clarity of the information to be collected; and (4) Ways we could minimize the burden of the collection of the information on the respondents.

Please note that an agency may not conduct or sponsor, and an individual need not respond to, a collection of information unless it has a valid OMB Control Number.

It is our policy to make all comments available to the public for review at the location listed in the **ADDRESSES** section. Before including your address, phone number, email address or other personal identifying information in your comment, you should be aware that your entire comment—including your personal identifying information—may be made publicly available at any time. While you can ask us in your comment to withhold your personal identifying information from public review, we cannot guarantee that we will be able to do so.

## III. Data

*OMB Control Number:* 1076–0143.

*Title:* Tribal Self-Governance program, 25 CFR part 1000.

*Brief Description of Collection:* The Self-Governance program is authorized by the Tribal Self-Governance Act of 1994, Public Law 103–413 (the Act), as amended. Indian Tribes interested in entering into Self-Governance must submit certain information as required by the Act. In addition, those Tribes and Tribal consortia that have entered into Self-Governance funding agreements will be requested to submit certain information as described in 25 CFR part 1000. This information will be used to justify a budget request submission on their behalf and to comport with section 405 of the Act that calls for the Secretary to submit an annual report to the Congress.

*Type of Review:* Extension without change of currently approved collection.

*Respondents:* Federally recognized Indian Tribes and Tribal consortia participating in or wishing to enter into Tribal Self-Governance.

*Number of Respondents:* 75.

*Number of Responses:* 84.

*Frequency of Response:* On occasion or annually.

*Obligation to Respond:* Responses are required to obtain or retain a benefit or are voluntary, depending upon the part of the program being addressed.

*Estimated Time per Response:* Completion times vary from 30 minutes to 400 hours, with an average of approximately 43 hours.

*Estimated Total Annual Hour Burden:* 4,443 hours.

*Estimated Total Annual Non-Hour Dollar Cost:* $10,500.

**Elizabeth K. Appel,**

*Director, Office of Regulatory Affairs and Collaborative Action—Indian Affairs.*

[FR Doc. 2016–01700 Filed 1–28–16; 8:45 am]

**BILLING CODE 4337–15–P**

# DEPARTMENT OF THE INTERIOR

## Bureau of Indian Affairs

**[167 A2100DD/AAKC001030/ A0A501010.999900]**

## Indian Entities Recognized and Eligible To Receive Services From the United States Bureau of Indian Affairs

**AGENCY:** Bureau of Indian Affairs, Interior.

**ACTION:** Notice.

**SUMMARY:** This notice publishes the current list of 566 Tribal entities recognized and eligible for funding and services from the Bureau of Indian Affairs (BIA) by virtue of their status as Indian Tribes. The list is updated from

Ex. A
PG - Motion to Dismiss

000001

the notice published on January 14, 2015.

**FOR FURTHER INFORMATION CONTACT:**
Laurel Iron Cloud, Bureau of Indian Affairs, Division of Tribal Government Services, Mail Stop 4513–MIB, 1849 C Street NW., Washington, DC 20240. Telephone number: (202) 513–7641.

**SUPPLEMENTARY INFORMATION:** This notice is published pursuant to Section 104 of the Act of November 2, 1994 (Pub. L. 103–454; 108 Stat. 4791, 4792), and in exercise of authority delegated to the Assistant Secretary—Indian Affairs under 25 U.S.C. 2 and 9 and 209 DM 8.

Published below is a list of federally acknowledged Tribes in the contiguous 48 states and Alaska.

Amendments to the list include name changes and name corrections. To aid in identifying Tribal name changes and corrections, the Tribe's previously listed or former name is included in parentheses after the correct current Tribal name. We will continue to list the Tribe's former or previously listed name for several years before dropping the former or previously listed name from the list.

The listed Indian entities are acknowledged to have the immunities and privileges available to federally recognized Indian Tribes by virtue of their government-to-government relationship with the United States as well as the responsibilities, powers, limitations, and obligations of such Tribes. We have continued the practice of listing the Alaska Native entities separately solely for the purpose of facilitating identification of them and reference to them given the large number of complex Native names.

Dated: January 27, 2016.

**Lawrence S. Roberts,**

*Acting Assistant Secretary—Indian Affairs.*

**Indian Tribal Entities Within the Contiguous 48 States Recognized and Eligible To Receive Services From The United States Bureau of Indian Affairs**

Absentee-Shawnee Tribe of Indians of Oklahoma
Agua Caliente Band of Cahuilla Indians of the Agua Caliente Indian Reservation, California
Ak-Chin Indian Community (previously listed as the Ak Chin Indian Community of the Maricopa (Ak Chin) Indian Reservation, Arizona)
Alabama-Coushatta Tribe of Texas (previously listed as the Alabama-Coushatta Tribes of Texas)
Alabama-Quassarte Tribal Town
Alturas Indian Rancheria, California
Apache Tribe of Oklahoma
Arapaho Tribe of the Wind River Reservation, Wyoming

Aroostook Band of Micmacs (previously listed as the Aroostook Band of Micmac Indians)
Assiniboine and Sioux Tribes of the Fort Peck Indian Reservation, Montana
Augustine Band of Cahuilla Indians, California (previously listed as the Augustine Band of Cahuilla Mission Indians of the Augustine Reservation)
Bad River Band of the Lake Superior Tribe of Chippewa Indians of the Bad River Reservation, Wisconsin
Bay Mills Indian Community, Michigan
Bear River Band of the Rohnerville Rancheria, California
Berry Creek Rancheria of Maidu Indians of California
Big Lagoon Rancheria, California
Big Pine Paiute Tribe of the Owens Valley (previously listed as the Big Pine Band of Owens Valley Paiute Shoshone Indians of the Big Pine Reservation, California)
Big Sandy Rancheria of Western Mono Indians of California (previously listed as the Big Sandy Rancheria of Mono Indians of California)
Big Valley Band of Pomo Indians of the Big Valley Rancheria, California
Bishop Paiute Tribe (previously listed as the Paiute-Shoshone Indians of the Bishop Community of the Bishop Colony, California)
Blackfeet Tribe of the Blackfeet Indian Reservation of Montana
Blue Lake Rancheria, California
Bridgeport Indian Colony (previously listed as the Bridgeport Paiute Indian Colony of California)
Buena Vista Rancheria of Me-Wuk Indians of California
Burns Paiute Tribe (previously listed as the Burns Paiute Tribe of the Burns Paiute Indian Colony of Oregon)
Cabazon Band of Mission Indians, California
Cachil DeHe Band of Wintun Indians of the Colusa Indian Community of the Colusa Rancheria, California
Caddo Nation of Oklahoma
Cahto Tribe of the Laytonville Rancheria
Cahuilla Band of Indians (previously listed as the Cahuilla Band of Mission Indians of the Cahuilla Reservation, California)
California Valley Miwok Tribe, California
Campo Band of Diegueno Mission Indians of the Campo Indian Reservation, California
Capitan Grande Band of Diegueno Mission Indians of California: (Barona Group of Capitan Grande Band of Mission Indians of the Barona Reservation, California; Viejas (Baron Long) Group of Capitan Grande Band of Mission Indians of the Viejas Reservation, California)
Catawba Indian Nation (aka Catawba Tribe of South Carolina)

Cayuga Nation
Cedarville Rancheria, California
Chemehuevi Indian Tribe of the Chemehuevi Reservation, California
Cher-Ae Heights Indian Community of the Trinidad Rancheria, California
Cherokee Nation
Cheyenne and Arapaho Tribes, Oklahoma (previously listed as the Cheyenne-Arapaho Tribes of Oklahoma)
Cheyenne River Sioux Tribe of the Cheyenne River Reservation, South Dakota
Chicken Ranch Rancheria of Me-Wuk Indians of California
Chippewa Cree Indians of the Rocky Boy's Reservation, Montana (previously listed as the Chippewa-Cree Indians of the Rocky Boy's Reservation, Montana)
Chitimacha Tribe of Louisiana
Citizen Potawatomi Nation, Oklahoma
Cloverdale Rancheria of Pomo Indians of California
Cocopah Tribe of Arizona
Coeur D'Alene Tribe (previously listed as the Coeur D'Alene Tribe of the Coeur D'Alene Reservation, Idaho)
Cold Springs Rancheria of Mono Indians of California
Colorado River Indian Tribes of the Colorado River Indian Reservation, Arizona and California
Comanche Nation, Oklahoma
Confederated Salish and Kootenai Tribes of the Flathead Reservation
Confederated Tribes and Bands of the Yakama Nation
Confederated Tribes of Siletz Indians of Oregon (previously listed as the Confederated Tribes of the Siletz Reservation)
Confederated Tribes of the Chehalis Reservation
Confederated Tribes of the Colville Reservation
Confederated Tribes of the Coos, Lower Umpqua and Siuslaw Indians
Confederated Tribes of the Goshute Reservation, Nevada and Utah
Confederated Tribes of the Grand Ronde Community of Oregon
Confederated Tribes of the Umatilla Indian Reservation (previously listed as the Confederated Tribes of the Umatilla Reservation, Oregon)
Confederated Tribes of the Warm Springs Reservation of Oregon
Coquille Indian Tribe (previously listed as the Coquille Tribe of Oregon)
Cortina Indian Rancheria (previously listed as the Cortina Indian Rancheria of Wintun Indians of California)
Coushatta Tribe of Louisiana
Cow Creek Band of Umpqua Tribe of Indians (previously listed as the Cow Creek Band of Umpqua Indians of Oregon)

Cowlitz Indian Tribe
Coyote Valley Band of Pomo Indians of California
Crow Creek Sioux Tribe of the Crow Creek Reservation, South Dakota
Crow Tribe of Montana
Death Valley Timbi-sha Shoshone Tribe (previously listed as the Death Valley Timbi-Sha Shoshone Band of California)
Delaware Nation, Oklahoma
Delaware Tribe of Indians
Dry Creek Rancheria Band of Pomo Indians, California (previously listed as the Dry Creek Rancheria of Pomo Indians of California)
Duckwater Shoshone Tribe of the Duckwater Reservation, Nevada
Eastern Band of Cherokee Indians
Eastern Shawnee Tribe of Oklahoma
Elem Indian Colony of Pomo Indians of the Sulphur Bank Rancheria, California
Elk Valley Rancheria, California
Ely Shoshone Tribe of Nevada
Enterprise Rancheria of Maidu Indians of California
Ewiiaapaayp Band of Kumeyaay Indians, California
Federated Indians of Graton Rancheria, California
Flandreau Santee Sioux Tribe of South Dakota
Forest County Potawatomi Community, Wisconsin
Fort Belknap Indian Community of the Fort Belknap Reservation of Montana
Fort Bidwell Indian Community of the Fort Bidwell Reservation of California
Fort Independence Indian Community of Paiute Indians of the Fort Independence Reservation, California
Fort McDermitt Paiute and Shoshone Tribes of the Fort McDermitt Indian Reservation, Nevada and Oregon
Fort McDowell Yavapai Nation, Arizona
Fort Mojave Indian Tribe of Arizona, California & Nevada
Fort Sill Apache Tribe of Oklahoma
Gila River Indian Community of the Gila River Indian Reservation, Arizona
Grand Traverse Band of Ottawa and Chippewa Indians, Michigan
Greenville Rancheria (previously listed as the Greenville Rancheria of Maidu Indians of California)
Grindstone Indian Rancheria of Wintun-Wailaki Indians of California
Guidiville Rancheria of California
Habematolel Pomo of Upper Lake, California
Hannahville Indian Community, Michigan
Havasupai Tribe of the Havasupai Reservation, Arizona
Ho-Chunk Nation of Wisconsin
Hoh Indian Tribe (previously listed as the Hoh Indian Tribe of the Hoh Indian Reservation, Washington)

Hoopa Valley Tribe, California
Hopi Tribe of Arizona
Hopland Band of Pomo Indians, California (formerly Hopland Band of Pomo Indians of the Hopland Rancheria, California)
Houlton Band of Maliseet Indians
Hualapai Indian Tribe of the Hualapai Indian Reservation, Arizona
Iipay Nation of Santa Ysabel, California (previously listed as the Santa Ysabel Band of Diegueno Mission Indians of the Santa Ysabel Reservation)
Inaja Band of Diegueno Mission Indians of the Inaja and Cosmit Reservation, California
Ione Band of Miwok Indians of California
Iowa Tribe of Kansas and Nebraska
Iowa Tribe of Oklahoma
Jackson Band of Miwuk Indians (previously listed as the Jackson Rancheria of Me-Wuk Indians of California)
Jamestown S'Klallam Tribe
Jamul Indian Village of California
Jena Band of Choctaw Indians
Jicarilla Apache Nation, New Mexico
Kaibab Band of Paiute Indians of the Kaibab Indian Reservation, Arizona
Kalispel Indian Community of the Kalispel Reservation
Karuk Tribe (previously listed as the Karuk Tribe of California)
Kashia Band of Pomo Indians of the Stewarts Point Rancheria, California
Kaw Nation, Oklahoma
Kewa Pueblo, New Mexico (previously listed as the Pueblo of Santo Domingo)
Keweenaw Bay Indian Community, Michigan
Kialegee Tribal Town
Kickapoo Traditional Tribe of Texas
Kickapoo Tribe of Indians of the Kickapoo Reservation in Kansas
Kickapoo Tribe of Oklahoma
Kiowa Indian Tribe of Oklahoma
Klamath Tribes
Koi Nation of Northern California (previously listed as the Lower Lake Rancheria, California)
Kootenai Tribe of Idaho
La Jolla Band of Luiseno Indians, California (previously listed as the La Jolla Band of Luiseno Mission Indians of the La Jolla Reservation)
La Posta Band of Diegueno Mission Indians of the La Posta Indian Reservation, California
Lac Courte Oreilles Band of Lake Superior Chippewa Indians of Wisconsin
Lac du Flambeau Band of Lake Superior Chippewa Indians of the Lac du Flambeau Reservation of Wisconsin
Lac Vieux Desert Band of Lake Superior Chippewa Indians of Michigan
Las Vegas Tribe of Paiute Indians of the Las Vegas Indian Colony, Nevada

Little River Band of Ottawa Indians, Michigan
Little Traverse Bay Bands of Odawa Indians, Michigan
Lone Pine Paiute-Shoshone Tribe (previously listed as the Paiute-Shoshone Indians of the Lone Pine Community of the Lone Pine Reservation, California)
Los Coyotes Band of Cahuilla and Cupeno Indians, California (previously listed as the Los Coyotes Band of Cahuilla & Cupeno Indians of the Los Coyotes Reservation)
Lovelock Paiute Tribe of the Lovelock Indian Colony, Nevada
Lower Brule Sioux Tribe of the Lower Brule Reservation, South Dakota
Lower Elwha Tribal Community (previously listed as the Lower Elwha Tribal Community of the Lower Elwha Reservation, Washington)
Lower Sioux Indian Community in the State of Minnesota
Lummi Tribe of the Lummi Reservation
Lytton Rancheria of California
Makah Indian Tribe of the Makah Indian Reservation
Manchester Band of Pomo Indians of the Manchester Rancheria, California (previously listed as the Manchester Band of Pomo Indians of the Manchester-Point Arena Rancheria, California)
Manzanita Band of Diegueno Mission Indians of the Manzanita Reservation, California
Mashantucket Pequot Indian Tribe (previously listed as the Mashantucket Pequot Tribe of Connecticut)
Mashpee Wampanoag Tribe (previously listed as the Mashpee Wampanoag Indian Tribal Council, Inc.)
Match-e-be-nash-she-wish Band of Pottawatomi Indians of Michigan
Mechoopda Indian Tribe of Chico Rancheria, California
Menominee Indian Tribe of Wisconsin
Mesa Grande Band of Diegueno Mission Indians of the Mesa Grande Reservation, California
Mescalero Apache Tribe of the Mescalero Reservation, New Mexico
Miami Tribe of Oklahoma
Miccosukee Tribe of Indians
Middletown Rancheria of Pomo Indians of California
Minnesota Chippewa Tribe, Minnesota (Six component reservations: Bois Forte Band (Nett Lake); Fond du Lac Band; Grand Portage Band; Leech Lake Band; Mille Lacs Band; White Earth Band)
Mississippi Band of Choctaw Indians
Moapa Band of Paiute Indians of the Moapa River Indian Reservation, Nevada

000003

Mohegan Tribe of Indians of Connecticut (previously listed as Mohegan Indian Tribe of Connecticut)

Mooretown Rancheria of Maidu Indians of California

Morongo Band of Mission Indians, California (previously listed as the Morongo Band of Cahuilla Mission Indians of the Morongo Reservation)

Muckleshoot Indian Tribe (previously listed as the Muckleshoot Indian Tribe of the Muckleshoot Reservation, Washington)

Narragansett Indian Tribe

Navajo Nation, Arizona, New Mexico & Utah

Nez Perce Tribe (previously listed as the Nez Perce Tribe of Idaho)

Nisqually Indian Tribe (previously listed as the Nisqually Indian Tribe of the Nisqually Reservation, Washington)

Nooksack Indian Tribe

Northern Cheyenne Tribe of the Northern Cheyenne Indian Reservation, Montana

Northfork Rancheria of Mono Indians of California

Northwestern Band of Shoshoni Nation (previously listed as the Northwestern Band of Shoshoni Nation of Utah (Washakie)

Nottawaseppi Huron Band of the Potawatomi, Michigan (previously listed as the Huron Potawatomi, Inc.)

Oglala Sioux Tribe (previously listed as the Oglala Sioux Tribe of the Pine Ridge Reservation, South Dakota)

Ohkay Owingeh, New Mexico (previously listed as the Pueblo of San Juan)

Omaha Tribe of Nebraska

Oneida Nation of New York

Oneida Tribe of Indians of Wisconsin

Onondaga Nation

Otoe-Missouria Tribe of Indians, Oklahoma

Ottawa Tribe of Oklahoma

Paiute Indian Tribe of Utah (Cedar Band of Paiutes, Kanosh Band of Paiutes, Koosharem Band of Paiutes, Indian Peaks Band of Paiutes, and Shivwits Band of Paiutes (formerly Paiute Indian Tribe of Utah (Cedar City Band of Paiutes, Kanosh Band of Paiutes, Koosharem Band of Paiutes, Indian Peaks Band of Paiutes, and Shivwits Band of Paiutes))

Paiute-Shoshone Tribe of the Fallon Reservation and Colony, Nevada

Pala Band of Mission Indians (previously listed as the Pala Band of Luiseno Mission Indians of the Pala Reservation, California) Pascua Yaqui Tribe of Arizona

Paskenta Band of Nomlaki Indians of California

Passamaquoddy Tribe

Pauma Band of Luiseno Mission Indians of the Pauma & Yuima Reservation, California

Pawnee Nation of Oklahoma

Pechanga Band of Luiseno Mission Indians of the Pechanga Reservation, California

Penobscot Nation (previously listed as the Penobscot Tribe of Maine)

Peoria Tribe of Indians of Oklahoma

Picayune Rancheria of Chukchansi Indians of California

Pinoleville Pomo Nation, California (previously listed as the Pinoleville Rancheria of Pomo Indians of California)

Pit River Tribe, California (includes XL Ranch, Big Bend, Likely, Lookout, Montgomery Creek and Roaring Creek Rancherias)

Poarch Band of Creeks (previously listed as the Poarch Band of Creek Indians of Alabama)

Pokagon Band of Potawatomi Indians, Michigan and Indiana

Ponca Tribe of Indians of Oklahoma

Ponca Tribe of Nebraska

Port Gamble S'Klallam Tribe (previously listed as the Port Gamble Band of S'Klallam Indians)

Potter Valley Tribe, California

Prairie Band Potawatomi Nation (previously listed as the Prairie Band of Potawatomi Nation, Kansas)

Prairie Island Indian Community in the State of Minnesota

Pueblo of Acoma, New Mexico

Pueblo of Cochiti, New Mexico

Pueblo of Isleta, New Mexico

Pueblo of Jemez, New Mexico

Pueblo of Laguna, New Mexico

Pueblo of Nambe, New Mexico

Pueblo of Picuris, New Mexico

Pueblo of Pojoaque, New Mexico

Pueblo of San Felipe, New Mexico

Pueblo of San Ildefonso, New Mexico

Pueblo of Sandia, New Mexico

Pueblo of Santa Ana, New Mexico

Pueblo of Santa Clara, New Mexico

Pueblo of Taos, New Mexico

Pueblo of Tesuque, New Mexico

Pueblo of Zia, New Mexico

Puyallup Tribe of the Puyallup Reservation

Pyramid Lake Paiute Tribe of the Pyramid Lake Reservation, Nevada

Quartz Valley Indian Community of the Quartz Valley Reservation of California

Quechan Tribe of the Fort Yuma Indian Reservation, California & Arizona

Quileute Tribe of the Quileute Reservation

Quinault Indian Nation (previously listed as the Quinault Tribe of the Quinault Reservation, Washington)

Ramona Band of Cahuilla, California (previously listed as the Ramona Band or Village of Cahuilla Mission Indians of California)

Red Cliff Band of Lake Superior Chippewa Indians of Wisconsin

Red Lake Band of Chippewa Indians, Minnesota

Redding Rancheria, California

Redwood Valley or Little River Band of Pomo Indians of the Redwood Valley Rancheria California (previously listed as the Redwood Valley Rancheria of Pomo Indians of California)

Reno-Sparks Indian Colony, Nevada

Resighini Rancheria, California

Rincon Band of Luiseno Mission Indians of the Rincon Reservation, California

Robinson Rancheria (previously listed as the Robinson Rancheria Band of Pomo Indians, California and the Robinson Rancheria of Pomo Indians of California)

Rosebud Sioux Tribe of the Rosebud Indian Reservation, South Dakota

Round Valley Indian Tribes, Round Valley Reservation, California (previously listed as the Round Valley Indian Tribes of the Round Valley Reservation, California)

Sac & Fox Nation of Missouri in Kansas and Nebraska

Sac & Fox Nation, Oklahoma

Sac & Fox Tribe of the Mississippi in Iowa

Saginaw Chippewa Indian Tribe of Michigan

Saint Regis Mohawk Tribe (previously listed as the St. Regis Band of Mohawk Indians of New York)

Salt River Pima-Maricopa Indian Community of the Salt River Reservation, Arizona

Samish Indian Nation (previously listed as the Samish Indian Tribe, Washington)

San Carlos Apache Tribe of the San Carlos Reservation, Arizona

San Juan Southern Paiute Tribe of Arizona

San Manuel Band of Mission Indians, California (previously listed as the San Manual Band of Serrano Mission Indians of the San Manual Reservation)

San Pasqual Band of Diegueno Mission Indians of California

Santa Rosa Band of Cahuilla Indians, California (previously listed as the Santa Rosa Band of Cahuilla Mission Indians of the Santa Rosa Reservation)

Santa Rosa Indian Community of the Santa Rosa Rancheria, California

Santa Ynez Band of Chumash Mission Indians of the Santa Ynez Reservation, California

Santee Sioux Nation, Nebraska

Sauk-Suiattle Indian Tribe

Sault Ste. Marie Tribe of Chippewa Indians, Michigan

Scotts Valley Band of Pomo Indians of California

**Federal Register** / Vol. 81, No. 19 / Friday, January 29, 2016 / Notices

Seminole Tribe of Florida (previously listed as the Seminole Tribe of Florida (Dania, Big Cypress, Brighton, Hollywood & Tampa Reservations))
Seneca Nation of Indians (previously listed as the Seneca Nation of New York)
Seneca-Cayuga Nation (previously listed as the Seneca-Cayuga Tribe of Oklahoma)
Shakopee Mdewakanton Sioux Community of Minnesota
Shawnee Tribe
Sherwood Valley Rancheria of Pomo Indians of California
Shingle Springs Band of Miwok Indians, Shingle Springs Rancheria (Verona Tract), California
Shinnecock Indian Nation
Shoalwater Bay Indian Tribe of the Shoalwater Bay Indian Reservation (previously listed as the Shoalwater Bay Tribe of the Shoalwater Bay Indian Reservation, Washington)
Shoshone Tribe of the Wind River Reservation, Wyoming
Shoshone-Bannock Tribes of the Fort Hall Reservation
Shoshone-Paiute Tribes of the Duck Valley Reservation, Nevada
Sisseton-Wahpeton Oyate of the Lake Traverse Reservation, South Dakota
Skokomish Indian Tribe (previously listed as the Skokomish Indian Tribe of the Skokomish Reservation, Washington)
Skull Valley Band of Goshute Indians of Utah
Snoqualmie Indian Tribe (previously listed as the Snoqualmie Tribe, Washington)
Soboba Band of Luiseno Indians, California
Sokaogon Chippewa Community, Wisconsin
Southern Ute Indian Tribe of the Southern Ute Reservation, Colorado
Spirit Lake Tribe, North Dakota
Spokane Tribe of the Spokane Reservation
Squaxin Island Tribe of the Squaxin Island Reservation
St. Croix Chippewa Indians of Wisconsin
Standing Rock Sioux Tribe of North & South Dakota
Stillaguamish Tribe of Indians of Washington (previously listed as the Stillaguamish Tribe of Washington)
Stockbridge Munsee Community, Wisconsin
Summit Lake Paiute Tribe of Nevada
Suquamish Indian Tribe of the Port Madison Reservation
Susanville Indian Rancheria, California
Swinomish Indian Tribal Community (previously listed as the Swinomish Indians of the Swinomish Reservation of Washington)

Sycuan Band of the Kumeyaay Nation
Table Mountain Rancheria of California
Tejon Indian Tribe
Te-Moak Tribe of Western Shoshone Indians of Nevada (Four constituent bands: Battle Mountain Band; Elko Band; South Fork Band and Wells Band)
The Chickasaw Nation
The Choctaw Nation of Oklahoma
The Modoc Tribe of Oklahoma
The Muscogee (Creek) Nation
The Osage Nation (previously listed as the Osage Tribe)
The Quapaw Tribe of Indians
The Seminole Nation of Oklahoma
Thlopthlocco Tribal Town
Three Affiliated Tribes of the Fort Berthold Reservation, North Dakota
Tohono O'odham Nation of Arizona
Tolowa Dee-ni' Nation (previously listed as the Smith River Rancheria, California)
Tonawanda Band of Seneca (previously listed as the Tonawanda Band of Seneca Indians of New York)
Tonkawa Tribe of Indians of Oklahoma
Tonto Apache Tribe of Arizona
Torres Martinez Desert Cahuilla Indians, California (previously listed as the Torres-Martinez Band of Cahuilla Mission Indians of California)
Tulalip Tribes of Washington (previously listed as the Tulalip Tribes of the Tulalip Reservation, Washington)
Tule River Indian Tribe of the Tule River Reservation, California
Tunica-Biloxi Indian Tribe
Tuolumne Band of Me-Wuk Indians of the Tuolumne Rancheria of California
Turtle Mountain Band of Chippewa Indians of North Dakota
Tuscarora Nation
Twenty-Nine Palms Band of Mission Indians of California
United Auburn Indian Community of the Auburn Rancheria of California
United Keetoowah Band of Cherokee Indians in Oklahoma
Upper Sioux Community, Minnesota
Upper Skagit Indian Tribe
Ute Indian Tribe of the Uintah & Ouray Reservation, Utah
Ute Mountain Ute Tribe (previously listed as the Ute Mountain Tribe of the Ute Mountain Reservation, Colorado, New Mexico & Utah)
Utu Utu Gwaitu Paiute Tribe of the Benton Paiute Reservation, California
Walker River Paiute Tribe of the Walker River Reservation, Nevada
Wampanoag Tribe of Gay Head (Aquinnah)
Washoe Tribe of Nevada & California (Carson Colony, Dresslerville Colony, Woodfords Community, Stewart Community, & Washoe Ranches)
White Mountain Apache Tribe of the Fort Apache Reservation, Arizona

Wichita and Affiliated Tribes (Wichita, Keechi, Waco & Tawakonie), Oklahoma
Wilton Rancheria, California
Winnebago Tribe of Nebraska
Winnemucca Indian Colony of Nevada
Wiyot Tribe, California (previously listed as the Table Bluff Reservation—Wiyot Tribe)
Wyandotte Nation
Yankton Sioux Tribe of South Dakota
Yavapai-Apache Nation of the Camp Verde Indian Reservation, Arizona
Yavapai-Prescott Indian Tribe (previously listed as the Yavapai-Prescott Tribe of the Yavapai Reservation, Arizona)
Yerington Paiute Tribe of the Yerington Colony & Campbell Ranch, Nevada
Yocha Dehe Wintun Nation, California (previously listed as the Rumsey Indian Rancheria of Wintun Indians of California)
Yomba Shoshone Tribe of the Yomba Reservation, Nevada
Ysleta del Sur Pueblo (previously listed as the Ysleta Del Sur Pueblo of Texas)
Yurok Tribe of the Yurok Reservation, California
Zuni Tribe of the Zuni Reservation, New Mexico

**Native Entities Within the State of Alaska Recognized and Eligible To Receive Services From the United States Bureau of Indian Affairs**

Agdaagux Tribe of King Cove
Akiachak Native Community
Akiak Native Community
Alatna Village
Algaaciq Native Village (St. Mary's)
Allakaket Village
Alutiiq Tribe of Old Harbor (previously listed as Native Village of Old Harbor and Village of Old Harbor)
Angoon Community Association
Anvik Village
Arctic Village (See Native Village of Venetie Tribal Government)
Asa'carsarmiut Tribe
Atqasuk Village (Atkasook)
Beaver Village
Birch Creek Tribe
Central Council of the Tlingit & Haida Indian Tribes
Chalkyitsik Village
Cheesh-Na Tribe (previously listed as the Native Village of Chistochina)
Chevak Native Village
Chickaloon Native Village
Chignik Bay Tribal Council (previously listed as the Native Village of Chignik)
Chignik Lake Village
Chilkat Indian Village (Klukwan)
Chilkoot Indian Association (Haines)
Chinik Eskimo Community (Golovin)
Chuloonawick Native Village
Circle Native Community
Craig Tribal Association (previously listed as the Craig Community Association)

Curyung Tribal Council
Douglas Indian Association
Egegik Village
Eklutna Native Village
Emmonak Village
Evansville Village (aka Bettles Field)
Galena Village (aka Louden Village)
Gulkana Village
Healy Lake Village
Holy Cross Village
Hoonah Indian Association
Hughes Village
Huslia Village
Hydaburg Cooperative Association
Igiugig Village
Inupiat Community of the Arctic Slope
Iqurmuit Traditional Council
Ivanoff Bay Tribe (previously listed as the Ivanof Bay Village)
Kaguyak Village
Kaktovik Village (aka Barter Island)
Kasigluk Traditional Elders Council
Kenaitze Indian Tribe
Ketchikan Indian Corporation
King Island Native Community
King Salmon Tribe
Klawock Cooperative Association
Knik Tribe
Kokhanok Village
Koyukuk Native Village
Levelock Village
Lime Village
Manley Hot Springs Village
Manokotak Village
McGrath Native Village
Mentasta Traditional Council
Metlakatla Indian Community, Annette Island Reserve
Naknek Native Village
Native Village of Afognak
Native Village of Akhiok
Native Village of Akutan
Native Village of Aleknagik
Native Village of Ambler
Native Village of Atka
Native Village of Barrow Inupiat Traditional Government
Native Village of Belkofski
Native Village of Brevig Mission
Native Village of Buckland
Native Village of Cantwell
Native Village of Chenega (aka Chanega)
Native Village of Chignik Lagoon
Native Village of Chitina
Native Village of Chuathbaluk (Russian Mission, Kuskokwim)
Native Village of Council
Native Village of Deering
Native Village of Diomede (aka Inalik)
Native Village of Eagle
Native Village of Eek
Native Village of Ekuk
Native Village of Ekwok (previously listed as Ekwok Village)
Native Village of Elim
Native Village of Eyak (Cordova)
Native Village of False Pass
Native Village of Fort Yukon
Native Village of Gakona

Native Village of Gambell
Native Village of Georgetown
Native Village of Goodnews Bay
Native Village of Hamilton
Native Village of Hooper Bay
Native Village of Kanatak
Native Village of Karluk
Native Village of Kiana
Native Village of Kipnuk
Native Village of Kivalina
Native Village of Kluti Kaah (aka Copper Center)
Native Village of Kobuk
Native Village of Kongiganak
Native Village of Kotzebue
Native Village of Koyuk
Native Village of Kwigillingok
Native Village of Kwinhagak (aka Quinhagak)
Native Village of Larsen Bay
Native Village of Marshall (aka Fortuna Ledge)
Native Village of Mary's Igloo
Native Village of Mekoryuk
Native Village of Minto
Native Village of Nanwalek (aka English Bay)
Native Village of Napaimute
Native Village of Napakiak
Native Village of Napaskiak
Native Village of Nelson Lagoon
Native Village of Nightmute
Native Village of Nikolski
Native Village of Noatak
Native Village of Nuiqsut (aka Nooiksut)
Native Village of Nunam Iqua (previously listed as the Native Village of Sheldon's Point)
Native Village of Nunapitchuk
Native Village of Ouzinkie
Native Village of Paimiut
Native Village of Perryville
Native Village of Pilot Point
Native Village of Pitka's Point
Native Village of Point Hope
Native Village of Point Lay
Native Village of Port Graham
Native Village of Port Heiden
Native Village of Port Lions
Native Village of Ruby
Native Village of Saint Michael
Native Village of Savoonga
Native Village of Scammon Bay
Native Village of Selawik
Native Village of Shaktoolik
Native Village of Shishmaref
Native Village of Shungnak
Native Village of Stevens
Native Village of Tanacross
Native Village of Tanana
Native Village of Tatitlek
Native Village of Tazlina
Native Village of Teller
Native Village of Tetlin
Native Village of Tuntutuliak
Native Village of Tununak
Native Village of Tyonek
Native Village of Unalakleet
Native Village of Unga

Native Village of Venetie Tribal Government (Arctic Village and Village of Venetie)
Native Village of Wales
Native Village of White Mountain
Nenana Native Association
New Koliganek Village Council
New Stuyahok Village
Newhalen Village
Newtok Village
Nikolai Village
Ninilchik Village
Nome Eskimo Community
Nondalton Village
Noorvik Native Community
Northway Village
Nulato Village
Nunakauyarmiut Tribe
Organized Village of Grayling (aka Holikachuk)
Organized Village of Kake
Organized Village of Kasaan
Organized Village of Kwethluk
Organized Village of Saxman
Orutsararmiut Traditional Native Council (previously listed as Orutsararmuit Native Village (aka Bethel))
Oscarville Traditional Village
Pauloff Harbor Village
Pedro Bay Village
Petersburg Indian Association
Pilot Station Traditional Village
Platinum Traditional Village
Portage Creek Village (aka Ohgsenakale)
Pribilof Islands Aleut Communities of St. Paul & St. George Islands
Qagan Tayagungin Tribe of Sand Point Village
Qawalangin Tribe of Unalaska
Rampart Village
Saint George Island (See Pribilof Islands Aleut Communities of St. Paul & St. George Islands)
Saint Paul Island (See Pribilof Islands Aleut Communities of St. Paul & St. George Islands)
Seldovia Village Tribe
Shageluk Native Village
Sitka Tribe of Alaska
Skagway Village
South Naknek Village
Stebbins Community Association
Sun'aq Tribe of Kodiak (previously listed as the Shoonaq' Tribe of Kodiak)
Takotna Village
Tangirnaq Native Village (formerly Lesnoi Village (aka Woody Island))
Telida Village
Traditional Village of Togiak
Tuluksak Native Community
Twin Hills Village
Ugashik Village
Umkumiut Native Village (previously listed as Umkumiute Native Village)
Village of Alakanuk
Village of Anaktuvuk Pass
Village of Aniak

000006

Village of Atmautluak
Village of Bill Moore's Slough
Village of Chefornak
Village of Clarks Point
Village of Crooked Creek
Village of Dot Lake
Village of Iliamna
Village of Kalskag
Village of Kaltag
Village of Kotlik
Village of Lower Kalskag
Village of Ohogamiut
Village of Red Devil
Village of Salamatoff
Village of Sleetmute
Village of Solomon
Village of Stony River
Village of Venetie (See Native Village of Venetie Tribal Government)
Village of Wainwright
Wrangell Cooperative Association
Yakutat Tlingit Tribe
Yupiit of Andreafski

[FR Doc. 2016–01769 Filed 1–28–16; 8:45 am]

**BILLING CODE 4337–15–P**

## DEPARTMENT OF JUSTICE

[OMB Number 1125–0007]

**Agency Information Collection Activities; Proposed eCollection; eComments Requested; Immigration Practitioner Complaint Form**

**AGENCY:** Executive Office for Immigration Review, Department of Justice

**ACTION:** 60-Day notice.

**SUMMARY:** The Department of Justice (DOJ), Executive Office for Immigration Review, will be submitting the following information collection request to the Office of Management and Budget (OMB) for review and approval in accordance with the Paperwork Reduction Act of 1995.

**DATES:** Comments are encouraged and will be accepted for 60 days until March 29, 2016.

**FOR FURTHER INFORMATION CONTACT:** If you have additional comments especially on the estimated public burden or associated response time, suggestions, or need a copy of the proposed information collection instrument with instructions or additional information, please contact Jean King, General Counsel, Executive Office for Immigration Review, U.S. Department of Justice, Suite 2600, 5107 Leesburg Pike, Falls Church, Virginia 22041; telephone: (703) 305–0470.

**SUPPLEMENTARY INFORMATION:** Written comments and suggestions from the public and affected agencies concerning the proposed information collection

are encouraged. Your comments should address one or more of the following four points:

—Evaluate whether the proposed collection of information is necessary for the proper performance of the functions of the Executive Office for Immigration Review, including whether the information will have practical utility;

—Evaluate the accuracy of the agency's estimate of the burden of the proposed collection of information, including the validity of the methodology and assumptions used;

—Evaluate whether and if so how the quality, utility, and clarity of the information to be collected can be enhanced; and

—Minimize the burden of the collection of information on those who are to respond, including through the use of appropriate automated, electronic, mechanical, or other technological collection techniques or other forms of information technology, *e.g.*, permitting electronic submission of responses.

**Overview of This Information Collection**

1. *Type of Information Collection:* Extension Without Change of a Currently Approved Collection.

2. *The Title of the Form/Collection:* Immigration Practitioner Complaint Form.

3. *The agency form number, if any, and the applicable component of the Department sponsoring the collection:* Form EOIR–44. The applicable component within the Department of Justice is the Office of General Counsel, Executive Office for Immigration Review.

4. *Affected public who will be asked or required to respond, as well as a brief abstract:* Primary: Individuals who wish to file a complaint against an immigration practitioner authorized to appear before the Board of Immigration Appeals and the immigration courts. Abstract: The information on this form will be used to determine whether the Office of the General Counsel of the Executive Office for Immigration Review should conduct a preliminary disciplinary inquiry, request additional information from the complainant, refer the matter to a state bar disciplinary authority or other law enforcement agency, or take no further action.

5. *An estimate of the total number of respondents and the amount of time estimated for an average respondent to respond:* It is estimated that 200 respondents will complete the form annually, with an average of 2 hours per response.

6. *An estimate of the total public burden (in hours) associated with the collection:* The estimated public burden associated with this collection is 400 hours. It is estimated that respondents will take 2 hours to complete the form. The burden hours for collecting respondent data sum to 400 hours (200 respondents × 2 hours = 400 hours).

If additional information is required contact: Jerri Murray, Department Clearance Officer, United States Department of Justice, Justice Management Division, Policy and Planning Staff, Two Constitution Square, 145 N Street NE., 3E.405B, Washington, DC 20530.

Dated: January 25, 2016.

**Jerri Murray,**

*Department Clearance Officer for PRA, U.S. Department of Justice.*

[FR Doc. 2016–01692 Filed 1–28–16; 8:45 am]

**BILLING CODE 4410–30–P**

## NATIONAL SCIENCE FOUNDATION

**Sunshine Act Meetings; National Science Board**

The National Science Board, pursuant to NSF regulations (45 CFR part 614), the National Science Foundation Act, as amended, (42 U.S.C. 1862n–5), and the Government in the Sunshine Act (5 U.S.C. 552b), hereby gives notice of the scheduling of meetings for the transaction of National Science Board business as follows:

**DATE AND TIME:** February 2, 2016 from 8:00 a.m. to 5:10 p.m., and February 3, 2016 from 8:50 a.m. to 1:30 p.m. EST.

**PLACE:** These meetings will be held at the National Science Foundation, 4201 Wilson Blvd., Room 1235, Arlington, VA 22230. All visitors must contact the Board Office (call 703–292–7000 or send an email to *nationalsciencebrd@nsf.gov*) at least 24 hours prior to the meeting and provide your name and organizational affiliation. Visitors must report to the NSF visitors desk in the lobby of the 9th and N. Stuart Street entrance to receive a visitor's badge.

**WEBCAST INFORMATION:** Public meetings and public portions of meetings will be webcast. To view the meetings, go to *http://www.tvworldwide.com/events/nsf/160202/* and follow the instructions.

**UPDATES:** Please refer to the National Science Board Web site for additional information. Meeting information and schedule updates (time, place, subject matter or status of meeting) may be found at *http://www.nsf.gov/nsb/meetings/notices.jsp*.

**AGENCY CONTACT:** Ron Campbell, *jrcampbe@nsf.gov*, 703–292–7000.

# EXHIBIT B

UNITED STATES
DEPARTMENT OF THE INTERIOR

OFFICE OF INDIAN AFFAIRS

✦

# CONSTITUTION AND BYLAWS OF THE CHIPPEWA CREE INDIANS OF THE ROCKY BOY'S RESERVATION MONTANA

✦

APPROVED NOVEMBER 23, 1935



Ex. B
PG- Motion to Dismiss

CONSTITUTION AND BYLAWS OF THE CHIPPEWA CREE INDIANS OF THE
ROCKY BOY'S RESERVATION, MONTANA

---

## PREAMBLE

We, the original and adopted members of the Rocky Boy's Band of Chippewas enrolled upon the Rocky Boy's Reservation in the State of Montana, in order to exercise our rights to self-government, to administer all tribal affairs to the best advantage of the individual members, and to preserve and increase our tribal resources, do ordain and establish this Constitution of the Chippewa Cree Tribe of the Rocky Boy's Reservation, Montana.

## ARTICLE I - - - TERRITORY

The jurisdiction of the Chippewa Cree Tribe of the Rocky Boy's Reservation, Montana, shall extend to the territory within the Rocky Boy's Reservation as established by Act of September 7, 1916 (39 Stat. 739), amending the Act of February 11, 1915 (38 State. 807), in the State of Montana, and to such lands as have been or may hereafter be acquired and added to the Reservation by law.

## ARTICLE II - - - MEMBERSHIP

SECTION 1.  The membership of the Chippewa Cree Tribe shall consist as follows:
  (a) All members of the Rocky Boy's Band of Chippewas enrolled as of June 1, 1934.
  (b) All children born to any member of the Chippewa Cree Tribe of the Rocky Boy's Reservation who is a resident of the reservation at the time of the birth of said children.
  (c) All children of one-half or more Indian blood born to a non-resident member of the Tribe.

SECTION 2.  Any Indian, one-half blood or more and a resident of Montana, not a member of any other reservation, may become a member of this organization provided that two-thirds or more of the eligible voters cast their ballots at such election, and provided further that two-thirds of those voting at such election vote in favor of such adoption.  All elections to membership shall be confirmed by the Secretary of the Interior.

1

000002

ARTICLE III - - - ORGANIZATION OF GOVERNING BODY

SECTION 1.   The governing body of the Chippewa Cree Tribe shall be known as the "Business Committee."

SECTION 2.   The Business Committee shall consist of eight (8) members and a Chairman all of whom shall be elected on an at-large basis.   The Chairman shall file for that particular office.

SECTION 3.   During the first regular meeting following certification of those committee members elected at the biennial election, the Business Committee shall elect from within its own membership a Vice-Chairman and such officers and committees as it may deem necessary.   The services of a Tribal Secretary-Treasurer shall be available to the committee.   Such tribal employees shall be hired on the basis of an employment contract.

SECTION 4.   The term of office of the Chairman and all other committee members shall be four (4) years, or until their successors are duly elected and installed.

Those members of the Business Committee who are in office on the effective date of this amendment shall continue to serve until their successors are duly elected at the November 1972 general election and installed in office.   At that election a Chairman and eight (8) committee members shall be elected.   The Chairman and four (4) committee members shall be elected for terms of four (4) years (November 1972 through November 1976 unless earlier removed from office).   The remaining four (4) committee members shall be elected to serve for two (2) year terms.   (November 1972 through November 1974 unless earlier removed from office).   The differing lengths of terms shall apply only to the 1972 election for the purpose of establishing a system of staggered terms of office. Thereafter, all terms shall be for four (4) years.   Primary elections shall be in October on even numbered years and general elections shall be in November of even numbered years. Those eight (8) candidates receiving the higher number of votes in the primary election will compete in the general election for the terms of office.

Candidates who wish to compete for the office of Chairman shall specifically file for that position for a four (4) year term.   Those two (2) candidates receiving the higher number of votes in the primary election for Chairman will compete for Chairman in the general election for the term of office.

SECTION 5.   The Business Committee shall be empowered to establish by resolution the rates of payment to cover necessary expenses of tribal officials and/or tribal employees in connection with their attending either local or distant meetings considered to be official tribal business.   The Business Committee may change the rates of payment for such expenses.   However, any increase or decrease in such rates

shall not apply until one (1) year from the date the increase was approved.

ARTICLE IV - - - ELECTIONS AND NOMINATIONS

SECTION 1.   Tribal members who are at least eighteen (18) years of age on election day shall be eligible to vote in tribal elections.

SECTION 2.   To be eligible for membership on the Business Committee, candidates must have the following qualifications:

(a) Be a member of the Tribe.
(b) Must have physically resided within the general area which encompasses the main body of the reservation or on any land under the jurisdiction of the tribe for two (2) years immediately prior to the date of the general election.
(c) Must be at least twenty-five (25) years of age on the date of the election.
(d) Should a potential candidate have been convicted of a felony in any State or Federal court or convicted by tribal court of a misdemeanor involving dishonesty or bribery in handling tribal affairs, such persons shall not be entitled to be a candidate until five (5) years after completion of his penalty.
(e) If a candidate was ever convicted of use, possession or sale of illegal drugs in any State, Federal or tribal court, such persons shall not be entitled to be a candidate until five (5) years after completion of the penalty.

SECTION 3.   Any member who wishes to file as a candidate for membership on the Business Committee, shall deposit with the Election Board a filing fee of  $15.00 ($25.00 for the office of Chairman), to help defray election expenses.   Such fee shall not be refunded unless the potential candidate fails to meet the qualifications.   Procedures shall be set forth in the election ordinance regarding the Election Board's handling of funds received from filing fees.   The filing fee may be adjusted by appropriate amendment to the election ordinance.

The Election Board shall be responsible for insuring that only persons who meet the qualifications are accepted as candidates for elective office.

SECTION 4.   In filling the four (4) vacancies which will occur each two (2) years, not more than eight (8) candidates receiving the highest number of votes in the October primary election shall compete for those four (4) positions in the November general election.   The four (4) candidates receiving the highest number of votes in the general election shall be elected.   In filling the one (1) vacancy for Chairman which will be every four (4) years, not more than two (2) candidates

2

3

000003

receiving the highest number of votes in the October primary election shall compete for that one (1) Chairman position in the November general election.

The candidate receiving the highest number of votes in the general election shall be elected Chairman.

SECTION 5.   Successful candidates shall be installed in office by the Chairman of the Election Board within fourteen (14) days following certification of results of the general election.

SECTION 6.   There shall be an impartial Election Board consisting of five (5) members responsible for calling and conducting all tribal elections.  Three (3) of the five (5) board members shall be those tribal members who are serving as the Election Board for the County election precinct No. 28 which includes the reservation.

The tribal members who constitute the precinct Election Board shall appoint two (2) other adult tribal members to serve with them for tribal election purposes.  Those two (2) board members shall meet the qualifications set forth in Article IV, Section 2 of this constitution and shall be subject to the provisions of Article V, Section 3.

In addition, the Tribal Secretary-Treasurer shall serve as clerk of the Election Board in a nonvoting capacity.

A board member shall not serve on the Business Committee and the Election Board at the same time.  Should either of the two (2) non-precinct board members file as a candidate for any tribal elective office, they shall automatically lose their position on the Election Board.  Should any of the other three (3) voting members of the Board file for tribal office, they shall request the County election officials to replace them with other tribal members.

The tribal Election Board shall be created within ten (10) days after the effective date of this amendment.   Initial appointments of the two (2) non-precinct members shall be: one (1) member for a two (2) year term and the other for a three (3) year term.  Thereafter, as the terms expire, both appointments shall be for terms of three (3) years.  Members may be appointed to successive terms.  Appointments shall be made as provided in paragraph two of this Section.

SECTION 7.    The specific dates of elections and the procedures for their conduct shall be set forth in an election ordinance which shall be drafted by the Election Board and approved by a majority vote of those participating in a tribal referendum called for that purpose by the Election Board pursuant to Article VIII, Section 2.

Such ordinance shall include provisions for secret balloting, absentee voting, registration of voters, a procedure for resolving election disputes and compensation for election officials.  Provisions shall also be included for an impartial interpreter at the polling place during voting hours to assist those voters requesting help in casting their ballots.

Wherever possible, the Election Board shall coordinate tribal elections with State and County elections.

ARTICLE V - - - VACANCIES, REMOVAL AND RECALL

SECTION 1.   If any elective official shall die, resign, permanently leave the reservation, or shall be found guilty while in office of a felony or misdemeanor involving dishonesty in any Indian, State or Federal court, the Business Committee shall declare the position vacant and direct the Election Board to call a special election to fill such vacancy.  The candidate receiving the highest number of votes shall be elected.

If six (6) months or less remain before the next primary election the vacated position shall remain vacant until it is filled at the general election following that primary, except as provided in Section 1 (f) of the bylaws.

SECTION 2.   The Business Committee may by an affirmative vote of at least five (5) members expel any member for neglect of duty or gross misconduct provided that the accused member shall be given full and fair opportunity to reply to any and all charges at a designated committee meeting.  It is further stipulated that any such member shall be given a written statement of the charges against him at least five (5) days before the meeting at which he is to appear.

SECTION 3.   Upon receipt of a valid petition signed by registered voters equal in number to forty (40) percent of those who voted at the last election, it shall be the duty of the Election Board to call and conduct, within sixty (60) days, a recall election on any individual who fills an elective position.  The provisions of this section shall also apply to those election board members indicated in Article IV, Section 6.  A majority of those who participate in such election must favor recall in order for it to become effective provided those who vote constitute at least fifty (50) percent of the registered voters.  Only one (1) recall attempt may be made for any tribal official during a given term of office.  No recall petition shall be acted upon until at least six (6) months of the term has expired.  No more than one (1) official at a time may be considered for recall.  A recall election shall not be held if an election for that office is scheduled within ninety (90) days after filing the recall petition.

Should the recall be successful, the vacancy shall be filled as provided in Section 1 of this Article.  Further details needed to carry out the intent of this Article shall be set forth in the tribal election ordinance.

4

5

000004

## ARTICLE VI - - - POWERS OF THE COMMITTEE

SECTION 1.   The Business Committee shall exercise the following powers subject to any limitations imposed by the Statutes or the Constitution of the United States and subject further to all express restrictions upon such powers contained in this constitution and bylaws.

(a) To negotiate with the Federal, State and local governments on behalf of the tribe and to advise and consult with representatives of the Interior Department on all activities of the Department that may affect the Rocky Boy's Reservation.

(b) To employ legal counsel for the protection and advancement of the tribe and its members, the choice of counsel and the fixing of fees to be subject to the approval of the Secretary of the Interior.

(c) To approve or veto any sale, disposition, lease or encumbrance of tribal lands, interests in lands or other tribal assets, including oil, gas, and minerals which may be authorized or executed by the Secretary of the Interior, or the Commissioner of Indian Affairs, or any other official or Agency of Government provided that no tribal lands shall ever be sold, encumbered, or leased for a period exceeding that permitted by existing law, except to the extent required to implement the provisions of the loan program designed to help purchase land in trust as set forth in the Act of April 11, 1970 (84 Stat. 120) provided such participation is permitted by the tribe's charter of incorporation.

(d) To advise the heads of the various Federal departments and other governmental agencies with regard to all appropriation estimates prior to the submission of such estimates to the office of Management and Budget and to Congress.

(e) To approve applications for selections of land in conformity with Article IX of this constitution.

(f) To manage all economic affairs and enterprises of the tribe in accordance with the terms of the tribe's Federal Charter of incorporation.

(g) To charter subordinate organizations for economic purposes and regulate the activities of all cooperative associations of members of the tribe.

(h) To appropriate available tribal funds for tribal governmental operations except that any proposed expenditure exceeding the tribe's anticipated annual income shall be subject to approval by a referendum vote.

(i) Future tribal income may be pledged by the Business Committee only in the manner authorized by Section 5(e) and 5(f) of the tribe's corporate charter.

(j) To levy taxes upon members of the tribe and to levy taxes or license fees, subject to review by the Secretary of the Interior, upon nonmembers doing business within the reservation.

(k) To enact resolutions or ordinances not inconsistent with Article II of this constitution governing tribal enrollment and abandonment of membership.

(l) To encourage and foster the arts, crafts, culture, and traditions of the tribe.

(m) To acquire and use for public purposes any part of a selection or land assignment provided that adequate compensation is paid by the Business Committee to the holder of such property.

(n) To enact ordinances governing hunting and fishing within the confines of the reservation.

(o) To delegate to subordinate boards or to cooperative associations which are open to all members of the tribe any of the foregoing powers, reserving the right to review any action taken by virtue of such delegated power.

(p) To enact ordinances including a comprehensive law and order code subject to approval by the Secretary of the Interior governing the conduct of tribal members and providing for maintenance of law and order. The code shall include such items listed here but not limited to:   jurisdiction, court procedures, civil actions, domestic relations, sentences, criminal offenses, and organization and procedures of tribal police.

## ARTICLE VII - - - POPULAR PARTICIPATION IN GOVERNMENT

SECTION 1.   All regular meetings of the Business Committee shall be open to the public, but visitors may not interfere with proceedings, and may only speak with the consent of the Chairman.

SECTION 2.   All resolutions and ordinances of the Business Committee shall be placed in writing and posted in public places, and copies shall also be placed with each committee member.

## ARTICLE VIII - - - REFERENDUM

SECTION 1.   Upon receipt of a valid petition signed by at least one-half (1/2) of the number who voted at the last election or upon the request of a majority of the members of the Business Committee as set forth in a resolution, it shall be the duty of the Election Board within sixty (60) days to submit to popular referendum any enacted or proposed ordinance or resolution of the Business Committee.   The vote of a majority of those who cast ballots in such referendum shall be conclusive and binding on the committee, provided at least

000005

three-fourths (3/4) of the registered voters participate in that referendum.

Any enactment which has been effective for at least six (6) months shall no longer be subject to referendum.

SECTION 2. For purpose of adopting or amending an election ordinance, the Election Board is empowered to call and conduct a referendum election. In such election, a majority of those who vote shall determine whether the proposal is adopted or rejected provided at least thirty (30) percent of the registered voters participate in the balloting.

### ARTICLE IX - - - TRIBAL LANDS

SECTION 1. No lands now within the reservation boundary, held in trust for the tribe, may be alienated nor may title pass to any individual.

SECTION 2. Any head of a family who is a member shall be entitled to the use of not more than 160 acres of land, such land to be known as "a selection".

SECTION 3. Applications for selections shall be presented in writing to the Business Committee.

SECTION 4. The applicant shall be investigated by the Business Committee before action may be taken on his application.

SECTION 5. The applicant upon approval of application shall reside upon selection and do a reasonable amount of improvement for two years before selection is finally approved.

SECTION 6. All selections approved by the Superintendent of the reservation at the time of the approval of this Constitution shall remain in effect.

SECTION 7. If any man has allowed his selection to run down, and has made no effort to keep up improvements and make a reasonable use of his land, the Business Committee shall have the right to cancel his selection after due hearing, and to reassign his land to an eligible member of the tribe provided that such member shall pay to the former occupant of the land the value of all his improvements as determined by an appraisal board appointed by the Business Committee. This valuation of the board shall be subject to review and modification by the Business Committee upon appeal by the man who loses his selection. The Business Committee may allow the man to remain in his house without the use of the land and reassign the land to any other eligible member.

SECTION 8. Tribal lands not assigned as selections may be used in common for grazing purposes by all members in accordance with ordinances or resolutions enacted by the Business Committee, or may be leased by the Business Committee with the approval of the Secretary of the Interior in accordance with law. Preference shall be given, first, to Indian cooperative associations, and, secondly, to individual Indians who are members of the Chippewa Cree Tribe. No lease of tribal lands to a non-member shall be made by the Business Committee unless it shall appear that no Indian cooperative association or individual member of the tribe is able and willing to use the land and to pay a reasonable fee for such use, provided no individual member of the tribe or cooperative association shall be given any preference as to the use of tribal land unless the stock of such individual member of association is restricted stock and bears the ID brand.

SECTION 9. Improvements of any character made upon selections may be willed to and inherited by members of the Chippewa Cree Tribe. When improvements are not possible of fair division, the Business Committee shall dispose of them under such regulations as it may provide. No permanent improvements may be removed from any land without the consent of the Business Committee.

### ARTICLE X - - - AMENDMENTS

SECTION 1. This constitution and Bylaws may be amended by a majority vote of the qualified voters of the tribe voting at an election called for that purpose by the Secretary of the Interior, provided that at least thirty (30) percent of those entitled to vote shall vote in such election, but no amendment shall become effective until it shall have been approved by the Secretary of the Interior. It shall be the duty of the Secretary of the Interior to call an election on any proposed amendment upon presentation of a petition signed by two-thirds of the eligible voters of the tribe.

### ARTICLE XI - - - RIGHTS OF MEMBERS

In compliance with the Civil Rights Act of 1968 (82 Stat. 77), the Chippewa Cree Tribe in exercising its powers of self-government shall not;

(a) Make or enforce any law prohibiting the free exercise of religion, or abridging the freedom of speech, or of the press, or the right of the people peaceably to assemble and to petition for a redress of grievances;

(b) Violate the right of the people to be secure in their persons, houses, papers and effects against unreasonable search and seizures, nor issue warrants, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the person or thing to be seized;

(c) Subject any person for the same offense to be twice put in jeopardy;

(d) Compel any person in any criminal case to be a witness against himself;

(e) Take any private property for a public use without just compensation;

000006

(f) Deny to any person in criminal proceeding the right to a speedy and public trial, to be informed of the nature and cause of the accusation, to be confronted with the witnesses against him, to have compulsory process for obtaining witnesses in his favor, and at his own expense to have the assistance of counsel for his defense;

(g) Require excessive bail, impose excessive fines, inflict cruel and unusual punishments, and in no event impose for conviction of any one offense any penalty or punishment greater than imprisonment for a term of up to one (1) year and/or a fine of five thousand dollars ($5000) or both;

(h) Deny to any person within its jurisdiction the equal protection of its laws or deprive any person of liberty or property without due process of law;

(i) Pass any bill of attainder or ex post facto law; or

(j) Deny to any person accused of an offense punishable by imprisonment the right, upon request, to a trial by jury of not less than six (6) persons.

## ARTICLE XII - - - JUDICIAL BRANCH

SECTION 1.   There shall be established a Judicial Branch within the tribal government to enforce ordinances and laws of the Business Committee, the Election Board and/or to administer justice through a tribal court.   The Judicial Branch shall also provide an appellant body for tribal members who are aggrieved by decisions of the tribal court.

SECTION 2.   There shall be established, the positions of Chief Judge and two (2) Associate Judges for the tribal court who shall be responsible to carry out the tribe's judicial functions in accordance with an approved tribal law and order code.   The tribal appellate court shall consist of a Chief Appellate Court Judge who shall select appellate panel members from a pool of eligible candidates set by the appellate court.

The Business Committee shall appoint and contract with the Chief Judge and Associate Judges for the tribal court and the Chief Appellate Court Judge for the tribal appellate court. The Chief Judge and Associate Judges for the tribal court and the Chief Appellate Court Judge and Appellate Panel Judges for the appellate court must have extensive tribal judicial experience and be in good standing to preside over the tribal court and tribal appellate court.

## BYLAWS

SECTION 1.   Organization of Business Committee and Duties of Officers.

(a) The officers of the committee shall be the Chairman, Vice Chairman, and such other officers as may be hereafter designated by the committee.

(b) The Chairman shall be elected at large.   The Vice Chairman and any other officers shall be elected from within the committee by secret ballot.   A nonvoting Secretary-Treasurer shall be selected from outside the committee and retained on an employment contract.

(c) The Chairman of the Election Board shall administer the oath of office to the newly-elected members of the Business Committee following certification of their election.

(d) In the absence of any officer at a meeting, the Business Committee shall elect a temporary Chairman to preside for that meeting.

(e) The Chairman of the Committee shall preside over all meetings of the committee, shall perform all duties of a Chairman and exercise any authority delegated to him by the committee.   He shall vote only in the case of a tie.

(f) The Vice Chairman shall assist the Chairman when called upon to do so, and in the absence of the Chairman, shall preside.   When so presiding, he shall have all the rights, privileges, and duties as well as the responsibilities of the Chairman.   In case of vacancy, the Vice Chairman shall succeed at once to the office of the Chairman until the next special or regular election for the office of Chairman in accordance with Section 1, Article V of the tribal constitution.

(g) The Secretary-Treasurer, selected pursuant to Subsection (b) above, shall conduct all tribal correspondence and shall keep an accurate record of all matters transacted at the business meetings.   It shall be his duty to submit promptly to the Superintendent and the Commissioner of Indian Affairs copies of all minutes of regular and special meetings of the Business Committee.   It shall be his duty to have the minutes permanently bound and ready for inspection at all reasonable times.   It shall also be his duty to receive all petitions, applications, and other business papers and prepare same for presentation to the Business Committee.   The Secretary-Treasurer shall serve as clerk of the Tribal Election Board in a nonvoting capacity and shall perform such services as may be set forth in an election ordinance.

The Secretary-Treasurer shall accept, receive, receipt for, preserve, and safeguard all funds in the

000007

custody of the Business Committee whether they be tribal funds or special funds for which the committee is acting as trustee or custodian. Checks and drafts shall be made out to the "Chippewa Cree Business Committee" and shall be endorsed "for deposit only". The Secretary-Treasurer shall deposit all such funds as directed by the Business Committee and shall make and preserve an accurate record of the money.

Further, he shall report on all receipts and expenditures and the amount and nature of all funds in his custody. All reports shall be in writing and submitted to the Business Committee at its regular meetings and at such other times it may request. The Secretary-Treasurer shall not pay out or otherwise disburse any funds in his possession except when properly authorized to do so by resolution duly passed by the Business Committee. All checks shall be signed by the Secretary-Treasurer and countersigned as designated by resolution of the Business Committee.

The books and records of the Secretary-Treasurer shall be audited annually and at other times as directed by the Business Committee by a competent auditor employed by the Committee. The Commissioner of Indian Affairs may audit the tribal accounts if he deems it necessary. The Secretary-Treasurer shall be required to give a surety bond satisfactory to the Business Committee and the Commissioner of Indian Affairs. The Secretary-Treasurer shall be present at all meetings of the Business Committee.

SECTION 2. Meetings

(a) The Business Committee shall hold regular business meetings each month at the tribal office on a date to be set forth by resolution of the committee.

(b) Special meetings may be called at any time by the Chairman upon ten (10) hours written notice delivered to members of the Business Committee and shall be called and conducted upon petition by five (5) members of the committee.

(c) A quorum of five (5) committee members shall be present at any meeting before the committee may be officially called to order. Only members of the Business Committee shall have the right to vote.

SECTION 3. Order of Business

(a) Roll Call

(b) Reading of the minutes of previous meeting.

(c) Secretary-Treasurer to report business transactions and present any bills, requisitions, claims, etc.

(d) Hearing of applications, petitions, complaints, and other business properly coming before the committee.

(e) Any other business.

(f) Adjournment.

SECTION 4. Procedure for adoption of Constitution and Bylaws.

(a) This Constitution and Bylaws attached hereto shall be in full force and effect whenever a majority of the adult voters of Rocky Boy's Band of Chippewas voting at an election called by the Secretary of the Interior in which at least thirty percent (30%) of the eligible voters shall vote, shall have ratified such Constitution and Bylaws and the Secretary of the Interior shall have approved same, as provided in the Act of June 18, 1934, as amended by the Act of June 15, 1935.

12

13

000008

## CERTIFICATION OF ADOPTION

Pursuant to an order, approved October 18, 1935, by the Secretary of the Interior, the attached Constitution and Bylaws were submitted for ratification to the members of the Rocky Boy's Band of Chippewas of the Rocky Boy's Reservation and were on November 2, 1935, duly adopted by a vote of 128 for, and 23 against, in an election in which over 30 percent of those entitled to vote cast their ballots, in accordance with Section 16 of the Indian Reorganization Act of June 18, 1934 (48 Stat. 984), as amended by the Act of June 15, 1935 (Pub. No. 147, 74th Cong.).

> John Parker,
> Chairman of Election Board
> Malcom Mitchell,
> Chairman of Rocky Boy's Business Committee
> Joe Corcoran,
> Secretary
> Earl Wooldridge,
> Superintendent

I, Harold L. Ickes, the Secretary of the Interior of the United States of America, by virtue of the authority granted me by the Act of June 18, 1934 (48 Stat. 984), as amended, do hereby approve the attached Constitution and Bylaws of the Chippewa Cree Tribe of the Rocky Boy's Reservation.

All rules and regulations heretofore promulgated by the Interior Department or by the Office of Indian Affairs, so far as they may be incompatible with any of the provisions of the said Constitution or Bylaws are hereby declared inapplicable to the Chippewa Cree Tribe of the Rocky Boy's Reservation.

All officers and employees of the Interior Department are ordered to abide by the provisions of the said Constitution and Bylaws.

Approval recommended November 15, 1935.

John Collier,
Commissioner of Indian Affairs

> Harold L. Ickes,
> Secretary of the Interior

Washington, D.C.,
November 23, 1934

Amended by election held April 22, 1972, and approved by Assistant Secretary of the Interior, Harrison Loesch May 17, 1972.

Amended by election held January 6, 2004, and approved by Rocky Mountain Regional Director, Bureau of Indian Affairs, Keith Beartusk February 6, 2004.

14

15

000009

# EXHIBIT C

**CHIPPEWA CREE TRIBE**
**OF THE**
**ROCKY BOY'S INDIAN RESERVATION, MONTANA**

**LIMITED LIABILITY COMPANY ACT**

Ex. C
PG - Motion to Dismiss

000002

## Chippewa Cree Tribe Limited Liability Company Act

### Part 1 – General Provisions

### Section 101.     Purposes of the LLC Act; Rules of Construction

(1)   This Part and all subsequent Parts and sections of this Chapter are for the purpose for developing and implementing the processes and procedures for the formation and operation of limited liability companies under tribal law.

(2)   This Chapter shall be liberally construed and applied to promote its underlying purposes and policies.

### Section 102.     Definitions.

As used in this Chapter, unless the context requires otherwise, the following definitions apply:

(1)   "Articles of organization" means articles filed pursuant to Section 201 of this Chapter and those articles as amended or restated. In the case of a foreign limited liability company, the term includes all records serving a similar function required to be filed under the laws of the tribe, state or country where it is organized.

(2)   "At-will company" means a limited liability company other than a term company.

(3)   "Business" includes every trade, occupation, profession, or other lawful purpose, whether or not carried on for profit.

(4)   "Corporation" means a corporation formed under the laws of this tribe or a foreign corporation.

(5)   "Court" includes every court having jurisdiction in the case, and the Chippewa Cree Tribal Court with regard to enforcement of the provisions of this Chapter.

(6)   "Debtor in bankruptcy" means a person who is the subject of an order for relief under Chapter 11 of the United States Code or a comparable order under federal, state, or tribal law governing insolvency.

(7)   "Disqualified person" means any person or entity that for any reason is or becomes ineligible under this part to become a member in a professional limited liability company.

(8)   "Distribution" means a transfer of money, property, or other benefit to a member in that member's capacity as a member of a limited liability company or to a transferee of a member's distributional interest.

(9)   "Distributional interest" means all of a member's interest in the distributions of a limited liability company.

(10)  "Event of dissociation" means an event that causes a person to cease to be a member.

(11)  "Foreign corporation" means a corporation that is organized under laws other than the laws of the Chippewa Cree Tribe.

(12)  "Foreign limited liability company" means an entity that is
    (a)   an unincorporated entity;
    (b)   organized under laws other than the laws of the Chippewa Cree Tribe;
    (c)   organized under a statute pursuant to which an entity may be formed that affords to each of its members limited liability with respect to the liabilities of the entity.

(13)  "Foreign limited partnership" means a limited partnership formed under any laws other than the laws of the Chippewa Cree Tribe.

(14) "Foreign professional limited liability company" means a limited liability company organized for the purpose of rendering professional services under laws other than the laws of the Chippewa Cree Tribe.

(15) "Licensing authority" means an officer, board, agency, court, or other authority on the Rocky Boy's Indian Reservation that has the power to issue a license or other legal authorization to render a professional service.

(16) "Limited liability company" or "domestic limited liability company" means an organization that is formed under this part.

(17) "Limited partnership" means a limited partnership formed under the laws of the Chippewa Cree Tribe or a foreign limited partnership.

(18) "Manager" means a person who, whether or not a member of a manager-managed company, is vested with authority under Section 301 of this Chapter.

(19) "Manager-managed company" means a limited liability company that is so designated in its articles of organization.

(20) "Member" means a person who has been admitted to membership in a limited liability company, as provided in Section 302 of this Chapter and who has not dissociated from the limited liability company.

(21) "Member-managed company" means a limited liability company other than a manager-managed company.

(22) "Operating agreement" means an agreement, including amendments, as to the conduct of the business and affairs of a limited liability company and the relations among the members, managers, and the company that is binding upon all of the members.

(23) "Person" means an individual, a general partnership, a limited partnership, a domestic or foreign limited liability company, a trust, an estate, an association, a corporation, or any other legal or commercial entity.

(24) "Professional limited liability company" means a limited liability company designating itself as a professional limited liability company in its articles of organization.

(25) "Professional service" means a service that may lawfully be rendered only by persons licensed under a licensing law of the Chippewa Cree Tribe and that may not be lawfully rendered by a limited liability company that is not a professional limited liability company.

(26) "Qualified person" means a natural person, limited liability company, general partnership, or professional corporation eligible under this part to own shares issued by a professional limited liability company.

(27) "Record" means information that is inscribed on a tangible medium or that is stored in an electronic or other medium and is recoverable in a perceivable form.

(28) "Secretary" means the Secretary/Accountant of the Chippewa Cree Tribe.

(29) "Sign" means to identify a record by means of a signature, mark, or other symbol with the intent to authenticate it.

(30) "State" means the District of Columbia or the Commonwealth of Puerto Rico or any state, territory, possession or other jurisdiction of the United States other than the Chippewa Cree Tribe.

(31) "Term company" means a limited liability company designated as a term company in its articles of organization.

**Section 103.** <u>**Name.**</u>

2

(1)   (a)   The name of each limited liability company as set forth in its articles of organization must contain the words "limited liability company" or the abbreviations "l.l.c.", or "llc". The word "limited" may be abbreviated as "ltd.", and the word "company" may be abbreviated as "co.".

       (b)   The name of a limited liability company as set forth in its articles of organization may not contain business name identifiers or other language that states or implies that the limited liability company is a business other than a limited liability company.

(2)   A limited liability company name must be distinguishable on the records of the Secretary from:

       (a)   the name of any business corporation, nonprofit corporation, limited partnership, or limited liability company organized or reserved under the laws of the Chippewa Cree Tribe;

       (b)   the name of any foreign business corporation, foreign nonprofit corporation, foreign limited partnership, or foreign limited liability company registered or qualified to do business on the Rocky Boy's Indian Reservation;

       (c)   any assumed business name, limited partnership name, trademark, service mark, or other name registered or reserved with the Secretary; and

       (d)   the corporate name of a domestic corporation that has dissolved but only for a period of 120 days after the effective date of its dissolution.

## Section 104.　　Reservation of Name.

(1)   The exclusive right to use a name may be reserved by:

       (a)   a person intending to organize a limited liability company and to adopt that name;

       (b)   a limited liability company or foreign limited liability company registered with the Chippewa Cree Tribe that intends to adopt that name;

       (c)   a foreign limited liability company intending to register with the Chippewa Cree Tribe and to adopt that name; or

       (d)   a person intending to organize a foreign limited liability company and to have it registered with the Chippewa Cree Tribe and to adopt that name.

(2)   The reservation must be made by filing with the Secretary application, executed by the applicant, to reserve a specified name. If the Secretary finds that the name is available for use by a domestic or foreign limited liability company, the Secretary shall reserve the name for the exclusive use of the applicant for a nonrenewable period of 120 days from the date the application is filed.

(3)   The right to the exclusive use of a reserved name may be transferred to another person by filing with the Secretary a notice of the transfer, executed by the applicant for whom the name was reserved, and by specifying the name to be transferred and the name and address of the transferee. The transfer may not extend the term during which the name is reserved.

## Section 105.　　Registered Office and Registered Agent.

(1)   A limited liability company shall continuously maintain with the Chippewa Cree Tribe:

       (a)   a registered office on the Rocky Boy's Indian Reservation that may, but need not be, the same as its place of business; and

       (b)   a registered agent for service of process who resides on the Rocky Boy's Indian Reservation and who may be served process, at the registered office, or their residence, or business office.

(2)   Unless the registered agent signed the document making the appointment, the appointment of a registered agent or a successor registered agent on whom process may be served is not effective until the agent delivers a statement in writing to the Secretary accepting the appointment.

(3)   A limited liability company may change its registered office or registered agent, or both, by delivering to the Secretary a statement setting forth:
    (a)   the name of the limited liability company;
    (b)   the address of its current registered office;
    (c)   if the address of its registered office is to be changed, the new address of the registered office; and
    (d)   if its registered agent or the agent's address is to be changed, the name and address of the successor registered agent or the current registered agent's new address.

(4)   The change of address of the registered office or registered agent is effective on delivery of the statement to the Secretary. The appointment of a new registered agent is effective on delivery of the statement to the Secretary and on receipt by the Secretary of evidence that the new registered agent has accepted appointment pursuant to subsection (2).

(5)   A registered agent of a limited liability company may resign as registered agent by delivering a written notice and two copies to the Secretary. The Secretary shall mail a copy of the notice to the limited liability company at its registered office and its principal place of business. The appointment of the registered agent terminates 30 days after receipt of the notice by the Secretary or on the appointment of a new registered agent, whichever occurs first.

(6)   If a registered agent changes its address to another place on the Rocky Boy's Indian Reservation, it may change the address by delivering a statement to the Secretary as required by subsection (3), except that it need be signed only by the registered agent. The statement must recite that a copy of the statement has been mailed to the limited liability company.

## Section 106.   **Purpose of a Limited Liability Company.**

(1)   A limited liability company organized under Part 2 of this Chapter has the purpose of engaging in any lawful business unless a more limited purpose is set forth in the articles of organization.

(2)   Limited liability companies may be organized under Part 2 of this Chapter for any lawful purpose except for the purpose of banking or insurance.

## Section 107.   **Powers.**

A limited liability company may:

(1)   if it so elects, sue, be sued, complain, and defend in its name;

(2)   transact its business, carry on its operations, and have and exercise the powers granted by this part in any tribe or state; in any territory, district, or possession of the United States; and in any foreign country;

(3)   make contracts and guarantees, incur liabilities, and borrow money;

(4)   sell, lease, exchange, transfer, convey, mortgage, pledge, and otherwise dispose of any of its assets;

(5)   acquire by purchase or in any other manner, take, receive, own, hold, improve, and otherwise deal with any interest in real or personal property, wherever located;

4

(6)   issue notes, bonds, and other obligations and secure any of them by mortgage, deed of trust, or security interest of any of its assets;

(7)   purchase, take, receive, subscribe for, or otherwise acquire, own, hold, vote, use, employ, sell, mortgage, loan, pledge, or otherwise dispose of and otherwise use and deal in and with stock or other interests in and obligations of domestic and foreign corporations, associations, general or limited partnerships, limited liability companies, business trusts, and individuals;

(8)   invest its surplus funds, lend money from time to time in any manner that may be appropriate to enable it to carry on the operations or fulfill the purposes set forth in its articles of organization, and take and hold real property and personal property as security for the payment of funds loaned or invested;

(9)   elect or appoint agents and define their duties and fix their compensation;

(10) sell, convey, mortgage, pledge, lease, exchange, transfer, and otherwise dispose of all or any part of its property and assets;

(11) be a promoter, stockholder, partner, member, associate, or agent of any corporation, partnership, domestic or foreign limited liability company, joint venture, trust, or other enterprise;

(12) indemnify and hold harmless any member, agent, or employee from and against any claims and demands whatsoever, except in the case of action or failure to act by the member, agent, or employee that constitutes willful misconduct or recklessness, and subject to the standards and restrictions, if any, set forth in the articles of organization or operating agreement;

(13) cease its activities and dissolve;

(14) pay pensions and establish pension plans, pension trusts, profit-sharing plans, share bonus plans, share option plans, and benefit or incentive plans for any of its current or former directors, officers, employees, and agents;

(15) make donations for the public welfare or for charitable, religious, scientific, or educational purposes and, in time of war, make donations in aid of war activities; and

(16) do every other act not inconsistent with law that is appropriate to promote and further the business and affairs of the limited liability company.

**Section 108**.    **Effect of Operating Agreement—Nonwaivable Provisions.**

(1)   Except as provided in subsection (2), all members of a limited liability company may enter into an operating agreement, which need not be in writing, to regulate the affairs of the company and the conduct of its business and to govern relations among the members, managers, and company. To the extent that the operating agreement does not otherwise provide, this part governs relations among the members, managers, and company.

(2)   An operating agreement need not be in writing except as otherwise provided in this part to:

    (a)   vary the recordkeeping requirements under Section 306 of the Chapter;

    (b)   vary the rights of members to share in distributions under Section 501 or Section 805 of the Chapter; or

    (c)   vary the process for admission of members under Section 302 of the Chapter.

(3)   The operating agreement may not:

    (a)   unreasonably restrict a right to information or access to records under Section 306 of the Chapter.

(b)   eliminate the duty of loyalty under Section 305 of the Chapter, but the agreement may:

    (i)   identify specific types or categories of activities that do not violate the duty of loyalty, if not manifestly unreasonable; and

    (ii)   specify the number or percentage of members or disinterested managers that may authorize or ratify, after full disclosure of all material facts, a specific act or transaction that otherwise would violate the duty of loyalty;

(c)   unreasonably reduce the duty of care under Section 305 of the Chapter;

(d)   eliminate the obligation of good faith and fair dealing under Section 305 of the Chapter, but the operating agreement may determine the standards by which the performance of the obligation is to be measured, if the standards are not manifestly unreasonable;

(e)   vary the right to expel a member upon the occurrence of an event specified in Section 701 of the Chapter

(f)   vary the requirement to wind up the limited liability company's business in a case specified in Section 801(l)(c) or Section 802 of the Chapter; or

(g)   restrict the rights of a person under this part, other than a manager, member, or transferee of a member's distributional interest.

## Part 2 – Formation

**Section 201**.   <u>**Formation.**</u>

(1)   One or more persons may form a limited liability company consisting of one or more members by signing and filing articles of organization with the Secretary. The person or persons need not be members of the limited liability company at the time of formation or after formation has occurred. A limited liability company is a legal entity distinct from its members.

(2)   Unless a delayed effective date is specified, the existence of a limited liability company begins when the articles of organization are filed with the Secretary.

(3)   The filing of the articles of organization by the Secretary pursuant to Section 205 of the Chapter is conclusive proof that the organizers have satisfied all conditions precedent to the creation of a limited liability company.

## Section 202.   <u>**Articles of Organization.**</u>

(1)   The articles of organization must set forth:

(a)   the name of the limited liability company that satisfies the requirements of Section 103 of this Chapter;

(b)   whether the company is a term company and, if so, the term specified;

(c)   the complete street address of its principal place of business on the Rocky Boy's Indian Reservation and, if different, its registered office and the name and complete street address of its registered agent at the registered office on the Rocky Boy's Indian Reservation;

(d)   (i)   if the limited liability company is to be managed by a manager or managers, a statement that the company is to be managed in that fashion and the names of managers who are to serve as managers until the first meeting of members or until their successors are elected;

000008

(ii)   if the management of a limited liability company is reserved to the members, a statement that the company is to be managed in that fashion and the names and street addresses of the initial members;

(e)   if the limited liability company is a professional limited liability company, a statement to that effect and a statement of the professional service or services it will render; and

(f)   any other provision, not inconsistent with law, that the members elect to set out in the articles, including but not limited to a statement of whether there are limitations on the authority of members or management to bind the limited liability company.

(2)   It is not necessary to set out in the articles of organization any of the powers enumerated in Section 107 of the Chapter.

(3)   The articles of organization may not vary any nonwaivable provision set out in this Chapter. As to all other matters, if any provision of an operating agreement is inconsistent with the articles of organization:

(a)   the operating agreement controls as to managers, members, and a member's transferee; and

(b)   the articles of organization control as to a person, other than a manager, member, and member's transferee, that reasonably relies on the articles of organization to that person's detriment.

## Section 203.   <u>Amendment of Articles of Organization—Restatement.</u>

(1)   The articles of organization of a limited liability company are amended by filing articles of amendment with the Secretary. The articles of amendment must set forth:

(a)   the name of the limited liability company;

(b)   the date the articles of organization were filed; and

(c)   the amendment to the articles of organization.

(2)   The articles of organization may be amended as desired, so long as the amended articles of organization contain only provisions that may be lawfully contained in articles of organization at the time of making the amendment.

(3)   Articles of organization may be restated at any time. Restated articles of organization must be filed with the Secretary, must be specifically designated as such in the heading, and must state either in the heading or in an introductory paragraph the limited liability company's present name and, if it has been changed, all of its former names and the date of the filing of its articles of organization. Restated articles of organization supersede the original articles of organization and any previous amendments to the original articles of organization.

(4)   An amendment to the articles of organization of a limited liability company must be in the form and manner designated by the Secretary.

## Section 204.   <u>Execution of Documents.</u>

(1)   Unless otherwise specified in this part, a document required by this part to be filed with or delivered to the Secretary must be executed:

(a)   by any manager if management of the limited liability company is vested in one or more managers or by a member if management of the limited liability company is reserved to the members;

000009

(b)   if the limited liability company has not been formed, by the person or persons forming the limited liability company; or

(c)   if the limited liability company is in the hands of a receiver, trustee, or other court-appointed fiduciary, by that fiduciary.

(2)   The person executing the document shall sign it and state, beneath or opposite the signature, the person's name and the capacity in which the person signs.

(3)   The person executing the document may do so as an attorney-in-fact. Powers of attorney relating to the execution of the document do not need to be shown to or filed with the Secretary.

## Section 205.       Filing With Secretary.

(1)   The original signed copy, together with a duplicate copy that may be either a signed, photocopied, or confirmed copy, of the articles of organization or any other document required to be filed pursuant to this part must be delivered to the Secretary.  If the Secretary determines that the documents conform to the filing provisions of this part, the Secretary shall, when all required filing fees have been paid:

(a)   endorse on each signed original and duplicate copy the word "filed" and the date of its acceptance for filing;

(b)   retain the signed original in the Secretary's files; and

(c)   return the duplicate copy to the person who filed it or to the person's representative.

(2)   If the Secretary is unable to make the determination required for filing by subsection (1) at the time any documents are delivered for filing, the documents are considered to have been filed at the time of delivery if the Secretary subsequently determines that the documents as delivered conform to the filing provisions of Part 2 of this Chapter.

(3)   The filing fee shall be $25.00, except for the Tribe or a tribally-owned business.

(4)

## Section 206.       Effect of Delivery or Filing of Articles of Organization.

(1)   A limited liability company is formed when the articles of organization are delivered to the Secretary for filing.

(2)   Each copy of the articles of organization stamped or marked "filed" and marked with the filing date is conclusive evidence that all conditions precedent required to be performed by the organizers have been complied with and that the limited liability company has been legally organized and formed under this part.

## Section 207.       Annual Report For Secretary.

(1)   A limited liability company or a foreign limited liability company authorized to transact business by the Chippewa Cree Tribe on the Rocky Boy's Indian Reservation shall deliver to the Secretary, for filing, an annual report that sets forth:

(a)   the name of the limited liability company and the tribe, state, or country under whose law it is organized;

(b)   the mailing address and, if different, street address of its registered office and the name of its registered agent at that office on the Rocky Boy's Indian Reservation;

(c)   the address of its principal office;

(d)   (i)    if the limited liability company is managed by a manager or managers, a statement that the company is managed in that fashion and the names and addresses of the managers;

8

      (ii)  if the management of a limited liability company is reserved to the members, a statement to that effect;

(e)  if the limited liability company is a professional limited liability company, a statement that all of its members and not less than one-half of its managers are qualified persons with respect to the limited liability company.

(2)  Information in the annual report must be current as of the date the annual report is executed on behalf of the limited liability company.

(3)  The first annual report must be delivered to the Secretary between January 1 and April 15 of the year following the calendar year in which a domestic limited liability company is organized or a foreign limited liability company is authorized to transact business. Subsequent annual reports must be delivered to the Secretary between January 1 and April 15.

(4)  If an annual report does not contain the information required by this section, the Secretary shall promptly notify the reporting domestic or foreign limited liability company in writing and return the report to it for correction.

(5)  The annual report must be executed by at least one member of the limited liability company and must include the street address of the member.

(6)  A domestic professional limited liability company or a foreign professional limited liability company authorized to transact business on the Rocky Boy's Indian Reservation shall annually file before April 15, with each licensing authority having jurisdiction over a professional service of a type described in its articles of organization, a statement of qualification setting forth the names and addresses of the members and managers of the company and additional information that the licensing authority may by rule prescribe as appropriate in determining whether the company is complying with this Chapter. The licensing authority may charge a fee to cover the cost of filing a statement of qualification.

**Section 208.  Administrative Dissolution—Rules.**

(1)  A domestic limited liability company maybe dissolved involuntarily by order of the Secretary if the limited liability company:

    (a)  (i)  has failed for 60 days after a change of its registered office or registered agent to file in the office of the Secretary a statement of the change; or

        (ii)  has failed for 60 days to appoint and maintain a registered agent on the Rocky Boy's Indian Reservation;

    (b)  has failed for 140 days to file its annual report within the time required by law;

    (c)  has failed to remit any fees required by law;

    (d)  procured its certificate of existence through fraud; or

    (e)  has exceeded or abused the authority conferred upon it by law and the excesses or abuses have continued after a written notice of the alleged excesses or abuses has been received from the Secretary by the registered agent of the limited liability company.

(2)  If dissolution is sought under subsection (1)(d) or (l)(e), the Secretary may dissolve a limited liability company when an alleged violation of subsection (l)(d) or (1)(e) is established by an order of tribal court or a court of another appropriate jurisdiction. In addition to any other person authorized by law, the Secretary or the tribal prosecutor may maintain an action in tribal court to implement the provisions of this section.

(3)

**Section 209**.      <u>Reinstatement of Dissolved Limited Liability Company.</u>
(1)    The Secretary may:
    (a)    reinstate a limited liability company that has been dissolved under the provisions of Section 208 of this Chapter.
    (b)    restore to a reinstated limited liability company its right to carry on business on the Rocky Boy's Indian Reservation to exercise all of its privileges and immunities.
(2)    A limited liability company applying for reinstatement shall submit to the Secretary the application, executed by a person who was a member at the time of dissolution, setting forth:
    (a)    the name of the limited liability company;
    (b)    a statement that the assets of the limited liability company have not been liquidated;
    (c)    a statement that a majority of its members have authorized the application for reinstatement; and
    (d)    if its name has been legally acquired by another entity prior to its application for reinstatement, the name under which the limited liability company desires to be reinstated.
(3)    The limited liability company shall submit with its application for reinstatement:
    (a)     all annual reports not yet filed with the Secretary.
(4)    When all requirements are met and the Secretary reinstates the limited liability company to its former rights, the Secretary shall:
    (a)    conform and file in the office of the Secretary reports, statements, and other instruments submitted for reinstatement;
    (b)    immediately issue and deliver to the reinstated limited liability company a certificate of reinstatement authorizing it to transact business; and
    (c)    upon demand, issue to the limited liability company one or more certified copies of the certificate of reinstatement.
(5)    The Secretary shall not order a reinstatement if 5 years have elapsed since the dissolution.
(6)    A restoration of limited liability company rights pursuant to this section relates back to the date the limited liability company was involuntarily dissolved, and the limited liability company is considered to have been an existing legal entity from the date of its original organization.

**Section 210.**      <u>Fees For Filing, Copying, and Services.</u>
(1)    The Secretary shall collect fees for the following:
    (a)    filing documents as required by this Chapter; and
    (b)    copying documents, priority handling documents, transmitting facsimile copies of documents, and providing computer-generated information.

**Section 211.**      <u>License Fee.</u>
(1)    In addition to the filing fee authorized by Section 210 of this Chapter, the Secretary shall charge and collect from each foreign limited liability company:
    (a)    a license fee at the time of filing its articles of incorporation; and
    (b)    a license fee at the time of filing an application for a certificate of authority to transact business.

**Section 212**.      <u>Correcting Filed Record.</u>

10

000012

(1)   A limited liability company or foreign limited liability company may correct a record filed by the Secretary if the record contains a false or erroneous statement or was defectively signed.

(2)   A record must be corrected by:
  (a)   preparing articles of correction that:
    (i)    describe the record, including its filing date, or have attached a copy of the record to the articles of correction;
    (ii)   specify the incorrect statement and the reason that it is incorrect or the manner in which the signing was defective; and
    (iii)  correct the incorrect statement or defective signing; and
  (b)   delivering the corrected record to the Secretary for filing.

(3)   Articles of correction are effective retroactively on the effective date of the record that they correct except as to persons relying on the uncorrected record and adversely affected by the correction. As to those persons, the articles of correction are effective when filed.

## Section 213.    Certificate of Existence or Authority.

(1)   A person may request the Secretary to furnish a certificate of existence for a limited liability company or a certificate of authority for a foreign limited liability company.

(2)   A certificate of existence for a limited liability company must set forth:
  (a)   the company's name;
  (b)   that it is organized under the laws of the Chippewa Cree Tribe, the date of organization, whether its duration is at-will or for a specified term, and, if for a specified term, the period specified;
  (c)   if payment is reflected in the records of the Secretary and if nonpayment affects the existence of the company, that all fees, taxes, and penalties owed to the Chippewa Cree Tribe have been paid;
  (d)   whether its most recent annual report required by Section 207 of this Chapter has been filed with the Secretary;
  (e)   that articles of termination have not been filed; and
  (f)   other facts of record in the office of the Secretary if requested by the applicant.

(3)   A certificate of authority for a foreign limited liability company must set forth:
  (a)   the company's name used on the Rocky Boy's Indian Reservation;
  (b)   that it is authorized to transact business on the Rocky Boy's Indian Reservation;
  (c)   whether its most recent annual report required by Section 207 of the Chapter has been filed with the Secretary;
  (d)   that a certificate of cancellation has not been filed; and
  (e) other facts of record in the office of the Secretary if requested by the applicant.

(4)   Subject to any qualification stated in the certificate, a certificate of existence or authority issued by the Secretary may be relied upon as conclusive evidence as of the date of the certificate that the domestic or foreign limited liability company is in existence or is authorized to transact business on the Rocky Boy's Indian Reservation.

## Section 214.    Liability For False Statement in Filed Record.

Subject to Section 303 of this Chapter, if a record authorized or required to be filed under this Chapter contains a false statement, a person who suffers loss by reliance on the statement may recover damages for the loss from the person who signed the record or caused another to sign it

11

on that person's behalf and who knew the statement to be false at the time that the record was signed.

### Section 215.    Filing By Judicial Act.

If a person required by Section 204 of this Chapter to execute any record or document fails or refuses to do so, a person who is adversely affected by the failure or refusal may petition the Chippewa Cree Tribal Court to direct the signing of the record or document.  If the court finds that it is proper for the record or document to be signed and that a designated person has failed or refused to sign the record, it shall order the Secretary to sign and file an appropriate record or document.

### Section 216.    Knowledge and Notice.

(1)    A person knows a fact if the person has actual knowledge of the fact.
(2)    A person has notice of a fact if the person:
    (a)    knows the fact;
    (b)    has received a notification of the fact; or
    (c)    has reason to know that the fact exists from other facts known to the person at the time in question.
(3)    A person notifies or gives a notification of a fact to another by taking steps reasonably required to inform the other person, whether or not the other person knows the fact.
(4)    A person receives a notification when the notification:
    (a)    comes to the persons attention; or
    (b)    is delivered at the person's place of business or at any other place held out by the person as a place for receiving communications.
(5)    (a)    An entity knows, has notice, or receives a notification of a fact for purposes of a particular transaction:
        (i)    when an individual conducting the transaction for the entity knows, has notice, or receives a notification of the fact; or
        (ii) when the fact would have been brought to the individual's attention had the entity exercised reasonable diligence.
    (b)    (i)    An entity exercises reasonable diligence if it maintains reasonable routines for communicating significant information to the individual conducting the transaction for the entity and there is reasonable compliance with the routines.
        (ii)    Reasonable diligence does not require an individual acting for the entity to communicate information unless the communication is part of the individual's regular duties or the individual has reason to know of the transaction and to know that the transaction would be materially affected by the information.

### Part 3 – Members/Managers

### Section 301.    Agency Power of Members and Managers.

(1)    Except as provided in subsection (2), a member is an agent of the limited liability company for the purpose of its business or affairs and the act of a member, including but not limited to the execution of any instrument in the name of the limited liability company for apparently carrying on in the usual way the business or affairs of the limited liability company binds the limited liability company, unless the member so acting has, in fact, no

000014

authority to act for the limited liability company in the particular matter and the person with whom the member is dealing has knowledge of the fact that the member has no such authority.

(2)  If the articles of organization provide that management of the limited liability company is vested in a manager or managers, whether designated as "manager" or otherwise:

    (a)  a member, acting solely in the capacity as a member, may not be an agent of the limited liability company; and

    (b)  a manager is an agent of the limited liability company for the purpose of its business or affairs and the act of a manager, including but not limited to the execution of any instrument in the name of the limited liability company for apparently carrying on in the usual way the business or affairs of the limited liability company binds the limited liability company, unless the manager so acting has, in fact, no authority to act for the limited liability company in the particular matter and the person with whom the manager is dealing has knowledge of the fact that the manager has no such authority.

(3)  An act of a manager or a member that is not apparently for carrying on in the usual way the business of the limited liability company does not bind the limited liability company, unless authorized in accordance with the articles of organization or the operating agreement, at the time of the transaction or at any other time.

(4)  An act of a manager or member in contravention of a restriction on authority may not bind the limited liability company to persons having knowledge of the restriction.

**Section 302.      Admissions of Members and Managers.**

(1)  Except as provided in subsection (2), an admission or representation made by a member concerning the business or affairs of a limited liability company within the scope of the member's authority as provided for by this part is evidence against the limited liability company.

(2)  If the articles of organization provide that management of the limited liability company is vested in a manager or managers:

    (a)  an admission or representation made by a manager concerning the business or affairs of a limited liability company within the scope of the manager's authority, as provided for by this part, is evidence against the limited liability company; and

    (b)  the admission or representation of a member, acting solely in the capacity as a member, may not constitute evidence.

**Section 303.   Limited Liability Company Liability For Member's or Manager's Conduct.**

(1)  A limited liability company is liable for loss or injury caused to a person, or for a penalty incurred, as a result of a wrongful act or omission or other actionable conduct of a member or manager acting in the ordinary course of business of the company or with the authority of the company.

(2)  The failure of a limited liability company to observe the usual company formalities or requirements relating to the exercise of its company power or management of its business is not a ground for imposing personal liability on the member or managers of the limited liability company.

(3)

**Section 304.      Management and Voting.**

13

(1) Unless the articles of organization or the operating agreement provide otherwise, in a member-managed company:

    (a) each member has equal rights in the management and conduct of the company's business; and

    (b) except as provided in subsection (3), any matter relating to the business of the company may be decided by a majority of the members.

(2) Unless the articles of organization or the operating agreement provide otherwise, in a manager- managed company:

    (a) each manager has equal rights in the management and conduct of the company's business;

    (b) except as provided in subsection (3), any matter relating to the business of the company may be exclusively decided by the manager or, if there is more than one manager, by a majority of the managers; and

    (c) a manager:

        (i) must be designated, appointed, elected, removed, or replaced by a vote, approval, or consent of a majority of the members; and

        (ii) holds office until a successor has been elected and qualified, unless the manager sooner resigns or is removed.

(3) Unless the articles of organization or the operating agreement provide otherwise, the only matters of a member-managed or manager-managed company's business requiring the consent of all of the members are:

    (a) the amendment of the operating agreement under Section 108 of this Chapter;

    (b) the authorization or ratification of acts or transactions under Section 108(3)(b)(ii) of this Chapter that would otherwise violate the duty of loyalty;

    (c) an amendment to the articles of organization under Section 203 of this Chapter;

    (d) the compromise of an obligation to make a contribution under Section 402 of this Chapter;

    (e) the compromise, as among members, of an obligation to make a contribution or return money or other property paid or distributed in violation of this part;

    (f) the making of interim distributions under Section 501 of this Chapter, including the redemption or repurchase of an interest;

    (g) the admission of a new member;

    (h) the use of the company's property to redeem an interest subject to a charging order;

    (i) the consent to dissolve the company under Section 801 of this Chapter;

    (j) a waiver of the right to have the company's business wound up and the company terminated under Section 801 of this Chapter;

    (k) the sale, lease, exchange, or other disposal of all, or substantially all, of the company's property with or without goodwill.

(4) Action requiring the consent of members or managers under this Chapter may be taken without a meeting.

(5) A member or manager may appoint a proxy to vote or otherwise act for the member or manager by signing an appointment instrument, either personally or by the member's or manager's attorney-in-fact.

**Section 305.** <u>**General Standards of Member's and Manager's Conduct.**</u>

(1) The only fiduciary duties that a member owes to a member-managed company and the

000016

other members are the duty of loyalty imposed by subsection (2) and the duty of care imposed by subsection (3).

(2)   A member's duty of loyalty to a member-managed company and its other members is limited to the following:

    (a)    to account to the company and to hold as trustee for it any property, profit, or benefit derived by the member in the conduct or winding up of the company's business or derived from a use by the member of the company's property, including the appropriation of a company's opportunity;

    (b)    to refrain from dealing with the company in the conduct or winding up of the company's business on behalf of a party or as a person having an interest adverse to the company; and

    (c)    to refrain from competing with the company in the conduct of the company's business before the dissolution of the company.

(3)   A member's duty of care to a member-managed company and the other members in the conduct of and winding up of the company's business is limited to refraining from engaging in grossly negligent or reckless conduct, intentional misconduct, or a knowing violation of law.

(4)   A member shall discharge the duties under this part or the operating agreement to a member- managed company and its other members and exercise any rights consistently with the obligation of good faith and fair dealing.

(5)   A member of a member-managed company does not violate a duty or obligation under this part or under the operating agreement merely because the member's conduct furthers the member's own interest.

(6)   A member of a member-managed company may lend money to and transact other business with the company. As to each loan or transaction, the rights and obligations of the member are the same as those of a person who is not a member, subject to other applicable law.

(7)   This section applies to a person winding up the limited liability company's business as the personal or legal representative of the last-surviving member as if the person were a member.

(8)   In a manager-managed company:

    (a)    a member who is not also a manager owes no duties to the company or to the other members solely by reason of being a member;

    (b)    a manager is held to the same standards of conduct as those prescribed for members in subsections (2) through (6);

    (c)    a member who pursuant to the operating agreement exercises some or all of the rights of a manager in the management and conduct of the company's business is held to the standards of conduct prescribed for members in subsections (2) through (6) to the extent that the member exercises the managerial authority vested in a manager by this part; and

    (d)    a manager is relieved of liability imposed by law for violation of the standards prescribed for members by subsections (2) through (6) to the extent of the managerial authority delegated to the members by the operating agreement.

**Section 306**.      **Records and Information.**

(1)   Unless otherwise provided in the articles of organization or a written operating agreement, a limited liability company shall keep at its principal place of business the following:

(a)    a current and past list, setting forth the full name and last-known mailing address of each member and manager, if any, set forth in alphabetical order;

(b)    a copy of the articles of organization and all amendments to the articles, together with executed copies of any powers of attorney pursuant to which any articles have been executed;

(c)    copies of the limited liability company's (if applicable) federal, state, and local income tax returns and financial statements, if any, for the 3 most recent years or, if the returns and statements were not prepared for any reason, copies of the information and statements provided to or that should have been provided to the members to enable them to prepare their federal, state, and local tax returns for the period;

(d)    copies of any effective written operating agreements and all amendments and copies of any written operating agreements no longer in effect;

(e)    unless provided in writing in an operating agreement:

    (i)    a writing, if any, setting forth the amount of cash, the agreed value of other property or services contributed by each member, and the times or events upon which any additional contributions agreed to by each member are to be made;

    (ii)   a writing, if any, stating events that require the limited liability company to be dissolved and its affairs wound up; and

    (iii)  other writings, if any, prepared pursuant to a requirement in an operating agreement.

(2)    (a)    A member may, at the member's own expense, inspect and copy any limited liability company record, wherever the record is located, upon reasonable request during ordinary business hours.

    (b)    A former member and agents or attorneys of a former member must be provided access and the same right to copy records pertaining to the period that the former member was a member.

(3)    Members, if the management of the limited liability company is vested in the members, or managers, if management of the limited liability company is vested in the managers, shall render, to the extent the circumstances make it just and reasonable, true and full information of all things affecting the members to any member and to the legal representative of any deceased member or of any member under legal disability.

(4)    Failure of the limited liability company to keep or maintain any of the records or information required pursuant to this section may not be grounds for imposing liability on any person for the debts and obligations of the limited liability company.

**Section 307**.    **Actions By Members.**

(1)    A member may maintain an action against a limited liability company or another member for legal or equitable relief, with or without an accounting as to the company's business, to enforce:

(a)    the member's rights under the operating agreement;

(b)    the member's rights under this part; or

(c)    the rights and otherwise protect the interests of the member, including rights and interests arising independently of the member's relationship to the company.

(2)    The accrual of a right of action under this section and any time limits for asserting the right of action for a remedy under this section are governed by the laws of the Chippewa Cree

16

Tribe. A right to an accounting upon a dissolution and winding up does not revive a claim barred by law.

**Section 308.      Continuation of Term Company After Expiration of Specified Term.**
(1)   If a term company is continued after the expiration of the specified term, the rights and duties of the members and managers remain the same as they were at the expiration of the term except to the extent inconsistent with rights and duties of members and managers of an at-will company.
(2)   If the members in a member-managed term company or the managers in a manager-managed term company continue the business without any winding up of the business of the company, it continues as an at-will company.

**Part 4 – Finance**

**Section 401.      Contributions to Capital.**
An interest in a limited liability company may be issued in exchange for tangible or intangible property or other benefit to the company, including money, promissory notes, services performed, or other agreements to contribute cash or property or contracts for services to be performed.

**Section 402.      Liability For Contribution.**
(1)   A promise by a member to contribute to the limited liability company is not enforceable unless set out in a writing signed by the member.
(2)   (a)   Except as provided in the articles of organization or the operating agreement, a member is obligated to the limited liability company to perform any enforceable promises to contribute cash or property or to perform services even if the member is unable to perform because of death, disability, or other reason.
      (b)   If a member does not make the required contribution of property or services, the member is obligated, at the option of the limited liability company, to contribute cash equal to that portion of value or the stated contribution that has not been made.
(3)   (a)   Unless otherwise provided in the articles of organization or the operating agreement, the obligation of a member to make a contribution or return money or other property paid or distributed in violation of this part may be compromised only with the unanimous consent of the members.
      (b)   A creditor of a limited liability company who extends credit or otherwise acts in reliance on an obligation described in subsection (1), and without notice of any compromise, may enforce the original obligation.

**Section 403.      Sharing of Profits and Losses.**
Unless otherwise provided in the articles of organization or a written operating agreement, each member must be repaid that member's contributions to capital and share equally in the profits, losses, and surpluses remaining after all liabilities, including those to members, are satisfied.

**Section 404.      Member's and Manager's Rights to Payments and Reimbursement.**
(1)   A limited liability company shall reimburse a member or manager for payments made and indemnify a member or manager for liabilities incurred by the member or manager in the

000019

ordinary course of the business of the company or for the preservation of the company's business or property.

(2)   A limited liability company shall reimburse a member for an advance to the company beyond the amount of contribution that the member agreed to make.

(3)   A payment or advance made by a member that gives rise to an obligation of a limited liability company under subsection (1) or (2) constitutes a loan to the company upon which interest accrues from the date of the payment or advance.

(4)   A member is not entitled to remuneration for services performed for a limited liability company except for reasonable compensation for services rendered in winding up the business of the company.

## Part 5 – Distribution

**Section 501**.     **Sharing of Distributions**.

Except as provided in Section 805 of this Chapter, distributions of cash or other assets of a limited liability company must be shared among the members and among classes of members in the manner provided in writing in the articles of organization or the operating agreement. If the articles of organization or the operating agreement does not so provide in writing, each member shall share equally in any distribution. A member is entitled to receive distributions described in this section from a limited liability company to the extent and at the times or upon the happening of the events specified in the articles of organization or the operating agreement or at the times determined by the members or managers pursuant to Section 304(3)(f).

**Section 502**.     **Distribution In Kind**.

Except as provided in the articles of organization or the operating agreement:

(1)   a member, regardless of the nature of the member's contribution, may not demand or receive any distribution from a limited liability company in any form other than cash; and

(2)   a member may not be compelled to accept from a limited liability company a distribution of any asset in kind to the extent that the percentage of the asset distributed to the members exceeds a percentage of that asset that is equal to the percentage in which the member shares in distributions from the limited liability company.

**Section 503**.     **Distributions.**

(1)   A distribution may not be made if, after giving effect to the distribution:

   (a)   the limited liability company would not be able to pay its debts as they become due in the usual course of business; or

   (b)   the limited liability company's total assets would be less than the sum of its total liabilities plus, unless the articles of organization or the operating agreement provides otherwise, the amount that would be needed, if the limited liability company were to be dissolved at the time of the distribution, to satisfy the preferential rights of other members upon dissolution that are superior to the rights of the member receiving the distribution.

(2)   The limited liability company may base a determination that a distribution is not prohibited under subsection (1) on either:

   (a)   financial statements prepared on the basis of accounting practices and principles that are reasonable under the circumstances; or

000020

(b)    a fair valuation or other method that is reasonable under the circumstances.

(3)    Except as provided in subsection (5), the effect of a distribution under subsection (1) is measured as of:

    (a)    the date the distribution is authorized if the payment occurs within 120 days after the date of authorization; or

    (b)    the date payment is made if it occurs more than 120 days after the date of authorization.

(4)    A limited liability company's indebtedness to a member incurred by reason of a distribution to be made to that member in accordance with this section is at parity with the limited liability company's indebtedness to its general unsecured creditors, except as otherwise provided by agreement.

(5)    For purposes of this section:

    (a)    if terms of indebtedness provide that payment of principal and interest is to be made only if and to the extent that payment of a distribution to members could then be made under this section, indebtedness of a limited liability company, including indebtedness issued as a distribution, is not a liability for purposes of determinations made under subsection (2); and

    (b)    if the indebtedness is issued as a distribution, each payment of principal or interest on the indebtedness is treated as a distribution, the effect of which is measured on the date the payment is actually made.

**Section 504**.    <u>**Liability Upon Wrongful Distribution**</u>.

(1)    A member or manager who votes for or assents to a distribution in violation of the articles of organization, the operating agreement, or Section 503 of this Chapter is personally liable to the limited liability company, but not to other persons, for the amount of the distribution that exceeds what could have been distributed without violating Section 503 of this Chapter or the articles of organization or the operating agreement if it is established that the member or manager did not perform the member's or manager's duties in compliance with Section 305 of this Chapter.

(2)    A member of a manager-managed company who knew a distribution was made in violation of Section 503 of this Chapter, the articles of organization, or the operating agreement is personally liable to the company, but only to the extent that the distribution received by that member exceeded the amount that could have properly been paid to that member under Section 503 of this Chapter.

(3)    A member or manager against whom an action is brought under this section may implead in the action:

    (a)    other members and managers who voted for or assented to the distribution in violation of subsection (1) and may compel contribution from them; and

    (b)    members who received a distribution in violation of subsection (2) and may compel a contribution from the members in the amount received in violation of subsection (2).

(4)    A proceeding under this section is barred unless it is commenced within 2 years after the date of the distribution.

**Section 505**.    <u>**Right to Distribution**</u>.

Subject to Section 805, when a member becomes entitled to receive a distribution, the member has the status of and is entitled to all remedies available to a creditor of the limited liability

company with respect to the distribution.

## Part 6 – Ownership and Transfer of Property.

### Section 601.   <u>Ownership of Limited Liability Company Property</u>.

(1)   Property transferred to or otherwise acquired by a limited liability company becomes property of the limited liability company. A member has no interest in specific limited liability company property.

(2)   Property may be acquired, held, and conveyed in the name of the limited liability company. Any estate in real property may be acquired in the name of the limited liability company, and title to any estate acquired must vest in the limited liability company rather than in the members individually.

### Section 602.   <u>Transfer of Real Property</u>.

(1)   Except as provided in subsection (5), title to property of the limited liability company that is held in the name of the limited liability company may be transferred by an instrument of transfer executed by any member in the name of the limited liability company.

(2)   Title to property of the limited liability company that is held in the name of one or more members or managers may be transferred by an instrument of transfer executed by the persons in whose name title is held if there is an indication in the instrument transferring title to the property to them of:

    (a)   their capacity as members or managers of a limited liability company; or

    (b)   the existence of a limited liability company, even if the name of the limited liability company is not indicated.

(3)   Property transferred under subsection (1) or (2) may be recovered by the limited liability company if it proves that the act of the person executing the instrument of transfer did not bind the limited liability company under Section 301 of this Chapter unless the property has been transferred by the initial transferee or a person claiming through the initial transferee to a subsequent transferee who gives value without having notice that the person who executed the instrument of initial transfer lacked authority to bind the limited liability company.

(4)   Title to property of the limited liability company may be transferred free of any claims of the limited liability company or its members by the persons in whose name title is held to a transferee who gives value without having notice that it is property of a limited liability company if title is held in the name of one or more persons other than the limited liability company and there is no indication in the instrument transferring title to the property to them of:

    (a)   their capacity as members or managers of a limited liability company; or

    (b)   the existence of a limited liability company.

(5)   If the articles of organization provide that management of the limited liability company is vested in a manager or managers:

    (a)   title to property of the limited liability company that is held in the name of the limited liability company may be transferred by an instrument of transfer executed by any manager in the name of the limited liability company; and

    (b)   a member, acting solely in the capacity of a member, may not transfer title as provided in subsection (5)(a).

**Section 603**.      **Nature of Distributional Interest**.

(1)    A member is not a co-owner of, and does not have a transferable interest in, property of a limited liability company.

(2)    A member's distributional interest in a limited liability company is personal property and, subject to the provisions of Section 605 of this Chapter, may be transferred in whole or in part.

(3)    An operating agreement may provide that a members distributional interest may be evidenced by a certificate of the interest issued by the limited liability company and, subject to the provisions of Section 605 of this Chapter, may also provide for the transfer of any interest represented by the certificate.

**Section 604.      Rights of Judgment Creditor**.

(1)    On application to a court of competent jurisdiction by any judgment creditor of a member, the court may charge the distributional interest of the member with payment of the unsatisfied amount of judgment, with interest. To the extent charged, the judgment creditor has only the rights of an assignee of the distributional interest. This part does not deprive a member of the benefit of any exemption laws applicable to a distributional interest.

(2)    The court may appoint a receiver of the share of the distributions due or to become due to a judgment debtor and make all other orders, directions, accounts, and inquiries that the judgment debtor may have made or that the circumstances require to give effect to the charging order.

(3)    A charging order constitutes a lien on the judgment debtors distributional interest. The court may order a foreclosure of a lien on a distributional interest subject to the charging order at any time. A purchaser of the distributional interest at a foreclosure sale has the rights of a transferee.

(4)    At any time before foreclosure, a distributional interest that is charged may be redeemed:

    (a)    by the judgment debtor;

    (b)    by one or more of the other members with property other than the company's; or

    (c)    with the company's property if permitted by the operating agreement.

(5)    This section provides the exclusive remedy by which a judgment creditor of a member or a transferee may satisfy a judgment out of the judgment debtor's distributional interest in a limited liability company.

**Section 605**.      **Transfer of Distributional Interest—Rights of Transferee**.

(1)    A transfer of a members distributional interest does not entitle the transferee to become a member or to exercise any rights of a member. A transfer entitles the transferee to receive, to the extent transferred, only the distributions to which the transferor would be entitled.

(2)    A transferee of a distributional interest may become a member of a limited liability company if and to the extent that the transferor gives the transferee the right in accordance with authority described in writing in the operating agreement or if all other members consent.

(3)    A transferee who has become a member, to the extent transferred, has the rights and powers, and is subject to the restrictions and liabilities, of a member under the operating agreement of a limited liability company and the provisions of this part. A transferee who becomes a member also is liable for the transferor members obligations to make

21

contributions under Section 402 of this Chapter and for obligations under to return unlawful distributions, but the transferee is not obligated for the transferor members liabilities unknown to the transferee at the time that the transferee becomes a member.

(4)   Whether or not a transferee of a distributional interest becomes a member under subsection (2), the transferor is not released from liability to the limited liability company under the operating agreement or the provisions of this Chapter.

(5)   A transferee who does not become a member is not entitled to participate in the management or conduct of the limited liability company's business, may not require access to information concerning the company's transactions, and may not inspect or copy any of the company's records.

(6)   A transferee who does not become a member is entitled to:

(a)   receive, in accordance with the transfer, distributions to which the transferor would otherwise be entitled;

(b)   receive, upon dissolution and winding up of the limited liability company's business:

(i)   in accordance with the transfer, the net amount otherwise distributable to the transferor; and

(ii)    a statement of account only from the date of the latest statement of account agreed to by all the members; and

(c)   seek under Section 802(2) of this Chapter a judicial determination that it is equitable to dissolve and wind up the company's business.

(7)   A limited liability company does not have to give effect to a transfer until it has notice of the transfer.


## Part 7 – Withdrawal of Members

**Section 701**.      **Events Causing Member's Dissociation.**
A member is dissociated from a limited liability company upon the occurrence of any of the following events:

(1)   the company's having notice of the member's express will to withdraw upon the date of notice or on a later date if specified by the member;

(2)   an event agreed to in the operating agreement as causing the member's dissociation;

(3)   upon transfer of all of a member's distributional interest, other than a transfer for security purposes or pursuant to a court order charging the member's distributional interest that has not been foreclosed;

(4)   the member's expulsion pursuant to the operating agreement;

(5)   the member's expulsion by unanimous vote of the other members if:

(a)   it is unlawful to carry on the company's business with the member;

(b)   there has been a transfer of substantially all of the member's distributional interest, other than a transfer for security purposes or pursuant to a court order charging the member's distributional interest, which has not been foreclosed;

(c)   within 90 days after the company notifies a corporate member that it will be expelled because it has filed a certificate of dissolution or the equivalent, its charter has been revoked, or its right to conduct business has been suspended by the jurisdiction of its incorporation, the member fails to obtain a revocation of the certificate of dissolution or a reinstatement of its charter or its right to conduct business; or

22

     (d)    a partnership or a limited liability company that is a member has been dissolved, and its business is being wound up;

(6)    on application by the company or another member, the member's expulsion by judicial determination because the member:

     (a)    engaged in wrongful conduct that adversely and materially affected the company's business;

     (b)    willfully or persistently committed a material breach of the operating agreement or of a duty

owed to the company or the other members under Section 305 of this Chapter; or

     (c)    engaged in conduct relating to the company's business that makes it not reasonably practicable to carry on the business with the member;

(7)    the member's:

     (a)    becoming a debtor in bankruptcy;

     (b)    executing an assignment for the benefit of creditors;

     (c)    seeking, consenting to, or acquiescing in the appointment of a trustee, receiver, or liquidator of all or substantially all of the member's property; or

     (d)    failing, within 90 days after the appointment, to have vacated or stayed the appointment of a trustee, receiver, or liquidator of the member or of all or substantially all of the member's property obtained without the member's consent or acquiescence or failing within 90 days after the expiration of stay to have the appointment vacated;

(8)    in the case of a member who is an individual:

     (a)    the member's death;

     (b)    the appointment of a guardian or general conservator for the member; or

     (c)    a judicial determination that the member has otherwise become incapable of performing the member's duties under the operating agreement;

(9)    in the case of a member that is a trust or is acting as a member by virtue of being a trustee of a trust, distribution of the trust's entire rights to receive distributions from the company, except that this subsection does not apply to the substitution of a successor trustee;

(10)  in the case of a member that is an estate or is acting as a member by virtue of being a personal representative of an estate, distribution of the estates entire rights to receive distributions from the company, but not merely the substitution of a successor personal representative; or

(11)  termination of the existence of a member if the member is not an individual, estate, or trust other than a business trust.

**Section 702**.     **Member's Power to Dissociate—Wrongful Dissociation.**

(1)    Unless otherwise provided in the operating agreement, a member has the power to dissociate from a limited liability company at any time, rightfully or wrongfully, pursuant to Section 701 of this Chapter.

(2)    If the operating agreement has not eliminated a members power to dissociate, the members dissociation from a limited liability company is wrongful only if:

     (a)    it is in breach of an express provision of the agreement; or

     (b)    before the expiration of the specified term of a term company:

         (i)    the member withdraws by express will;

      (ii)    the member is expelled by judicial determination under Section 701(6) of this Chapter;

      (iii)   the member is dissociated by becoming a debtor in bankruptcy; or

      (iv)   in the case of a member that is not an individual, trust, other than a business trust, or estate, the member is expelled or otherwise dissociated because it willfully dissolved or terminated its existence.

(3)    A member that wrongfully dissociates from a limited liability company is liable to the company and to the other members for damages caused by the dissociation. The liability is in addition to any other obligation of the member to the company or to the other members.

(4)    If a limited liability company does not dissolve and wind up its business as a result of a member's wrongful dissociation under subsection (2), damages sustained by the company for the wrongful dissociation must be offset against distributions otherwise due the member after the dissociation.

**Section 703**.    **Effect of Member's Dissociation.**

(1)    Upon a member's dissociation:

    (a)    in an at-will company, the company shall cause the dissociated member's distributional interest to be purchased as provided under Section 704 and Section 705 of this Chapter; and

    (b)    in a term company:

      (i)    if the company dissolves and winds up its business on or before the expiration of its specified term, Part 8 of this part applies to determine the dissociated member's rights to distributions; and

      (ii)   if the company does not dissolve and wind up its business on or before the expiration of its specified term, the company shall ensure that the dissociated member's distributional interest is purchased under Section 704 and Section 705 of this Chapter on the date that was specified for the expiration of the term at the time of the member's dissociation.

(2)    Upon a member's dissociation from a limited liability company:

    (a)    the member's right to participate in the management and conduct of the company's business terminates, except as otherwise provided in Section 803 of this Chapter, and the member ceases to be a member and must be treated the same as a transferee of a member;

    (b)    the member's duty of loyalty under Section 305(2)(c) of this Chapter terminates; and

    (c)    the member's duty of loyalty under Section 305(2)(a) and (2)(b) of this Chapter and duty of care under Section 305(3) of this Chapter continue only with regard to matters arising and events occurring before the member's dissociation, unless the member participates in winding up the company's business pursuant to Section 803 of this Chapter.

**Section 704.**    **Company Purchase of Distributional Interest.**

(1)    A limited liability company shall purchase a distributional interest of a:

    (a)    member of an at-will company for its fair value determined as of the date of the member's dissociation if the member's dissociation does not result in a dissolution and winding up of the company's business under Section 801 of this Chapter; or

    (b)    member of a term company for its fair value determined as of the date of the

24

       expiration of the specified term that existed on the date of the member's dissociation if the expiration of the specified term does not result in a dissolution and winding up of the company's business under Section 803 of this Chapter.

(2)   A limited liability company shall deliver a purchase offer to the dissociated member whose distributional interest is entitled to be purchased not later than 30 days after the date determined under subsection (1). The purchase offer must be accompanied by:

   (a)   a statement of the company's assets and liabilities as of the date determined under subsection (1);

   (b)   the latest available balance sheet and income statement, if any; and

   (c)   an explanation of how the estimated amount of the payment was calculated.

(3)   If the price and other terms of a purchase of a distributional interest are fixed or are to be determined by the operating agreement, the price and terms so fixed or determined govern the purchase unless the purchaser defaults. If a default occurs, the dissociated member is entitled to commence a proceeding to have the company dissolved under Section 802(1)(d) of this Chapter.

(4)   If an agreement to purchase the distributional interest is not made within 120 days after the date determined under subsection (1), the dissociated member, within another 120 days, may commence a proceeding against the limited liability company to enforce the purchase. The company, at its expense, shall notify in writing all of the remaining members and any other person that the court directs of the commencement of the proceeding. The jurisdiction of the court in which a proceeding is commenced under this subsection is plenary and exclusive.

(5)   The tribal court shall determine the fair value of the distributional interest in accordance with the standards set forth in Section 705 of this Chapter, together with the terms for the purchase. Upon making these determinations, the court shall order the limited liability company to purchase or cause the purchase of the interest.

(6)   Damages for wrongful dissociation under Section 702(2) of this Chapter and all other amounts owing, whether or not currently due, from the dissociated member to a limited liability company, must be offset against the purchase price.

**Section 705**.    **<u>Court Action to Determine Fair Value of Distributional Interest.</u>**

(1)   In an action brought to determine the fair value of a distributional interest in a limited liability company, the court shall:

   (a)   determine the fair value of the interest, considering among other relevant evidence the going concern value of the company, any agreement among some or all of the members fixing the price or specifying a formula for determining value of distributional interests for any other purpose, the recommendations of any appraiser appointed by the court, and any legal constraints on the company's ability to purchase the interest;

   (b)   specify the terms of the purchase, including, if appropriate, terms for installment payments, subordination of the purchase obligation to the rights of the company's other creditors, security for a deferred purchase price, and a covenant not to compete or other restriction on a dissociated member; and

   (c)   require the dissociated member to deliver an assignment of the interest to the purchaser upon receipt of the purchase price or the first installment of the purchase price.

(2)   After the dissociated member delivers the assignment, the dissociated member has no further claim against the company, its members, officers, or managers, if any, other than a claim to any unpaid balance of the purchase price or a claim under any agreement with the company or the remaining members that is not terminated by the court.

(3)   If the purchase is not completed in accordance with the court's specified terms, the company is to be dissolved upon application under Section 802(1)(d) of this Chapter. If a limited liability company is so dissolved, the dissociated member has the same rights and priorities in the company's assets as if the sale of the distributional interest had not been ordered.

(4)   If the court finds that a party to the proceeding acted arbitrarily, vexatiously, or not in good faith, it may award one or more other parties reasonable expenses, including attorney fees and the expenses of appraisers or other experts, incurred in the proceeding. The finding may be based on the company's failure to make an offer to pay or to comply with Section 704(2) of this Chapter.

(5)   Interest must be paid on the amount awarded from the date determined under Section 704(1) of this Chapter to the date of payment.

**Section 706.    Dissociated Members Power to Bind Limited Liability Company.**

For 2 years after a member dissociates without the dissociation resulting in a dissolution and winding up of a limited liability company's business, the company is bound by an act of the dissociated member that would have bound the company under Section 301 of this Chapter before dissociation only if at the time of entering into the transaction the other party:

(1)   reasonably believed that the dissociated member was then a member;

(2)   did not have notice of the member's dissociation; and

(3)   is not considered to have had notice under Section 707 of this Chapter.

**Section 707.    Statement of Dissociation.**

(1)   A dissociated member or a limited liability company shall file in the office of the Secretary a statement of dissociation, stating the name of the company and that the member is dissociated from the company.

(2)   For the purposes of Section 301 and Section 706 of this Chapter, a person not a member is considered to have notice of the dissociation 90 days after the statement of dissociation is filed.

**Part 8 – Dissolution**

**Section 801**.    **Dissolution.**

(1)   A limited liability company is dissolved and its affairs must be wound up when one of the following occurs:

(a)   at the time or upon the occurrence of events specified in writing in the articles of organization or operating agreement;

(b)   consent of the number or percentage of members specified in the operating agreement;

(c)    an event that makes it unlawful for all or substantially all of the business of the company to be continued, but any cure of illegality within 90 days after notice to the

26

company of the event is effective retroactively to the date of the event for purposes of this section;

    (d)    the expiration of the term specified in the articles of organization; or

    (e)    entry of a decree of judicial dissolution under Section 802 of this Chapter.

(2)    Subject to subsection (3), a limited liability company continues after dissolution only for the purpose of winding up its business.

(3)    At any time after the dissolution of a limited liability company and before the winding up of its business is completed, the members, including a dissociated member whose dissociation caused the dissolution, may unanimously waive the right to have the company's business wound up and the company terminated. In that case:

    (a)    the limited liability company resumes carrying on its business as if dissolution had never occurred, and any liability incurred by the company or a member after the dissolution and before the waiver is determined as if the dissolution had never occurred; and

    (b)    the rights of a third party accruing under the provisions of Section 804(1) or arising out of conduct by the third party in reliance on the dissolution before the third party knew or received a notification of the waiver are not adversely affected.

## Section 802.    Judicial Dissolution.

(1)    On application by or for a member or a dissociated member, the Chippewa Cree Tribal Court may order dissolution of a limited liability company, or other appropriate relief, when:

    (a)    the economic purpose of the company is likely to be unreasonably frustrated;

    (b)    another member has engaged in conduct relating to the company's business that makes it not reasonably practicable to carry on the company's business with that member remaining as a member;

    (c)    it is not otherwise reasonably practicable to carry on the company's business in conformity with the articles of organization and the operating agreement;

    (d)    the company failed to purchase the petitioner's distributional interest as required by Section 703 of this Chapter or

    (e)    the members or managers in control of the company have acted, are acting, or will act in a manner that is illegal, oppressive, fraudulent, or unfairly prejudicial to the petitioner.

(2)    On application by a transferee of a member's interest, the Chippewa Cree Tribal Court may determine that it is equitable to wind up the company's business:

    (a)    after the expiration of the specified term, if the company was for a specified term at the time that the applicant became a transferee by member dissociation, transfer, or entry of a charging order that gave rise to the transfer; or

    (b)    at any time, if the company was at will at the time that the applicant became a transferee by member dissociation, transfer, or entry of a charging order that gave rise to the transfer.

## Section 803.    Winding Up.

(1)    Except as otherwise provided in the articles of organization or the operating agreement, the business or affairs of the limited liability company may be wound up:

    (a)    by the members or managers who have authority under Section 504 of this Chapter to manage the limited liability company prior to dissolution; or

000029

(b)   if one or more of the members or managers have engaged in wrongful conduct or upon other cause shown, by the Chippewa Cree Tribal Court on application of any member or any members legal representative or assignee.

(2)   The persons winding up the business or affairs of the limited liability company may, in the name of and for and on behalf of the limited liability company:

(a)   prosecute and defend suits;

(b)   settle and close the business of the limited liability company;

(c)   dispose of and transfer the property of the limited liability company;

(d)   discharge the liabilities of the limited liability company; and

(e)   distribute to the members any remaining assets of the limited liability company.

**Section 804**.    **Agency Power and Liability of Members or Managers After Dissolution.**

(1)   Except as provided in subsections (3) through (5), after an event causing dissolution of the limited liability company, a member may bind the limited liability company:

(a)   by an act appropriate for winding up the limited liability company's affairs or completing transactions unfinished at dissolution; and

(b)   by any transaction that would have bound the limited liability company, if it had not been dissolved, if the other party to the transaction does not have notice of the dissolution.

(2)   The filing of the articles of termination is presumed to constitute notice of dissolution for purposes of subsection (1)(b).

(3)   An act of a member that would not otherwise be binding on the limited liability company under subsection (1) is binding if it is authorized by the limited liability company.

(4)   An act of a member that would be binding under subsection (1) or would be otherwise authorized and that is in contravention of a restriction on authority may not bind the limited liability company to persons having knowledge of the restriction.

(5)   If the articles of organization vest management of the limited liability company in managers, a manager may exercise the authority of a member under subsection (1) and a member may not exercise the authority if the member is acting solely in the capacity of a member.

(6)   A member or manager who, with knowledge of the dissolution, subjects a limited liability company to liability by an act that is not appropriate for the winding up of the company's business is liable to the company for any damage caused by the act.

**Section 805.**    **Distribution of Assets.**

Upon the winding up of a limited liability company, the assets must be distributed as follows:

(1)   to creditors, including members and managers who are creditors, to the extent otherwise permitted by law, in satisfaction of liabilities of the limited liability company, whether by payment or the making of reasonable provision for payment, other than liabilities to members for distributions under Section 504 of this Chapter;

(2)   unless otherwise provided in the articles of organization or an operating agreement, to members and former members in satisfaction of liabilities for distributions under Section 504 of this Chapter;

(3)   unless otherwise provided in writing in the articles of organization or a written operating agreement, to members first for the return of their contributions and second respecting their

28

limited liability company interests, in the proportions in which the members share in distributions.

**Section 806.   Articles of Termination.**

(1)   At any time after dissolution and winding up, a limited liability company may terminate its existence by filing with the Secretary articles of termination stating:

    (a)   the name of the limited liability company;

    (b)   the reason for filing the articles of termination;

    (c)   the effective date of the articles of termination, which must be a date certain, if they are not to be effective upon the filing;

    (d)   the name of the agent or agents authorized to receive service of process after dissolution or termination of the limited liability company;

    (e)   the name of the person or persons authorized to wind up the business and authorized to execute documents on behalf of the limited liability company;

    (f)   the date of the dissolution; and

    (g)   that the company's business has been wound up and the legal existence of the company has been terminated.

(2)   The existence of a limited liability company is terminated upon the filing of the articles of termination or upon a later effective date, if specified in the articles of termination.

**Section 807.   Known Claims Against Dissolved or Terminated Limited Liability Companies.**

(1)   A dissolved or terminated limited liability company may dispose of the known claims against it by following the procedure described in this section.

(2)   The dissolved or terminated limited liability company shall notify its known claimants in writing of the dissolution or termination at any time after the effective date of the dissolution or termination. The written notice must:

    (a)   describe information that must be included in a claim;

    (b)   provide a mailing address where a claim may be sent;

    (c)   state the deadline, which may not be less than 120 days from the later of the effective date of the written notice or the filing of the articles of termination pursuant to Section 806 of this Chapter, by which the dissolved or terminated limited liability company must receive the claim; and

    (d)   state that the claim will be barred if not received by the deadline.

(3)   A claim against the dissolved or terminated limited liability company is barred:

    (a)   if a claimant who was given written notice under subsection (2) does not deliver the claim to the dissolved or terminated limited liability company by the deadline; or

    (b)   if a claimant whose claim was rejected by the dissolved or terminated limited liability company does not commence a proceeding to enforce the claim within 90 days from the effective date of the rejection notice.

(4)   For purposes of this section, 'claim" does not include a contingent liability or a claim based on an event occurring after the effective date of the dissolution or termination.

**Section 808.   Unknown Claims Against Dissolved or Terminated Limited Liability Companies.**

(1)   Subject to Section 807 of this Chapter and subsections (2) through (5) of this section, the dissolution or termination of a limited liability company, including dissolution by the expiration of its term, does not take away or impair any remedy available to or against the limited liability company or its members or managers for any claim or right, whether or not the claim or right existed or accrued prior to dissolution or termination. A proceeding by or against the limited liability company may be prosecuted or defended by the limited liability company in its name. The members and managers have power to take action as appropriate to protect the remedy, right, or claim.

(2)   A dissolved or terminated limited liability company may publish notice of its dissolution or termination and request that persons having claims against it present the claims in accordance with the notice.

(3)   The notice must:

    (a)   be published at least once in a newspaper of general circulation on the Rocky Boy's Indian Reservation where the dissolved or terminated limited liability company's principal office is located;

    (b)   describe the information required to be contained in a claim and provide a mailing address to which the claim is to be sent; and

    (c)   state that a claim against the limited liability company is barred unless a proceeding to enforce the claim is commenced within 5 years after publication of the notice.

(4)   If a dissolved or terminated limited liability company publishes a notice in accordance with subsection (3), the claim of each of the following claimants is barred unless the claimant commences a proceeding to enforce the claim against the dissolved or terminated company within 5 years after the publication date of the notice:

    (a)   a claimant who did not receive written notice under Section 807 of this Chapter;

    (b)   a claimant whose claim was timely sent to the dissolved or terminated company but not acted on; and

    (c)   a claimant whose claim is contingent on or based on an event occurring after the effective date of dissolution or termination.

(5)   A claim not barred under this section may be enforced:

    (a)   against the dissolved or terminated limited liability company, to the extent of its undistributed assets; or

    (b)   if the assets have been distributed in liquidation, against a member of the dissolved or terminated company to the extent of the member's proportionate share of the claim or the company's assets distributed to the member in liquidation, whichever is less, but a member's total liability for all claims under this section may not exceed the total amount of assets distributed to the member.

**Section 809.   <u>Involuntary Dissolution—Procedure</u>.**

(1)   A limited liability company that is guilty of any of the actions or omissions described in Section 208(1) of this Chapter is in default. By reason of the default, the limited liability company may be involuntarily dissolved by order of the Secretary, thereby forfeiting its right to transact any business on the Rocky Boy's Indian Reservation.

(2)   On or before September 1 of each year, the Secretary shall compile a list of defaulting limited liability companies, together with the amount of any filing fee, penalty, or costs remaining unpaid.

(3)   The Secretary shall give notice to the defaulting limited liability companies by:

    (a)    mailing a letter addressed to the limited liability company in care of its registered agent or any director or officer; or

    (b)    publication of a general notice once a month for 3 consecutive months in the newspaper of the Rocky Boy's Indian Reservation.

(4)    The notice referred to in subsection (3) must specify the fact of the proposed dissolution and state that unless the grounds for dissolution described in Section 208 of this Chapter have been rectified within 90 days following the mailing or publication of notice:

    (a)    the Secretary will dissolve the defaulting limited liability companies;

    (b)    defaulting limited liability companies will forfeit the amount of any tax, penalty, or costs to the Chippewa Cree Tribe; and

    (c)    defaulting limited liability companies will forfeit their rights to carry on business within the Rocky Boy's Indian Reservation.

(5)    After 90 days following mailing or publication of each notice, the Secretary may, by order, dissolve all limited liability companies that have not satisfied the requirements of applicable law and compile a full and complete list containing the names of all limited liability companies that have been so dissolved. The Secretary shall immediately give notice to the dissolved limited liability companies as specified in subsection (3).

(6)    In the case of involuntary dissolution, all the property and assets of the dissolved limited liability companies must be held in trust by the members or managers of the limited liability companies and the limited liability companies may carry on business only as necessary to wind up and liquidate their business and affairs under Section 801 of this Chapter and to notify claimants under Sections 807 and 808 of this Chapter.

(7)    The administrative dissolution of a limited liability company does not terminate the authority of its registered agent for service of process.

**Section 810.**    **Reinstatement Following Administrative Dissolution.**

(1)    A limited liability company administratively dissolved may apply to the Secretary for reinstatement within 5 years after the effective date of dissolution. The applicant shall file an official application. The application must:

    (a)    recite the name of the company and the effective date of its administrative dissolution;

    (b)    state that the ground for dissolution either did not exist or has been eliminated;

    (c)    state that the company's name satisfies the requirements of  Section103 of this Chapter;

    (d)    contain a certificate from the department of revenue reciting that all taxes owed by the company have been paid; and

    (e)    include all annual reports not yet filed with the Secretary.

(2)    If the Secretary determines that the application contains the information required by subsection (1) and that the information is correct, the Secretary shall cancel the certificate of dissolution, prepare a certificate of reinstatement that recites this determination and the effective date of reinstatement, file the original of the certificate, and serve the company with a copy of the certificate.

(3)    When reinstatement is effective, it relates back to and takes effect as of the effective date of the administrative dissolution, and the company may resume its business as if the administrative dissolution had not occurred.

**Section 811**.     <u>Appeal From Denial of Reinstatement.</u>
(1)   If the Secretary denies a limited liability company's application for reinstatement following administrative dissolution, the Secretary shall serve the company with a record that explains the reason or reasons for the denial.
(2)   The company may appeal the denial of reinstatement to the Chippewa Cree Tribal Court within 30 days after service of the notice of denial. The company shall appeal by petitioning the court to set aside the dissolution and attaching to the petition copies of the Secretary's certificate of dissolution, the company's application for reinstatement, and the Secretary's notice of denial.
(4)   The court may summarily order the Secretary to reinstate the dissolved company or may take other action that the court considers appropriate.
(5)   The court's final decision may be appealed as in other civil proceedings.

**Part 9 – Foreign Limited Liability Companies.**

**Section 901**.     <u>Authority to Transact Business Required.</u>
(1)   A foreign limited liability company may not transact business on the Rocky Boy's Indian Reservation until it obtains a certificate of authority from the Secretary.
(2)   The following activities, among others, do not constitute transacting business within the meaning of subsection (1):
   (a)   maintaining, defending, or settling any proceeding;
   (b)   holding meetings of the members or managers or carrying on other activities concerning internal affairs of the limited liability company;
   (c)   maintaining bank accounts;
   (d)   maintaining offices or agencies for the transfer, exchange, and registration of the limited liability company's own securities or maintaining trustees or depositaries with respect to those securities;
   (e)   selling through independent contractors;
   (f)   soliciting or obtaining orders, whether by mail or through employees or agents or otherwise, if the orders require acceptance outside the Rocky Boy's Indian Reservation before they become contracts;
   (g)   creating or acquiring indebtedness, mortgages, and security interests in real or personal property;
   (h)   securing or collecting debts or enforcing mortgages and security interests in property securing the debts;
   (i)   owning real or personal property that is acquired incident to activities described in subsection (2)(h) if the property is disposed of within 5 years after the date of acquisition, does not produce income, or is not used in the performance of a function of the limited liability company;
   (j)   conducting an isolated transaction that is completed within 30 days and that is not a transaction in the course of repeated transactions of a similar nature; or
   (k)   transacting business in interstate commerce.
(3)   The list of activities in subsection (2) is not exhaustive.
(4)   Except as provided in subsection (2), a foreign limited liability company is transacting business within the meaning of subsection (1) if it enters into a contract with Chippewa Cree Tribe, an agency or department of the Chippewa Cree Tribe, or a wholly owned

32

business or subsidiary business of the Chippewa Cree Tribe and must apply for and receive a certificate of authority to transact business before entering into the contract. The Secretary shall provide written notice to the contracting parties regarding the requirement that a foreign limited liability company obtain a certificate of authority. The foreign limited liability company must be allowed 30 days from the date of the notice to obtain the certificate of authority, and an existing contract may not be voided prior to the expiration of the 30 days.


**Section 902.**     **Consequences of Transacting Business Without Authority.**

(1)  A foreign limited liability company transacting business on the Rocky Boy's Indian Reservation without a certificate of authority may not maintain a proceeding in Chippewa Cree Tribal Court until it obtains a certificate of authority.

(2)  The successor to a foreign limited liability company that transacted business on the Rocky Boy's Indian Reservation without a certificate of authority and the assignee of a cause of action arising out of that business may not maintain a proceeding based on that cause of action in Chippewa Cree Tribal Court until the foreign limited liability company or its successor obtains a certificate of authority.

(3)  Chippewa Cree Tribal Court may stay a proceeding commenced by a foreign limited liability company or its successor or assignee until it determines whether the foreign corporation or its successor or assignee requires a certificate of authority. If it determines that a certificate is required, the court may further stay the proceeding until the foreign limited liability company or its successor obtains the certificate.

(4)  A foreign limited liability company is liable for a civil penalty of $50 for each day, but not to exceed a total of $10,000 for each year, that it transacts business on the Rocky Boy's Indian Reservation without a certificate of authority. The Chippewa Cree Tribal prosecutor may collect all penalties due under this subsection and deposit them to the general fund.

(5)  Notwithstanding the provisions of subsections (1) and (2) and except as provided in subsection (6), the failure of a foreign limited liability company to obtain a certificate of authority does not impair the validity of its acts or prevent it from defending any proceeding on the Rocky Boy's Indian Reservation.

(6)  A contract between the Chippewa Cree Tribe, an agency or department of the Chippewa Cree Tribe, or a wholly owned business of the Chippewa Cree Tribe and a foreign limited liability company that has failed to obtain a certificate of authority from Chippewa Cree Tribe, the contracting agency or department of the Chippewa Cree Tribe, or the contracting wholly owned business of the Chippewa Cree Tribe.


**Section 903.**     **Application For Certificate of Authority.**

(1)  A foreign limited liability company may apply for a certificate of authority to transact business on the Rocky Boy's Indian Reservation by delivering an application to the Secretary for filing. The application must set forth:

    (a)  the name of the foreign limited liability company or, if its name is unavailable for use on the Rocky Boy's Indian Reservation, a name that satisfies the requirements of Section 909 of this Chapter;

    (b)  the name of the state, tribe, or country under whose law it is organized;

000035

    (c)    its date of organization and period of duration;

    (d)    the street address of its principal office;

    (e)    the address of its registered office on the Rocky Boy's Indian Reservation and the name of its registered agent at that office; and

    (f)    the names and usual business addresses of its current managers, if different from its members.

(2)    A foreign limited liability company shall deliver with the completed application a certificate of existence or a similar document authenticated by the secretary of state or other official having custody of corporate records in the state, tribe, or country under whose law the foreign limited liability company is organized.

**Section 904.     Registered Office and Registered Agent of Foreign Limited Liability Company.**

Each foreign limited liability company authorized to transact business by the Chippewa Cree Tribe shall continuously maintain on the Rocky Boy's Indian Reservation:

(1)    a registered office that may be the same as any of its places of business; and

(2)    a registered agent who shall be:

    (a)    an individual who resides on the Rocky Boy's Indian Reservation and whose business office may be identical with the registered office; or

    (b)    a domestic corporation, a limited liability company, or a foreign corporation or foreign limited liability company authorized to transact business by the Chippewa Cree Tribe.

**Section 905.     Resignation of Registered Agent of Foreign Limited Liability Company.**

(1)    The registered agent of a foreign limited liability company may resign the agency appointment by signing and delivering to the Secretary for filing the original and two copies of a statement of resignation. The statement of resignation may include a statement that the registered office is also discontinued.

(2)    After filing the statement, the Secretary shall attach the filing receipt to one copy and mail the copy and receipt to the registered office if the office has not been discontinued. The Secretary shall mail the other copy to the foreign limited liability company at its principal office address shown in its most recent annual report.

(3)    The agency appointment is terminated and the registered office discontinued, if provided in the statement, 30 days after the date on which the statement was filed.

**Section 906.     Change of Registered Office or Registered Agent of Foreign Limited Liability Company.**

(1)    A foreign limited liability company authorized to transact business on the Rocky Boy's Indian Reservation may change its registered office or registered agent, or both, by delivering to the Secretary, for filing, a statement of change setting forth:

    (a)    the foreign limited liability company's name;

    (b)    the street address of its current registered office;

    (c)    if the address of its registered office is to be changed, the new address of the registered office on the Rocky Boy's Indian Reservation;

    (d)    the name and address of its current registered agent;

    (e)    if its registered agent or the agent's address is to be changed, the name and address of

the successor registered agent or the current registered agent's new address; and

(f)   the fact that after the change or changes are made, the street addresses of its registered office and the business office of its registered agent are identical.

(2)   If a registered agent changes the street address of the registered agent's business office, the registered agent may change the street address of the registered office of any foreign limited liability company for which the registered agent is the registered agent by notifying the foreign limited liability company in writing of the change and signing, either manually or in facsimile, and delivering to the Secretary, for filing, a statement of change that complies with the requirements of subsection (1) and that states that the foreign limited liability company has been notified of the change.

**Section 907.   <u>Amended Certificate of Authority.</u>**

(1)   A foreign limited liability company authorized to transact business on the Rocky Boy's Indian Reservation shall obtain an amended certificate of authority from the Secretary if it changes:

(a)   its name;

(b)   the period of its duration; or

(c)   the state, tribe or country of its organization.

(2)   The requirements of Section 903 of this Chapter for obtaining an original certificate of authority apply to obtaining an amended certificate under this section.

**Section 908.   <u>Effect of Certificate of Authority.</u>**

(1)   A certificate of authority issued by the Secretary authorizes a foreign limited liability company to transact business on the Rocky Boy's Indian Reservation subject to the right of the Chippewa Cree Tribe to revoke the certificate as provided in this part.

(2)   A foreign limited liability company with a valid certificate of authority has the same rights and privileges as a domestic company of similar character and, except as otherwise provided by this part, is subject to the same duties, restrictions, penalties, and liabilities imposed on a domestic limited liability company of similar character.

(3)   This part does not authorize the Chippewa Cree Tribe to regulate the organization or internal affairs of a foreign limited liability company authorized to transact business on the Rocky Boy's Indian Reservation.

**Section 909.   <u>Name.</u>**

A certificate of authority may not be issued to a foreign limited liability company unless the name of the company satisfies the requirements of Section 103 of this Chapter. If the name of a foreign limited liability company does not satisfy the requirements of Section 103 of this Chapter, to obtain or maintain a certificate of authority:

(1)   the foreign limited liability company may add the words "limited liability company", the abbreviation "l.l.c.", or the abbreviation "l.c." to its name for use on the Rocky Boy's Indian Reservation; or

(2)   if its real name is unavailable, the foreign limited liability company may use an assumed business name that is available and that satisfies the requirements of Section 207 of this Chapter, if it files the assumed business name with the Secretary.

**Section 910.   <u>Withdrawal of Foreign Limited Liability Company.</u>**

(1)    A foreign limited liability company authorized to transact business on the Rocky Boy's Indian Reservation may not withdraw from the Rocky Boy's Indian Reservation until it obtains a certificate of withdrawal from the Secretary.

(2)    A foreign limited liability company authorized to transact business on the Rocky Boy's Indian Reservation may apply for a certificate of withdrawal by delivering an application to the Secretary for filing. The application must set forth:

    (a)    the name of the foreign limited liability company and the name of the state, tribe, or country under whose law it is organized;

    (b)    that it is not transacting business on the Rocky Boy's Indian Reservation and that it surrenders its authority to transact business on the Rocky Boy's Indian Reservation;

    (c)    that it revokes the authority of its registered agent to accept service on its behalf and appoints the Secretary as its agent for service of process in any proceeding based on a cause of action arising during the time it was authorized to transact business on the Rocky Boy's Indian Reservation;

    (d)    a mailing address to which the Secretary may mail a copy of any process served on the Secretary under subsection (3);

    (e)    a commitment to notify the Secretary in the future of any change in its mailing address;

    (f)    additional information as may be necessary or appropriate to enable the Secretary to determine and assess any unpaid fees or taxes payable by the foreign limited liability company.

(3)    After the withdrawal of the foreign limited liability company is effective, service of process on the Secretary under this section is service on the foreign limited liability company. Upon receipt of process, the Secretary shall mail a copy of the process to the foreign limited liability company at the mailing address set forth under subsection (2).

## Section 911.    Grounds For Revocation.

The Secretary may commence a proceeding under Section 912 of this Chapter to revoke the certificate of authority of a foreign limited liability company authorized to transact business on the Rocky Boy's Indian Reservation if:

(1)    the foreign limited liability company does not deliver its annual report to the Secretary within 140 days after it is due;

(2)    the foreign limited liability company is without a registered agent or registered office on the Rocky Boy's Indian Reservation for 60 days or more;

(3) the foreign limited liability company does not inform the Secretary under Section 105 of this Chapter  that its registered agent or registered office has changed, that its registered agent has resigned, or that its registered office has been discontinued within 60 days of the change, resignation, or discontinuance; or

 (4) the Secretary receives a duly authenticated certificate from the Secretary or other official having custody of company records in the state, tribe, or country under whose law the foreign limited liability company is organized, stating that it has been dissolved or disappeared as the result of a merger.

## Section 912.    Procedure For and Effect of Revocation.

(1)    If the Secretary determines that one or more grounds exist under Section 911 of this Chapter for revocation of a certificate of authority, the Secretary shall serve the foreign

limited liability company with written notice of the Secretary's determination.

(2) If the foreign limited liability company does not correct each ground for revocation or demonstrate to the reasonable satisfaction of the Secretary that each ground determined by the Secretary does not exist within 60 days after service of the notice is mailed, the Secretary may revoke the foreign limited liability company's certificate of authority by signing a certificate of revocation that states the ground or grounds for revocation and the effective date of the revocation. The Secretary shall file the original of the certificate and mail a copy to the foreign limited liability company.

(3) The authority of a foreign limited liability company to transact business on the Rocky Boy's Indian Reservation ceases on the date shown on the certificate revoking its certificate of authority.

(4) The Secretary's revocation of a foreign limited liability company's certificate of authority appoints the Secretary as the foreign limited liability company's agent for service of process in any proceeding based on a cause of action that arose during the time the foreign limited liability company was authorized to transact business on the Rocky Boy's Indian Reservation. Service of process on the Secretary under this subsection is service on the foreign limited liability company. Upon receipt of process, the Secretary shall mail a copy of the process to the secretary of the foreign limited liability company at its principal office shown in its most recent annual report or in any subsequent communication received from the foreign limited liability company, stating the current mailing address of its principal office or, if no report or communication is on file, in its application for a certificate of authority.

(5) Revocation of a foreign limited liability company's certificate of authority does not terminate the authority of the registered agent of the foreign limited liability company.

**Section 913.   Appeal From Revocation.**

(1) A foreign limited liability company may appeal the Secretary's revocation of its certificate of authority to the Chippewa Cree Tribal Court within 30 days after service of the certificate of revocation is mailed. The foreign limited liability company may appeal by petitioning the court to set aside the revocation and by attaching to the petition copies of its certificate of authority and the Secretary's certificate of revocation.

(2) The court may summarily order the Secretary to reinstate the certificate of authority or may take any other action the court considers appropriate.

(3) The court's final decision may be appealed as in other civil proceedings.

**Section 914.   Admission of Foreign Professional Limited Liability Companies -- Application -- Revocation.**

(1) A foreign professional limited liability company is entitled to a certificate of authority to transact business on the Rocky Boy's Indian Reservation only if:

    (a) the name of the foreign professional limited liability company meets the requirements of Section 1102 of this Chapter;

    (b) the foreign professional limited liability company is organized only for purposes for which a professional limited liability company may be organized under Part 11 of this Chapter; and

    (c) all the members and not less than one-half of the managers of the foreign professional limited liability company are qualified persons with respect to the foreign

37

professional limited liability company.

(2) Notwithstanding Section 901 a foreign professional limited liability company may not be required to obtain a certificate of authority to transact business on the Rocky Boy's Indian Reservation unless it maintains an office on the Rocky Boy's Indian Reservation for the conduct of business or professional practice.

(3) The application for a certificate of authority must include a statement that all the members and not less than one-half of the managers are licensed in at least one state or territory or the District of Columbia to render a professional service described in the statement of purposes of the foreign professional limited liability company.

(4) The certificate of authority may be revoked by the Secretary if the foreign professional limited liability company fails to comply with any provision of Part 11 of this Chapter. The licensing authority shall certify to the Secretary, from time to time, the names of all foreign professional limited liability companies that have given cause for revocation, together with the pertinent facts, and shall concurrently mail to each foreign professional limited liability company at its registered office on the Rocky Boy's Indian Reservation a notice that the certification has been made. A certificate of authority of a foreign professional limited liability company may not be revoked unless there have been both 60 days' notice of intent to revoke and a failure to correct the noncompliance during the 60 days.

(5) A foreign professional limited liability company is subject to all other provisions of Part 11 of this Chapter not inconsistent with this section.

## Part 10 – Suits by and Against the Limited Liability Company.

### Section 1001.   Suits By and Against Limited Liability Company.
Suit may be brought by or against a limited liability company in its own name.

### Section 1002.   Service of Process.

(1) An agent for service of process appointed by a limited liability company or a foreign limited liability company is an agent of the company for service of any process, notice, or demand required or permitted by law to be served upon the company.

(2) If a limited liability company or foreign limited liability company fails to appoint or maintain an agent for service of process on the Rocky Boy's Indian Reservation or the agent for service of process cannot with reasonable diligence be found at the agents address, the Secretary is an agent of the company upon whom process, notice, or demand may be served.

(3) Service of any process, notice, or demand on the Secretary may be made by delivering to and leaving with the Secretary duplicate copies of the process, notice, or demand and, when applicable, pursuant to the service provisions of the Chippewa Cree Tribal Rules of Civil Procedure. If the process, notice, or demand is not served pursuant to the provisions of the Chippewa Cree Tribal Rules of Civil Procedure, the Secretary shall forward one of the copies by registered mail, return receipt requested, to the company at its designated office, and the Secretary may require the person requesting the service to reimburse the Secretary for mailing costs. Service is effected under this subsection at the earliest of:

    (a)   the date on which the company receives the process, notice, or demand;

    (b)   the date shown on the return receipt, if signed on behalf of the company; or

(c)   5 days after its deposit in the mail, if mailed postpaid and correctly addressed.

000040

(4)   The Secretary shall keep a record of all processes, notices, and demands served pursuant to this section and record the time of and the action taken regarding the service.

(5)   This section does not affect the right to serve process, notice, or demand in any manner otherwise provided by law.

**Section 1003.   Derivative Actions—Proper Plaintiff—Pleading—Expenses.**

(1)   A member of a limited liability company may maintain an action in the Chippewa Cree Tribal Court in the right of the company if the members or managers having authority to bring the action have refused to commence the action or an effort to cause those members or managers to commence the action is not likely to succeed.

(2)   In a derivative action for a limited liability company, the plaintiff must be a member of the company when the action is commenced and:

   (a)   must have been a member at the time of the transaction of which the plaintiff complains; or

   (b)   the plaintiffs status as a member must have devolved upon the plaintiff by operation of law or pursuant to the terms of the operating agreement from a person who was a member at the time of the transaction.

(3)   In a derivative action for a limited liability company, the complaint must set forth with particularity the effort of the plaintiff to secure initiation of the action by a member or manager or the reasons for not making the effort.

(4)   If a derivative action for a limited liability company is successful, in whole or in part, or if anything is received by the plaintiff as a result of a judgment, compromise, or settlement of an action or claim, the court may award the plaintiff reasonable expenses, including reasonable attorney fees, and shall direct the plaintiff to remit to the limited liability company the remainder of the proceeds received.

**Part 11 – Professional Limited Liability Company.**

**Section 1101.   Purposes of Professional Limited Liability Companies.**

Professional limited liability companies may be organized under this part only for the purpose of rendering professional services and services ancillary to professional services within a single profession, except that a professional limited liability company may be organized for the purpose of rendering professional services within two or more professions and for any purpose or purposes for which companies may be organized under this part to the extent that the combination of professional purposes or professional and business purposes is permitted by the licensing laws and rules of the Chippewa Cree Tribe applicable to the professions.

**Section 1102.   Professional Limited Liability Company Name.**

The name of a domestic or foreign professional limited liability company:

(1)   must contain the words "professional limited liability company", "professional limited company", "professional l.l.c.", "professional llc", "p.l.l.c.", or "pllc"; and

(2)   must conform to rules promulgated by a licensing authority having jurisdiction of a professional service described in the articles of organization.

**Section 1103.   Professional Limited Liability Company Managers.**

000041

At least one-half of the managers of a professional limited liability company must be qualified persons with respect to the limited liability company.

**Section 1104.      Membership In Professional Limited Liability Company.**
(1)    Only the following persons may be members of a professional limited liability company:
    (a)    natural persons authorized by law of the Chippewa Cree Tribe or any other tribe, state, a territory of the United States, or the District of Columbia to render a professional service permitted by the articles of organization of the professional limited liability company;
    (b)    general partnerships in which all the partners are authorized by law of the Chippewa Cree Tribe or any other tribe, state, a territory of the United States, or the District of Columbia to render a professional service permitted by the articles of incorporation and in which at least one partner is authorized by law of the Chippewa Cree Tribe to render a professional service permitted by the articles of organization of the professional limited liability company; and
    (c)    domestic or foreign professional corporations and domestic or foreign professional limited liability companies authorized by law of the Chippewa Cree Tribe or tribe, state to render a professional service permitted by the articles of organization of the professional limited liability company.
(2)    The licensing authority may by rule further restrict or condition the issuance of membership interests in order to preserve ethical standards, but a rule may not cause a member at the time the rule becomes effective to become a disqualified person.

**Section 1105.      Rendering Services.**
A domestic or foreign professional limited liability company may render professional services on the Rocky Boy's Indian Reservation only through natural persons permitted to render the services on the Rocky Boy's Indian Reservation; however, nothing in this part requires any person employed by a professional limited liability company to be licensed to perform services for which a license is not otherwise required or prohibits the rendering of professional services by a licensed natural person acting in that person's individual capacity, even if the person is a member or manager of a professional limited liability company.

**Section 1106.      Responsibility For Services.**
(1)    An individual who renders professional services as a member or an employee of a domestic or foreign professional limited liability company is liable for any negligent or wrongful act or omission in which the individual personally participates to the same extent as if the individual had rendered the services as a sole practitioner. A member or an employee of a professional limited liability company is not liable for the conduct of other members or employees unless the member or employee is at fault in appointing, supervising, or cooperating with them.
(2)    A domestic or foreign professional limited liability company whose member or employee performs professional services within the scope of the member's or employee's employment or apparent authority to act for the company is liable to the same extent as the member or employee.
(3)    Except as otherwise provided by statute, the personal liability of a member of a domestic or foreign professional limited liability company is no greater in any respect than that of a

000042

member of a limited liability company otherwise organized under this part.

**Section 1107.     <u>Relationship to Clients And Patients.</u>**

(1)    The relationship between an individual performing professional services as an employee of a domestic or foreign professional limited liability company and a client or patient is the same as if the individual performed the services as a sole practitioner.

(2)    The relationship between a domestic or foreign professional limited liability company performing professional services and the client or patient is the same as between the client or patient and the individual performing the services.

(3)    Any privilege applicable to communications between a person rendering professional services and the person receiving the services recognized under the statutory or common law of the Chippewa Cree Tribe extends to a domestic or foreign professional limited liability company and its employees.

000043