**Exhibit 1 (Part 2 of 2)**

**Declaration of Theodore Whitford – Exhibits D-G**

# EXHIBIT D

## ARTICLES OF ORGANIZATION
### OF
### FIRST AMERICAN ASSET RECOVERY, LLC

The Chippewa Cree Tribe of the Rocky Boy's Reservation ("Tribe"), a federally recognized Indian Tribe organized pursuant to Section 16 of the Act of June 18, 1934 (48 Stat. 984) (25 U.S.C. § 476) as amended by the Act of June 15, 1935 (48 Stat. 378), acting through the Chippewa Cree Tribal Business Committee, hereby authorizes these Articles of Organization to be filed under the Law and Order Code of the Chippewa Cree Tribe, Title 14, Chippewa Cree Tribe Limited Liability Company Act ("CCTLLA"), for the purpose of creating the tribal limited liability company ("Company") described herein.

The Company described herein is to be wholly owned by the Tribe and is subject to Sections 101 to 1107 of the CCTLLA.

Section 1. <u>Name</u>. The name of the Company is:

First American Asset Recovery, LLC

Section 2. <u>Duration</u>. The period of existence of the Company shall be perpetual, except that the Company may have these Articles of Organization amended or restated or the Company may be dissolved in accordance with the CCTLLA.

Section 3. <u>Purposes and Powers</u>.

3.1 <u>Purposes</u>. The Company is formed pursuant to and shall be subject to the laws of the Tribe and shall be at all times wholly owned by the Tribe. The Tribe shall have the sole proprietary interest in, and shall have sole responsibility for the conduct of the activities of, the Company. The purposes for which the Company is organized are:

(a) To serve the social, economic, educational and health needs of the Tribe;

(b) To increase tribal revenues;

(c) To enhance the Tribe's economic self-sufficiency and self-determination; and

(d) To provide positive, long-term social, environmental and economic benefits to tribal members by enhancing the Tribe's business undertakings and prospects.

3.2 <u>Powers</u>. In furtherance of the foregoing purposes the Company shall have and may exercise all of the rights, powers, and privileges now or hereafter conferred upon limited liability companies organized under the laws of the Tribe. In addition, it may do everything necessary, suitable or proper for the accomplishment of any of its purposes. Without in any way limiting the

Ex. D
PG- Motion to Dismiss

000001

scope and generality of the foregoing, the Company shall have and may exercise the following powers:

(a) To carry on the business of a financial services company engaging in a debt collection, acquisition and recovery business and providing other related goods and services;

(b) To form subsidiary corporations and to enter into business associations, and other business arrangements;

(c) To conduct and carry out business either within or outside of the exterior boundaries of the Chippewa Cree Tribe of the Rocky Boy's Reservation;

(d) To buy, sell, lease, and otherwise acquire and maintain buildings, offices, shops and other appurtenances proper and necessary for the carrying on of said business;

(e) To guarantee, purchase hold assign, mortgage, pledge or otherwise dispose of capital stock of, or any bonds, securities or other evidences of indebtedness created by any other corporation or organization that is in existence under the laws of the United States, any state, Indian tribe, nation, government, or country and to exercise all the rights, privileges, and powers of ownership;

(f) To enter into and make contracts of every kind and nature with any person, government agency, firm, association, corporation, municipality, nation, Indian tribe, state or political body, without the approval of the Secretary of the Interior, except when the use of trust of federally restricted Indian property requires such approval;

(g) To purchase, take by gift or bequest, acquire, own lease, manage, operate, deal in and dispose of real and personal property of all kinds and descriptions, whenever situated;

(h) To incur debts and raise, borrow and secure the payment of any money in any lawful manner, including the issue and sale or other disposal of stocks, bonds, indentures, obligations, negotiable and transferable instruments and evidence of indebtedness of all kinds, whether secured by mortgage pledge, deed of trust of otherwise, without the approval of the Secretary of the Interior, except when the use of trust or federally-restricted Indian property requires such approval;

(i) To apply for, obtain, register, purchase, lease or otherwise acquire, own, hold, use, operate and introduce, and to sell, assign or otherwise dispose of any trademark, trade name, patent invention, improvements, and processes used in connection with or secured under letters patent, and to use, exercise, develop, grant and give licenses in respect thereto; and

(j) To exercise such powers as are incidental to the Company's powers and as may be at any time permitted under the CCTLLA and deemed desirable to give effect to

000002

the Company's purpose.

3.3 Purposes and Powers Not Limited. The enumeration herein of any specific purpose or power shall not be held to limit or restrict in any manner the exercise by the Company of the general powers and privileges now or hereafter conferred by the laws of the Tribe upon limited liability companies formed under the CCTLLA, or the accomplishment of any purpose now or hereafter permitted to the Company pursuant to these Articles of Organization.

Section 4. Immunities of the Company and Personnel.

4.1. Jurisdictional Immunity of the Company. The Chippewa Cree Tribe hereby confers on the Company all of the Tribe's rights, privileges and immunities concerning federal, state, and local taxes, regulation, and jurisdiction, to the same extent that the Tribe would have such rights, privileges, and immunities, if it engaged in the activities undertaken by the Company.

4.2. Sovereign Immunity of the Company and Personnel. The Chippewa Cree Tribe hereby confers on the Company sovereign immunity from suit to the same extent that the Tribe would have such sovereign immunity if it engaged in the activities undertaken by the Company. It is the intention of the Chippewa Cree Tribe that the extension to the Company of such sovereign immunity from suit shall apply to the Company's directors, officers, employees and agents to the same extent that the Tribe's directors, officers, employees and agents would have such sovereign immunity if the Tribe engaged in the activities undertaken by the Company. In furtherance of and in clarification of the Company's power to "sue and be sued" as set forth and intended in the CCTLLA, the Company shall have the power to sue and is authorized to consent to be sued in the Chippewa Cree Tribal Court or another court of competent jurisdiction, provided, however, that:

(a) no such consent to suit shall be effective against the Company in any manner and to any extent whatsoever unless such consent is:

(1) explicit,

(2) contained in a written contract or commercial document to which the Company is a party, and

(3) specifically approved by the board of directors of the Company, and

(b) any recovery against such Company shall be limited to the assets of the Company in the manner and to the extent as explicitly set forth in such consent.

Any consent to suit may as explicitly set forth in such consent be limited to the court or courts in which suit may be brought, to the matters that may be made the subject of the suit and to the assets or revenues of the Company against which any judgment may be executed.

000003

Consent to suit by the Company shall in no way extend to an action against the Tribe, nor shall consent to suit by the Company in any way be deemed a waiver of any of the rights, privileges and immunities of the Tribe. The Tribe shall not be liable for the payment or performance of any of the obligations of the Company, and no recourse shall be had against any assets or revenues of the Tribe in order to satisfy the obligations of the Company.

The sovereign immunity of the Company shall not extend to actions against the Company by the Tribe.

Section 5. Principal Place of Business; Mailing Address; Registered Agent.

5.1. Principal Place of Business. The Company shall be a resident of and maintain its corporate headquarters on the Rocky Boy's Reservation, in Montana, but may conduct its business activities any place in or outside of the United States. The company may have such other offices, either within or without the Rocky Boy's Reservation as the business of the corporation may require from time to time.

5.2. Mailing Address and Registered Agent. The mailing address of the company's initial registered office is First American Financial Services Corporation, LLC c/o Chippewa Cree Tribe, R.R. 1 Box 544, Box Elder, Montana 59521 and the name of the initial registered agent at this address is Raymond "Jake" Parker, Tribal Chairman.

Section 6. Operational Requirements.

6.1. Fiscal Year. The Company shall have a fiscal year, which shall be determined by the board of directors during the first twelve months of operation of the company. Such fiscal year shall end on the last day of any one calendar month, and shall begin the first day of the next succeeding calendar month.

6.2. Business Plan. Not less than 30 days prior to the beginning of each fiscal year, the Company shall prepare a business plan for such fiscal year and present it to the Chippewa Cree Tribal Business Committee for review and approval.

6.3. Annual Report. Not less than 90 days following the end of each fiscal year, the Company shall prepare and deliver to the Chippewa Cree Tribal Business Committee an annual report and an audited financial statement, including a balance sheet and a statement of income and expenses, including comparative figures from the preceding fiscal year.

Section 7. Board of Directors.

7.1 Duties and Powers; Operating Agreement. The business and activities of the Company shall be managed by the board of directors. The board of directors is hereby vested with all powers necessary to carry out the purposes of the Company and shall have control and management of the business and activities of the Company. The directors shall in all cases act as a board. The directors may adopt such provisions in an operating agreement for the conduct of

4

their meetings and the management of the Company as they may deem proper, not inconsistent with the Chippewa Cree Tribe Limited Liability Company Act and other tribal laws, or these Articles of Organization.

7.2 <u>Number</u>.  The number of directors that shall constitute the whole board of directors of the Company shall be 5.  Each director of the Company shall be a member of the Tribe; two (2) of the directors shall be members of the Chippewa Cree Tribal Business Committee, and, two (2) of the directors shall be officers of the Chippewa Cree Community Development Corporation.

7.3 <u>Term</u>.  The initial board of directors shall choose, by lot, two (2) directors who will serve an initial term of one year, two (2) directors who will serve an initial term of two years and one (1) directors who will serve an initial term of three years.  Thereafter, the term of each director shall be for three years

7.4. <u>Selection</u>.  The initial board of directors shall be as follows:

John Chance Houle, Chairman
Joseph Lafromboise, Vice-Chairman
Billi Anne Morsette, Secretary
Theodore Whitford
Tony Belcourt

Vacancies on the board of directors shall be filled by the Chippewa Cree Tribal Business Committee.

7.5. <u>Resignation: Removal</u>.  Any director may resign from office at any time, such resignation to be made in writing and to take effect immediately without acceptance.  A director may be removed, with cause, by the Chippewa Cree Tribal Business Committee.

7.6 <u>Chief Executive Officer</u>. The Company will appoint and hire a Chief Executive Officer ("CEO") to manage the Company on a daily basis.  The CEO or the board of directors shall have the authority to hire and terminate employees whenever necessary.

Section 8. <u>Indemnification.</u>  The Company may at the discretion of the board of directors, indemnify any current or former director, officer or employee against reasonable expenses actually necessarily incurred by him or her in connection with the defense of any action, suit, or proceeding in which he or she is made a party by reason of being, or having been, such director, officer or employee of the Company and the reasonable cost of settlement of any such action or proceeding, if a majority of directors not seeking indemnification or otherwise involved in the controversy shall determine in good faith:

(a) That such person did not act, fail to act, or refuse to act willfully or with gross negligence or with fraudulent or criminal intent; and

(b) That legal fees paid or any settlements made are reasonable; and

000005

( c ) That the person seeking indemnification did not act beyond the scope of his or her employment or office; and

( d ) That it is in the best interests of the Company that indemnification is made.

Section 9.  Amendments.  The board of directors may recommend amendments to the Articles of Organization from time to time as necessary and appropriate.  No amendments to the Articles of Organization shall become operative until official approval is provided by the Chippewa Cree Tribal Business Committee.

Dated: _May 13, 2010_

Organizer :

_[signature]_

Chairman, Chippewa Cree Tribal Business Committee pursuant to a Resolution of the Chippewa Cree Tribal Business Committee

Filed: _May 13, 2010_

_[signature]_ Janice Myers

Tribal Secretary

6

EXHIBIT B – Certificate of Amendment of Plain Green, LLC

000007

# EXHIBIT E

# The Chippewa Cree Tribe of the Rocky Boy's Reservation

Phone: (406) 395-4478 or 4210 - Finance Office
(406) 395-4282 or 4321 - Business Committee

31 Agency Square
Box Elder, Montana 59521

## A RESOLUTION

NO. 39-15

## TO AUTHORIZE AND APPROVE THE AMENDMENTS TO THE ARTICLES OF ORGANIZATION FOR PLAIN GREEN, LLC TO STRENGTHEN THE BUSINESS MANAGEMENT AND OPERATIONS TO CONTINUE TO FULFILL THE TRIBE'S ECONOMIC SELF-SUFFICIENCY AND SELF-DETERMINATION GOALS

*********************************************************************

**WHEREAS,** the Chippewa Cree Business Committee is the governing body of the Chippewa Cree Tribe of the Rocky Boy's Indian Reservation, Montana, by the authority of the Constitution and By-Laws of the Chippewa Cree Tribe approved on the 23rd day of November, 1935; and

**WHEREAS,** pursuant to their inherent sovereignty and Constitution and By-Laws of the Chippewa Cree Tribe, the Chippewa Cree Business Committee is charged with the duty to promote and protect the health, security, and general welfare of the Chippewa Cree Tribe; and

**WHEREAS,** the Chippewa Cree Tribe, a federal recognized Indian Tribe organized pursuant to Section 16 of the Indian Reorganization Act of June 18, 1934, as amended by the Act of June 15, 1935, formed Plain Green, LLC as the economic arm of the Tribe which is charted and wholly owned by the Chippewa Cree Tribe and established pursuant to Article VI, Sec. 1(g) and (p) of the Constitution and Bylaws of the Chippewa Cree Tribe and the Chippewa Cree Tribe Limited Liability Act, as codified in Title 14 of the Chippewa Cree Law and Order Code, as amended; and,

**WHEREAS,** the Chippewa Cree Business Committee recognizes the responsibilities of Plain Green, LLC, as the economic arm of the Tribe to: serve the social, economic, education and health needs of the Tribe; increase Tribal revenues; enhance the Tribe's economic self-sufficiency and self-determination; and provide positive, long-term social, environmental, and economic benefits to Tribal members by enhancing the Tribe's business undertakings and prospects; and

**WHEREAS,** the Chippewa Cree Tribe, acting through the Business Committee, previously approved the Articles of Organization for Plain Green, LLC on May 20, 2010 and revised the Articles on February 20, 2013 and November 13, 2014; and

**WHEREAS,** the Plain Green, LLC board of directors have approved the Operating Agreement for Plain Green, LLC for use in the management of Plain Green, LLC and to appoint managing members for Plain Green, LLC; and

## REVIEWED BY CCT-OAG

Ex. E
PG - Motion to Dismiss

000001

NO. 29-15

**WHEREAS**, the Chippewa Cree Tribe, through the Business Committee, has reviewed the amendments to the Articles of Incorporation for Plain Green, LLC and supports strengthening the business management and operations of Plain Green, LLC, to ensure the Tribe's economic self-sufficiency and self-determination goals are further carried out through the operation of Plain Green, LLC; and now

**THEREFORE BE IT RESOLVED**, the Chippewa Cree Tribe, through the Business Committee, authorizes, approves and ratifies the amendments to the Articles of Organization for Plain Green LLC as revised and amended in the attached Articles of Organization for Plain Green, LLC, as presented to the Business Committee.

### CERTIFICATION

I, the undersigned, as Secretary/Treasurer of the Business Committee of the Chippewa Cree Tribe certify that the Business Committee is composed of nine (9) members of whom Seven (7) members constituting a quorum were present at a meeting thereof, duly and regularly called, noticed, convened and held this 13th day of April , 2015, and the foregoing Resolution was duly adopted at said meeting by the affirmative vote of Six (6) members for and Zero (0) members against, and that the Resolution has not been rescinded or amended in any way.

_____
Chairman, Business Committee

_____
Secretary/Treasurer, Business Committee

000002

### ARTICLES OF ORGANIZATION
### OF
### PLAIN GREEN, LLC

**(REVISED FEBRUARY 20, 2013 FROM THE ORIGINAL ARTICLES OF ORGANIZATION AS APPROVED BY THE CHIPPEWA CREE TRIBAL BUSINESS COMMITTEE ON MAY 20, 2010)**

The Chippewa Cree Tribe of the Rocky Boy's Indian Reservation ("Tribe"), a federally recognized Indian Tribe organized pursuant to Section 16 of the Act of June 18, 1934 (48 Stat. 984) (25 U.S.C. § 476) as amended by the Act of June 15, 1935 (48 Stat. 378), acting through the Chippewa Cree Tribal Business Committee, hereby authorizes these Articles of Organization to be filed under the Law and Order Code of the Chippewa Cree Tribe, Title 14, Chippewa Cree Tribe Limited Liability Company Act ("CCTLLA"), for the purpose of creating the Tribal limited liability company called Plain Green, LLC ("Company") described herein.

The Company described herein is to be wholly owned by the Chippewa Cree Tribe with management vested in the majority of its Members. Members shall be the elected leaders serving on the Tribal Business Committee who shall appoint five (5) individuals to serve as Managing Members of the Company and subject to Sections 101 to 1107 of the CCTLLA.

Section 1. Name. The name of the Company is:

Plain Green, LLC

Section 2. Duration. The period of existence of the Company shall be perpetual, except that the Company may have these Articles of Organization amended or restated or the Company may be dissolved in accordance with the CCTLLA.

Section 3. Purposes and Powers.

3.1. Purposes. The Company is formed pursuant to and shall be subject to the laws of the Tribe and shall be at all times wholly owned by the Tribe. The Tribe shall have the sole proprietary interest in, and shall have sole responsibility for the conduct of the activities of, the Company. The purposes for which the Company is organized are:

(a) To serve the social, economic, educational and health needs of the Tribe;

(b) To increase Tribal revenues;

(c) To enhance the Tribe's economic self-sufficiency and self-determination; and

(d) To provide positive, long-term social, environmental and economic benefits to Tribal members by enhancing the Tribe's business undertakings and prospects.

3.2. Powers. In furtherance of the foregoing purposes the Company shall have all of the rights, powers, privileges and federal immunities of the Tribe. The Company shall have

the authority as an instrumentality and agency of the Tribe to carry out all responsibilities as necessary, suitable or proper for the accomplishment of any of its purposes in providing financial services under Tribal law. Without in any way limiting the scope and generality of the foregoing, the Company shall have and may exercise the following powers, including but not limited:

(a) To engage in online an installment loan program under the under Title 10, the Chippewa Cree Tribal Credit Transaction Code as approved by the Chippewa Cree Business Committee by Tribal Resolution No. 19-11 on March 11, 2011 and Tribal Resolution No.____ on October 2, 2014.

(b) To engage, participate and provide any type of financial services and other lawful businesses, enterprises or ventures under Tribal laws;

(c) To generate revenue that will enable the Tribe to be self-sufficient and to provide economic support for the members of the Tribe;

(d) To provide for Tribal economic development, Tribal e-commerce and internet related business enterprise related activities;

(e) To provide for a corporate structure for Tribal economic development, Tribal e-commerce and Tribal internet related business enterprise opportunities; and

(f) To provide for Tribal economic development, Tribal e-commerce and internet related business enterprise related activities as an instrumentality and agency under Tribal law;

(g) To form subsidiary corporations and to enter into business associations, and other business arrangements;

(h) To conduct and carry out business either within or outside of the exterior boundaries of the Chippewa Cree Tribe of the Rocky Boy's Reservation pursuant to Tribal laws;

(i) To buy, sell, lease, and otherwise acquire and maintain buildings, offices, shops and other appurtenances proper and necessary for the carrying on of said business;

(j) To guarantee, purchase, hold, assign, mortgage, pledge or otherwise dispose of capital stock of, or any bonds, securities or other evidences of indebtedness created by any other corporation or organization that is in existence under the laws of the United States, any state, Indian tribe, nation, government, or country and to exercise all the rights, privileges, and powers of ownership;

(k) To enter into and make contracts of every kind and nature with any person, tribal government agency, firm, association, corporation, municipality, nation and/or Indian tribe;

000004

(l) To purchase, take by gift or bequest, acquire, own lease, manage, operate, deal in and dispose of real and personal property of all kinds and descriptions, whenever situated;

(m) To incur debts and raise, borrow and secure the payment of any money in any lawful manner, including the issue and sale or other disposal of stocks, bonds, indentures, obligations, negotiable and transferable instruments and evidence of indebtedness of all kinds, including the provision of security interests as negotiated by the Company;

(n) To apply for, obtain, register, purchase, lease or otherwise acquire, own, hold, use, operate and introduce, and to sell, assign or otherwise dispose of any trademark, trade name, patent invention, improvements, and processes used in connection with or secured under letters patent, and to use, exercise, develop, grant and give licenses in respect thereto; and

(o) To exercise such powers as are incidental to the Company's powers and as may be at any time permitted under the CCTLLA and deemed desirable to give effect to the Company's purpose.

3.3. <u>Purposes and Powers Not Limited</u>.  The enumeration herein of any specific purpose or power shall not be held to limit or restrict in any manner the exercise by the Company of the general powers and privileges now or hereafter conferred by the laws of the Tribe upon limited liability companies formed under the CCTLLA, or the accomplishment of any purpose now or hereafter permitted to the Company pursuant to these Articles of Organization.

Section 4. <u>Immunities of the Company and Personnel</u>.

4.1. <u>Jurisdictional Immunity of the Company</u>.  The Chippewa Cree Tribe hereby confers on the Company all of the Tribe's rights, privileges and federal immunities concerning federal, state, and local taxes, regulation, and jurisdiction, to the same extent that the Tribe would have such rights, privileges, and immunities, if it engaged in the activities undertaken by the Company.

4.2. <u>Sovereign Immunity of the Company and Personnel</u>.  The Chippewa Cree Tribe hereby confers on the Company sovereign immunity from suit to the same extent that the Tribe would have such sovereign immunity if it engaged in the activities undertaken by the Company.  It is the intention of the Chippewa Cree Tribe that the extension to the Company of such sovereign immunity from suit shall apply to the Company's directors, officers, employees and agents to the same extent that the Tribe's directors, officers, employees and agents would have such sovereign immunity if the Tribe engaged in the activities undertaken by the Company.  In furtherance of and in clarification of the Company's power to "sue and be sued" as set forth and intended in the CCTLLA, the Company shall have the power to sue and is authorized to consent to be sued in the

000005

Chippewa Cree Tribal Court or another court of competent jurisdiction, provided, however, that:

> (a) No such consent to suit shall be effective against the Company in any manner and to any extent whatsoever unless such consent is:
>
> > (1) Explicit,
> >
> > (2) Contained in a written contract or commercial document to which the Company is a party, and
> >
> > (3) Specifically approved by the Managing Members of the Company or as delegated to the CEO of the Company by a resolution approved by the Managing Members, and
>
> (b) Any recovery against such Company shall be limited to the assets of the Company in the manner and to the extent as explicitly set forth in such consent.

Any consent to suit may, as explicitly set forth in such consent, be limited to the court or courts in which suit may be brought, to the matters that may be made the subject of the suit and to the assets or revenues of the Company against which any judgment may be executed.

Consent to suit by the Company shall in no way extend to an action against the Tribe, nor shall consent to suit by the Company in any way be deemed a waiver of any of the rights, privileges and immunities of the Tribe. The Tribe shall not be liable for the payment or performance of any of the obligations of the Company, and no recourse shall be had against any assets or revenues of the Tribe in order to satisfy the obligations of the Company.

The sovereign immunity of the Company shall not extend to actions against the Company by the Tribe.

Section 5. Principal Place of Business; Mailing Address; Registered Agent.

5.1. Principal Place of Business. The Company shall be a resident of and maintain its corporate headquarters on the Rocky Boy's Indian Reservation, in Montana, but may conduct its business activities any place in or outside of the United States. The Company may have such other offices, either within or without the Rocky Boy's Indian Reservation as the business of the Company may require from time to time.

5.2. Mailing Address and Registered Agent. The mailing address of the Company's initial registered office is Plain Green, LLC 93 Mack Road, Suite 600, P.O. Box 270, Box Elder, Montana 59521 and the name of the initial registered agent at this address is the CEO of Plain Green, LLC.

4

000006

Section 6. Operational Requirements.

6.1. Fiscal Year. The Company shall have a fiscal year based on the calendar, January 1 thru December 31. Such fiscal year shall end on the last day of any one calendar year, and shall begin the first day of the next succeeding calendar year.

6.2. Operating Agreement. The Company shall prepare an operating agreement to carry out the day-to-day operational duties and responsibilities.

6.3. Annual Report. Not less than 120 days following the end of each fiscal year, the Company shall prepare and deliver to the Chippewa Cree Tribal Business Committee an annual report and an audited financial statement, including a balance sheet and a statement of income and expenses, including comparative figures from the preceding fiscal year.

Section 7. Managing Members.

7.1. Duties and Powers; Operating Agreement. The business and activities of the Company shall be managed by the Managing Members appointed by the Chippewa Cree Tribal Business Committee. The Managing Members are vested with all powers necessary to carry out the purposes of the Company and shall have control and management of the business and activities of the Company. The Managing Members shall in all cases act as a board of directors. The Managing Members may adopt such provisions in an operating agreement for the conduct of their meetings and the management of the Company as they may deem proper, not inconsistent with the Chippewa Cree Tribe Limited Liability Company Act and other Tribal laws, or these Articles of Organization.

7.2. Number. The number of Managing Members for the Company shall be five (5), of which three (3) shall be enrolled members of the Chippewa Cree Tribe. The Managing Members shall be comprised of: 1) two (2) Managing Members shall be enrolled members of the Chippewa Cree Tribe with no less than five (5) years of management experience in a successful, for-profit financial services business or legal experience with a financial services background or accounting/CPA background with a financial services business ; 2) two (2) Managing Members shall have executive management experience with a financial services business; and 3) the Tribal Business Committee shall appoint one (1) Tribal Business Committee member to serve as a Managing Member.

7.3. Term. The appointed Tribal Business Committee Managing Member shall serve according to the elected term of office. The remaining four Managing Members shall serve three (3) year staggered terms.

7.4. Selection. The Chippewa Cree Tribal Business Committee shall select and appoint all five (5) Managing Member positions, one (1) of whom also serves on the Tribal Business Committee. Any vacancies of the Managing Members shall be advertised and appointed by the Tribal Business Committee.

000007

7.5. Resignation; Removal. Any Managing Member may resign at any time, such resignation shall be made in writing and to take effect immediately upon receipt, unless the notice specifies a later date. Any Managing Member may be removed, with cause, by the Tribal Business Committee or by the unanimous vote of the other Managing Members.

7.6. Chief Executive Officer. The Company will appoint and hire a Chief Executive Officer ("CEO") to manage the Company on a daily basis without interference by either the Members or Managing Members of the Company and/or Chippewa Cree Tribal Business Committee members. The CEO shall have the authority to hire and terminate employees whenever necessary.

Section 8. Indemnification. The Company may at the discretion of the Members and Managing Members, indemnify any current or former executive, manager, director, officer, trustee, partner, agent or employee against reasonable expenses actually necessarily incurred by him or her in connection with the defense of any action, suit, or proceeding in which he or she is made a party by reason of being, or having been, such executive, manager, director, officer, trustee, partner, agent or employee of the Company and the reasonable cost of settlement of any such action or proceeding, if a majority of Managing Members not seeking indemnification or otherwise involved in the controversy shall determine in good faith:

> (a) That such person did not act, fail to act, or refuse to act willfully or with gross negligence or with fraudulent or criminal intent; and

> (b) That legal fees paid or any settlements made are reasonable; and

> (c) That the person seeking indemnification did not act beyond the scope of his or her employment or office; and

> (d) That it is in the best interests of the Company that indemnification is made.

Section 9. Amendments. The Members and/or Managing Members may recommend amendments to the Articles of Organization from time to time as necessary and appropriate. No amendments to the Articles of Organization shall become operative until official approval is provided by the Managing Members and ratification by the Members of the Company, the elected officials on the Chippewa Cree Tribal Business Committee.

Dated: *4-14-15*

Organizer:

_____
Chairman, Chippewa Cree Tribal Business
Committee pursuant to a Resolution of the
Chippewa Cree Tribal Business Committee

6

000008

# The Chippewa Cree Tribe of the Rocky Boy's Reservation

Phone: (406) 395-4478 or 4210 - Finance Office
(406) 395-4282 or 4321 - Business Committee



31 Agency Square
Box Elder, Montana 59521

No. 79-16

## A RESOLUTION
## APPROVING AND ADOPTING THE PROPOSED AMENDMENTS TO THE PLAIN GREEN, LLC ARTICLES OF ORGANIZATION AND OPERATING AGREEMENT

**WHEREAS,** the Chippewa Cree Business Committee is the governing body of the Chippewa Cree Tribe of the Rocky Boy's Indian Reservation, Montana, by the authority of the Constitution and By-Laws of the Chippewa Cree Tribe approved on the 23rd day of November, 1935; and

**WHEREAS,** pursuant to their inherent sovereignty and Constitution and By-Laws of the Chippewa Cree Tribe, the Chippewa Cree Business Committee is charged with the duty to promote and protect the health, security, and general welfare of the Chippewa Cree Tribe; and

**WHEREAS,** the Chippewa Cree Tribe, a federally recognized Indian Tribe organized pursuant to Section 16 of the Indian Reorganization Act of June 18, 1934, as amended by the Act of June 15, 1935, formed Atoske, LLC and Plain Green, LLC as economic arms of the Tribe which is chartered and wholly owned by the Chippewa Cree Tribe and established pursuant to Article VI, Sec. 1(g) and (p) of the Constitution and By-Laws of the Chippewa Cree Tribe and the Chippewa Cree Tribe Limited Liability Act, as codified in Title 14 of the Chippewa Cree Law and Order Code, as amended; and

**WHEREAS,** Plain Green, LLC and Atoske, LLC have reviewed, approved, and recommended to the Tribal Business Committee that the Tribe approve and adopt proposed amendments to the Plain Green, LLC Articles of Organization and Operating Agreement; and

**WHEREAS,** the Tribal Business Committee have reviewed and approved the proposed and recommended amendments and believe approval and adoption of the same is in the best interest of Plain Green, LLC, Atoske, LLC, and the Tribe.

**THEREFORE BE IT RESOLVED,** the Chippewa Cree Tribe, through the Business Committee, hereby approves and adopts the amended Plain Green, LLC Articles of Organization and Operating Agreement as attached herein, and directs Atoske, LLC and Plain Green, LLC to perform and complete all necessary tasks and duties to facilitate and finalize the same

## CERTIFICATION

I, the undersigned, as Secretary/Treasurer of the Business Committee of the Chippewa Cree Tribe certify that the Business Committee is composed of nine (9) members of whom _Six_ (*6*) members constituting a quorum were present at a meeting thereof, duly and regularly called, noticed, convened and held this _11th_ day of _August_, 2016, and the foregoing Resolution was adopted at said meeting by the affirmative vote of _five_ (*5*) members for and _Zero_ (*0*) members against, and that the Resolution has not been rescinded or amended in any way.

_Ken St Marks_
Chairman, Business Committee

_[signature]_
Secretary/Treasurer, Business Committee

## ARTICLES OF ORGANIZATION
## OF
## PLAIN GREEN, LLC

**(REVISED DECEMBER 14, 2015, APRIL 1, 2016, AND AUGUST 11, 2016, FROM THE ORIGINAL ARTICLES OF ORGANIZATION AS APPROVED BY THE CHIPPEWA CREE TRIBAL BUSINESS COMMITTEE ON MAY 20, 2010)**

The Chippewa Cree Tribe of the Rocky Boy's Indian Reservation ("Tribe"), a federally recognized Indian Tribe organized pursuant to Section 16 of the Act of June 18, 1934 (48 Stat. 984) (25 U.S.C. § 476) as amended by the Act of June 15, 1935 (48 Stat. 378), acting through the Chippewa Cree Tribal Business Committee, hereby authorizes these Articles of Organization to be filed under the Law and Order Code of the Chippewa Cree Tribe, Title 14, Chippewa Cree Tribe Limited Liability Company Act ("CCTLLA"), for the purpose of creating the Tribal limited liability company called Plain Green, LLC ("Company") described herein.

The Company described herein is to be a wholly owned subsidiary economic arm of Atoske, LLC, a wholly owned economic arm of the Chippewa Cree Tribe. Management of the Company shall be vested in the Manager, and the Company shall be Manager-managed. Atoske, LLC is the sole Member of the Company, and the Member shall be represented by the one (1) Manager appointed by the Member.

Section 1. <u>Name</u>. The name of the Company is:

Plain Green, LLC

Section 2. <u>Duration</u>. The period of existence of the Company shall be perpetual, except that the Company may have these Articles of Organization amended or restated or the Company may be dissolved in accordance with the CCTLLA.

Section 3. <u>Purposes and Powers</u>.

3.1. <u>Purposes</u>. The Company is formed pursuant to and shall be subject to the laws of the Tribe and shall be at all times be a wholly owned subsidiary economic arm of Atoske, LLC. Atoske, LLC, and the Tribe as its sole Member, shall have the sole proprietary interest in, and shall have sole responsibility for the conduct of the activities of, the Company. The purposes for which the Company is organized are:

(a) To serve the social, economic, educational and health needs of the Tribe;

(b) To increase Tribal revenues;

(c) To enhance the Tribe's economic self-sufficiency and self-determination; and

(d) To provide positive, long-term social, environmental and economic benefits to Tribal members by enhancing the Tribe's business undertakings and prospects.

(e) To generate revenues for Atoske, LLC to utilize in furtherance of the purposes of Atoske, LLC for the benefit of the Tribe and its members.

3.2. Powers. In furtherance of the foregoing purposes the Company shall have all of the rights, powers, privileges and federal immunities of the Tribe. The Company shall have the authority as an instrumentality and agency of the Tribe to carry out all responsibilities as necessary, suitable or proper for the accomplishment of any of its purposes in providing financial services under Tribal law. Without in any way limiting the scope and generality of the foregoing, the Company shall have and may exercise the following powers, including but not limited:

(a) To engage in any lawful business which may generate revenue for the Tribe to be self-sufficient or provide economic support for the members of the Tribe;

(b) To engage in online lending and provide an online installment loan product pursuant to Title 10 of the Chippewa Cree Lending and Regulatory Code;

(c) To engage, participate and provide any type of financial services and other lawful businesses, enterprises or ventures under Tribal laws;

(d) To provide for Tribal economic development, Tribal e-commerce and internet related business enterprise related activities;

(e) To provide for a corporate structure for Tribal economic development, Tribal e-commerce and Tribal internet related business enterprise opportunities;

(f) To provide for Tribal economic development, Tribal e-commerce and internet related business enterprise related activities as an instrumentality and agency under Tribal law;

(g) To form subsidiary agencies or corporations and to enter into business associations, and other business arrangements;

(h) To conduct and carry out business either within or outside of the exterior boundaries of the Chippewa Cree Tribe of the Rocky Boy's Indian Reservation pursuant to Tribal laws;

(i) To buy, sell, lease, and otherwise acquire and maintain buildings, offices, shops and other appurtenances proper and necessary for the carrying on of said business;

(j) To guarantee, purchase, hold, assign, mortgage, pledge or otherwise dispose of capital stock of, or any bonds, securities or other evidences of indebtedness created by any other corporation or organization that is in existence under the laws of the United States, any state, Indian tribe, nation, government, or country and to exercise all the rights, privileges, and powers of ownership;

000012

(k) To enter into and make contracts of every kind and nature with any person, tribal government agency, firm, association, corporation, municipality, nation and/or Indian tribe;

(l) To purchase, take by gift or bequest, acquire, own lease, manage, operate, deal in and dispose of real and personal property of all kinds and descriptions, whenever situated;

(m) To incur debts and raise, borrow and secure the payment of any money in any lawful manner, including the issue and sale or other disposal of stocks, bonds, indentures, obligations, loans, negotiable and transferable instruments and evidence of indebtedness of all kinds, including the provision of security interests as negotiated by the Company;

(n) To apply for, obtain, register, purchase, lease or otherwise acquire, own, hold, use, operate and introduce, and to sell, assign or otherwise dispose of any trademark, trade name, patent invention, improvements, and processes used in connection with or secured under letters patent, and to use, exercise, develop, grant and give licenses in respect thereto; and

(o) To exercise such powers as are incidental to the Company's powers and as may be at any time permitted under the CCTLLA and deemed desirable to give effect to the Company's purpose.

3.3. Purposes and Powers Not Limited. The enumeration herein of any specific purpose or power shall not be held to limit or restrict in any manner the exercise by the Company of the general powers and privileges now or hereafter conferred by the laws of the Tribe upon limited liability companies formed under the CCTLLA, or the accomplishment of any purpose now or hereafter permitted to the Company pursuant to these Articles of Organization.

Section 4. Immunities of the Company and Personnel.

4.1. Jurisdictional Immunity of the Company. The Chippewa Cree Tribe hereby confers on the Company all of the Tribe's rights, privileges and federal immunities concerning federal, state, and local taxes, regulation, and jurisdiction, to the same extent that the Tribe would have such rights, privileges, and immunities, if it engaged in the activities undertaken by the Company.

4.2. Sovereign Immunity of the Company and Personnel. The Chippewa Cree Tribe hereby confers on the Company sovereign immunity from suit to the same extent that the Tribe would have such sovereign immunity if it engaged in the activities undertaken by the Company. It is the intention of the Chippewa Cree Tribe that the extension to the Company of such sovereign immunity from suit shall apply to the Company's directors, officers, employees and agents to the same extent that the Tribe's directors, officers, employees and agents would have such sovereign immunity if the Tribe engaged in the activities

3

undertaken by the Company. In furtherance of and in clarification of the Company's power to "sue and be sued" as set forth and intended in the CCTLLA, the Company shall have the power to sue and is authorized to consent to be sued in the Chippewa Cree Tribal Court or another court of competent jurisdiction, provided, however, that:

> (a) No such consent to suit shall be effective against the Company in any manner and to any extent whatsoever unless such consent is:
>
>> (1) Explicit,
>>
>> (2) Contained in a written contract or commercial document to which the Company is a party, and
>>
>> (3) Specifically approved by the Manager of the Company or as delegated to the CEO of the Company by a resolution approved by the Manager, and
>
> (b) Any recovery against such Company shall be limited to the assets of the Company in the manner and to the extent as explicitly set forth in such consent.

Any consent to suit may, as explicitly set forth in such consent, be limited to the court or courts in which suit may be brought, to the matters that may be made the subject of the suit and to the assets or revenues of the Company against which any judgment may be executed.

Consent to suit by the Company shall in no way extend to an action against the Tribe or Atoske, LLC, nor shall consent to suit by the Company in any way be deemed a waiver of any of the rights, privileges and immunities of the Tribe or Atoske, LLC. The Tribe shall not be liable for the payment or performance of any of the obligations of the Company, and no recourse shall be had against any assets or revenues of the Tribe in order to satisfy the obligations of the Company.

The sovereign immunity of the Company shall not extend to actions against the Company by the Tribe or Atoske, LLC.

Section 5. Principal Place of Business; Mailing Address; Registered Agent.

5.1. Principal Place of Business. The Company shall be a resident of and maintain its corporate headquarters on the Rocky Boy's Indian Reservation, in Montana, but may conduct its business activities any place in or outside of the United States. The Company may have such other offices, either within or without the Rocky Boy's Indian Reservation as the business of the Company may require from time to time.

5.2. Mailing Address and Registered Agent. The mailing address of the Company's initial registered office is Plain Green, LLC 93 Mack Road, Suite 600, P.O. Box 270, Box Elder, Montana 59521 and the name of the initial registered agent at this address is the CEO of Plain Green, LLC.

000014

Section 6. Operational Requirements.

6.1. Fiscal Year. The Company shall have a fiscal year based on the calendar, January 1 thru December 31. Such fiscal year shall end on the last day of any one calendar year, and shall begin the first day of the next succeeding calendar year.

6.2. Operating Agreement. The Company shall prepare an operating agreement to carry out the day-to-day operational duties and responsibilities. The Operating Agreement must be approved by the Manager of the Company.

6.3. Annual Report. Not less than 150 days following the end of each fiscal year, the Company shall prepare and deliver to Atoske, LLC an annual report and an audited financial statement, including a balance sheet and a statement of income and expenses, including comparative figures from the preceding fiscal year.

Section 7. Manager.

7.1. Duties and Powers; Operating Agreement. The business and activities of the Company shall be managed by the Manager appointed by the Member. The Manager is vested with all powers necessary to carry out the purposes of the Company and shall have control and management of the business and activities of the Company. The Manager may adopt such provisions in an operating agreement for the conduct and the management of the Company as s/he may deem proper, not inconsistent with the Chippewa Cree Tribe Limited Liability Company Act and other Tribal laws, or these Articles of Organization.

7.2. Number. The number of Managers for the Company shall be one (1). The Manager shall be appointed by the Member and possess at least one of the following: 1) no less than five (5) years of management experience in a successful, for-profit financial services business or legal experience with a financial services background or accounting/CPA background with a financial services business; or 2) executive management experience with a financial services business. The Manager may, but need not be, an enrolled member of the Chippewa Cree Tribe.

7.3. Term. The Manager shall be appointed for a two (2) year term, subject to reappointment by the Member.

7.4. Selection. The Member of the Company shall select and appoint the one (1) Manager pursuant to the requirements of Section 7.2. Any vacancies of the Manager position shall be advertised and appointed by the Member as expeditiously as possible.

7.5. Resignation; Removal. The Manager may resign at any time, such resignation shall be made in writing and to take effect immediately upon receipt, unless the notice specifies a later date. The Manager may be removed, with cause, by the Member.

7.6. Chief Executive Officer. The Company will appoint and hire a Chief Executive Officer ("CEO") to manage the Company on a daily basis without interference by either the Member or Manager of the Company and/or Chippewa Cree Tribal Business Committee

5

000015

members, except to the extent required by these Articles or the Operating Agreement. The CEO shall have the authority to hire and terminate employees whenever necessary. The Manager may also serve as the CEO.

Section 8. Indemnification. The Company may, at the discretion of the Manager, or in the case of the Manager, at the discretion of the Member, indemnify any current or former executive, manager, director, officer, trustee, partner, agent or employee against reasonable expenses actually necessarily incurred by him or her in connection with the defense of any action, suit, or proceeding in which he or she is made a party by reason of being, or having been, such executive, manager, director, officer, trustee, partner, agent or employee of the Company and the reasonable cost of settlement of any such action or proceeding, if the Manager, or Member, as applicable, shall determine in good faith:

(a) That such person did not act, fail to act, or refuse to act willfully or with gross negligence or with fraudulent or criminal intent; and

(b) That legal fees paid or any settlements made are reasonable; and

(c) That the person seeking indemnification did not act beyond the scope of his or her employment or office; and

(d) That it is in the best interests of the Company that indemnification is made.

Section 9. Amendments. The Member, the Manager, or the CEO may recommend amendments to the Articles of Organization from time to time as necessary and appropriate. No amendments to the Articles of Organization shall become operative until official approval is provided by the Manager and ratification by the Member of the Company.

*[Remainder of Page Intentionally Left Blank]*

000016

Dated: August ___, 2016

Organizer:

_____

Chairman, Chippewa Cree Tribal Business
Committee pursuant to a Resolution of the
Chippewa Cree Tribal Business Committee
and on behalf of Member, Atoske, LLC

_____

Tribal Secretary

# The Chippewa Cree Tribe of the Rocky Boy's Reservation

Phone: (406) 395-4478 or 4210 - Finance Office
(406) 395-4282 or 4321 - Business Committee

31 Agency Square
Box Elder, Montana 59521

Resolution No. 109-16

### RESOLUTION APPROVING FIRST AMENDMENT TO THE
### ARTICLES OF ORGANIZATION OF PLAIN GREEN, LLC

**WHEREAS,** the Chippewa Cree pursuant to its inherent sovereignty that predates the United States Constitution exercised its rights to self-government by adopting the Constitution and Bylaws of the Chippewa Cree Indians of the Rocky Boy's Reservation ("Tribe"), as approved on November 23, 1935 ("Constitution"); and

**WHEREAS,** pursuant to the Constitution, the Business Committee is vested with the powers as the governing body of the Tribe; and

**WHEREAS,** pursuant to Article VI, Section 1(f), the Business Committee has the authority to "manage all economic affairs and enterprises" of the Tribe; and

**WHEREAS,** pursuant to Article VI, Section 1(g), the Business Committee has the authority to "charter subordinate organizations for economic purposes" of the Tribe; and

**WHEREAS,** pursuant to Article VI, Section 1(t), the Business Committee has the authority to "delegate to subordinate boards or to cooperative associations which are open to all members of the tribe any of the foregoing powers" of the Tribe; and

**WHEREAS,** the Business Committee created Atoske Holding Company as a wholly-owned instrumentality of the Tribe, to hold, own and otherwise control the assets that it controls or may acquire thereafter in its own name pursuant to the Atoske Holding Company Corporate Charter and Articles of Incorporation ("Charter"); and

**WHEREAS,** the Business Committee created Atoske Holding Company as a wholly-owned instrumentality of the Tribe, to hold, own, and otherwise control the assets of the Tribe so transferred to it on a case-by-case basis pursuant to the Chippewa Cree Assets and Transfer Code (the "Transfer Code"); and

**WHEREAS,** the Business Committee created Atoske Holding Company as a wholly-owned instrumentality of the Tribe, to serve as an arm of the Tribe, whereby the Tribe reserves its inherent privileges and immunities as a sovereign entity, except where otherwise provided within the Charter; and

Resolution No. 109-16

000018

**WHEREAS,** the Business Committee vested the management of Atoske Holding Company, including the financial, operational, management and business responsibilities of Atoske Holding Company to the Board of Directors of Atoske Holding Company pursuant to Section 701 of the Charter; and

**WHEREAS,** the Tribe's governing body, the Chippewa Cree Business Committee, recognizes the responsibilities of Atoske Holding Company, as a wholly owned economic arm of the Tribe to serve the social, economic, educational and health needs of the Tribe; increase Tribal revenues for government programs; enhance the Tribe's economic self-sufficiency and self-determination; and provide positive, long-term, social, environmental and economic benefits to Tribal members by enhancing the Tribe's business undertakings and prospects; and

**WHEREAS,** the Business Committee codified the Assets and Obligations Transfer Code, Resolution 70-16 ("Transfer Code"), which created a legal mechanism whereby the Business Committee may grant a Petition from the Board of Directors of Atoske Holding Company to transfer an existing business of the Tribe to be under the control and direction of Atoske Holding Company; and

**WHEREAS,** the Board of Directors of Atoske Holding Company met all of the requirements required by the Transfer Code; and

**WHEREAS,** the Business Committee authorized and approved the transfer of all of the assets and obligations of Plain Green, LLC ("Plain Green") from Atoske LLC to Atoske Holding Company; and

**WHEREAS,** Atoske LLC has taken and is taking any and all steps required to relinquish control over Plain Green so that the Board of Directors of Atoske Holding Company may effectively and expediently assume control of Plain Green; and

**WHEREAS,** as a result of the transfer of all assets and obligations of Plain Green from Atoske LLC to Atoske Holding Company, Atoske Holding Company is now the sole member of Plain Green; and

**WHEREAS,** the Articles of Organization of Plain Green presently disclose Atoske LLC as the sole member of Plain Green; and

**WHEREAS,** the Business Committee desires to amend the Articles of Organization of Plain Green to disclose Atoske Holding Company as the sole member of Plain Green; and

**WHEREAS,** the Business Committee desires to approve the First Amendment to the Articles of Organization of Plain Green, which is Exhibit A to this Resolution and which is attached hereto and incorporated herein by this reference (the "First Amendment"); and

**WHEREAS,** the Business Committee desires to authorize the Chairman of the Chippewa Cree Tribal Business Committee and the Secretary of the Chippewa Cree Tribe to enter into the First Amendment, which would disclose Atoske Holding Company as the sole member of Plain Green; and

**WHEREAS,** the Business Committee affirms that all resolutions, or parts of the same, that are inconsistent with the provisions of this resolution, are hereby repealed to the extent of such inconsistency;

Resolution No. 109-16

Page **2** of **3**

000019

**BE IT RESOLVED**, that the Business Committee hereby approves the First Amendment, which discloses Atoske Holding Company as the sole member of Plain Green; and

**BE IT FINALLY RESOLVED**, that the Business Committee hereby authorizes the Chairman of the Chippewa Cree Tribal Business Committee and the Secretary of the Chippewa Cree Tribe to execute the First Amendment.

## CERTIFICATION

I, the undersigned, as the Secretary of the Business Committee of the Chippewa Cree Tribe hereby certify that the Business Committee is composed of nine (9) members of whom ___6___ members constituting a quorum were present at the meeting thereof, duly and specially called, noticed, convened and held this _24th_ day of October, 2016, and that the foregoing Resolution was duly adopted at said meeting by the affirmative vote of ___5___ members for and ___∅___ members against, ___∅___ members abstained and that the Resolution has not been rescinded or amended in any way.

_____           _____
Chairman, Chippewa Cree Tribe Secretary    Business Committee of the Chippewa Cree Tribe

Resolution No. _109-16_

Page **3** of **3**

000020

**EXHIBIT A**

**FIRST AMENDMENT TO THE
ARTICLES OF ORGANIZATION
OF
PLAIN GREEN, LLC**

**(REVISED DECEMBER 14, 2015, APRIL 1, 2016 AND AUGUST 11, 2016 FROM THE
ORIGINAL ARITCLES OF ORGANIZATION AS APPROVED BY THE CHIPPEWA
CREE TRIBAL BUSINESS COMMITTEE ON MAY 20, 2010)**

This First Amendment to the Articles of Organization of Plain Green, LLC (this "First Amendment") is made and entered into on this ___ day of October, 2016, by and between **ATOSKE HOLDING COMPANY**, a wholly owned and operated instrumentality of the Chippewa Cree Tribe of the Rocky Boy's Indian Reservation (the "Tribe"), a federally recognized Indian Tribe organized pursuant to Section 16 of the Act of June 18, 1934 (48 Stat. 984) (25 U.S.C. § 476) as amended by the Act of June 15, 1935 (48 Stat. 378), acting through the Chippewa Cree Tribal Business Committee (hereinafter, the "Member"), and **PLAIN GREEN, LLC**, a Tribal limited liability company and wholly owned and operated subsidiary of the Member (hereinafter, the "Company").

The Member hereby authorizes this First Amendment to the Articles of Organization of Plain Green, LLC to be filed under the Law and Order Code of the Chippewa Cree Tribe, Title 14, Chippewa Cree Tribe Limited Liability Company Act ("CCTLLA"), for the purpose of amending the Articles of Organization that created the Company.

1.      Paragraph 3.1 of Section 3 of the Articles of Organization of the Company is hereby deleted in its entirety and the following new Section 3.1 is substituted in place thereof:

"3.1.   Purposes. The Company is formed pursuant to and shall be subject to the laws of the Tribe and shall at all times be a wholly owned subsidiary of Atoske Holding Company, an economic arm of the Tribe. The Tribe, through the Member, shall have the sole proprietary interest in, and shall have sole responsibility for the conduct of the activities of, the Company.  The purposes for which the Company is organized are:

(a)     To serve the social, economic, educational and health needs of the Tribe;

(b)     To increase Tribal revenues;

(c)     To enhance the Tribe's economic self-sufficiency and self-determination;

(d)     To provide positive, long-term social, environmental and economic benefits to Tribal members by enhancing the Tribe's business undertakings and prospects; and

(e)     To generate revenues for Atoske Holding Company to utilize in furtherance of the purposes of Atoske Holding Company for the benefit of the Tribe and its members.

1

2.      Paragraph 4.2 of Section 4 of the Articles of Organization of the Company is hereby deleted in its entirety and the following new Section 4.2 is substituted in place thereof:

"4.2.      <u>Sovereign Immunity of the Company and Personnel</u>.  The Tribe hereby confers on the Company sovereign immunity from suit to the same extent that the Tribe would have such sovereign immunity if it engaged in the activities undertaken by the Company.  It is the intention of the Tribe that the extension to the Company of such sovereign immunity from suit shall apply to the Company's directors, officers, employees and agents to the same extent that the Tribe's directors, officers, employees and agents would have such sovereign immunity if the Tribe engaged in the activities undertaken by the Company.  In furtherance of and in clarification of the Company's power to "sue and be sued" as set forth and intended in the CCTLLA, the Company shall have the power to sue and is authorized to consent to be sued in the Chippewa Cree Tribal Court or another court of competent jurisdiction, provided, however, that:

(a)      No such consent to suit shall be effective against the Company in any manner and to any extent whatsoever unless such consent is:

(1)      Explicit;

(2)      Contained in a written contract or commercial document to which the Company is a party;

(3)      Specifically approved by the Manager of the Company or the CEO of the Company; and

(b)      Any recovery against such Company shall be limited to the assets of the Company in the manner and to the extent as explicitly set forth in such consent, unless recourse to Tribal assets is otherwise expressly consented to by the Chippewa Cree Tribal Business Committee.

Any consent to suit may, as explicitly set forth in such consent, be limited to the court or courts in which suit may be brought, to the matters that may be made the subject of the suit and to the assets or revenues of the Company against which any judgment may be executed.

Consent to suit by the Company shall in no way extend to an action against the Tribe, Atoske Holding Company, or any of the Company's affiliates, nor shall consent to suit by the Company in any way be deemed a waiver of any of the rights, privileges and immunities of the Tribe, Atoske Holding Company, or any of the Company's affiliates.  The Tribe shall not be liable for the payment or performance of any of the obligations of the Company, and no recourse shall be had against any assets or revenues of the Tribe in order to satisfy the obligations of the Company, unless otherwise expressly consented to by the Chippewa Cree Tribal Business Committee.

The sovereign immunity of the Company shall not extend to actions against the Company by the Tribe or Atoske Holding Company."

2

3.      Paragraph 6.3 of Section 6 of the Articles of Organization is hereby deleted in its entirety and the following new Section 6.3 is substituted in place thereof:

"6.3.   Annual Report.  Not less than 150 days following the end of each fiscal year, the Company shall prepare and deliver to Atoske Holding Company an annual report and an audited financial statement, including a balance sheet and a statement of income and expenses, including comparative figures from the preceding fiscal year."

4.      In all other respects the Articles of Organization of Plain Green, LLC remains in full force and effect, except as amended by this First Amendment thereto.

Dated:  October 24th, 2016                    Organizer:

_____

Chairman, Chippewa Cree Tribal Business
Committee pursuant to a Resolution of the
Chippewa Cree Tribal Business Committee,
and on behalf of the Member, Atoske
Holding Company

_____

Secretary, Chippewa Cree Tribe

3

000023

# EXHIBIT F

# TITLE 10 - CHIPPEWA CREE TRIBAL CODES

## CHIPPEWA CREE TRIBAL LENDING AND REGULATORY[1] CODE

### (REVISED ON FEBRUARY 2, 2017)

Ex. F
PG - Motion to Dismiss

## CHAPTER 1.   FINDINGS, INTENT, POLICY

**10-1-101. Findings.** The Chippewa Cree Tribe of the Rocky Boy's Reservation, Montana (hereinafter the "Tribe"), through the Business Committee as the primary governing body of the Tribe, finds that:

    a.   The Tribe wishes to continue the development of the economy of the Tribe in order to improve the Tribe's economic self-sufficiency, to enable the Tribe to better serve the social, economic, educational, and health and safety needs of its members and visitors, and to provide its members with opportunities to improve their own economic circumstances.

    b.   The Tribe, shall establish the Tribal Consumer Protection Bureau (the "TCPB") and delegate to the TCPB the independent regulatory authority to license and regulate all Tribal Consumer Financial Services businesses within the jurisdiction of the Tribe.[2]

    c.   Properly licensed and regulated Tribal Consumer Financial Services businesses conform to the well-established federal policy promoting Tribal self-determination, Tribal self-governance, and Tribal economic self-sufficiency.

    d.   Delegating the independent regulatory authority to the TCPB is essential to protect public welfare and preserve the integrity of the Tribal Consumer Financial Services businesses commensurate with Tribal law and policy and applicable federal law.

    e.   The Business Committee adopts Title 10 (as amended) of the Chippewa Cree Tribal Lending and Regulatory Code to administer the Tribal lending enterprise and gain public confidence in Consumer Financial Services that take place within the Tribe's jurisdiction.

    f.   The adoption of Title 10 (as amended) by the Business Committee is a necessary condition for the legal operation of Consumer Financial Services within the Tribe's reservation boundaries and is in the best interest of the Tribe.

    g.   Establishment of the Tribal Consumer Protection Bureau (TCPB) within the Regulatory Department of the Chippewa Cree Tribe to implement the purpose and intent of this Code within the Tribe's reservation boundaries is in the best interest of the Tribe and Consumers.

**10-1-102. Intent.** The Business Committee, on behalf of the Tribe, declares that the intent of this Code is to:

    a.   Diversify and expedite the development of the economy of the Rocky Boy's Reservation for the purposes in § 10-1-101(a) above.

---

[1] Chippewa Cree Tribe Resolution #54-16, June 2, 2016
[2] Chippewa Cree Tribe Resolution #13-17, February 2, 2017

000002

b.  To expressly delegate the independent regulatory authority to the Tribal Consumer Protection Bureau as provided in this Code.

c.  Define the independent regulatory powers to be exercised by the Commissioner of the Tribal Consumer Protection Bureau in relation to the regulation, control, and oversight of the Consumer Financial Services businesses.

d.  Ensure that Consumer Financial Services profits are used for the benefit of the Tribe, Tribal government programs and the Tribe's community.

e.  Ensure that Consumer Financial Services are conducted appropriately by Licensees and borrowers and that they remain free from corrupt, incompetent, unconscionable, dishonest, unfair, deceptive and/or abusive practices.

f.  Protect and ensure the interests of the public in the offering of Consumer Financial Services.

g.  To provide fair and orderly Consumer complaint processes to resolve Consumer Financial Services disputes consistent with the Tribe's laws and policies and to preserve the Tribe's sovereign immunity.

h.  Ensure that Tribal Consumer Financial Services laws are enforced.

**10-1-103. Policy.**

a.  Tribal Policy of Self-Government. The Tribe is firmly committed to the principle of Tribal self-governance.  Profits from Consumer Financial Services shall be utilized and expended only for the following purposes:

   1.  To fund the Tribe's government operations or programs;

   2.  To provide for the public health, education and general welfare of the Tribe and its members and visitors to the Tribal community;

   3.  To promote Tribal economic development and self-sufficiency; and

   4.  To donate to charitable organizations.

b.  Tribal Consumer Financial Services Policy.  The establishment, promotion and operation of Tribal Consumer Financial Services are necessary, provided that such Consumer Financial Services are regulated and controlled by the Tribe under this Code and the profits of such Tribal Consumer Financial Services are used exclusively for the benefit of the Tribe.

c.  Consumer Financial Services Authorized.  Consumer Financial Services that are subject to licensing under this Code are authorized and permitted only as described

000003

in this Code and any rules adopted by the Commissioner of the Tribal Consumer Protection Bureau.[3]

**10-1-104. Territorial Application.** This Code applies to Loans made by the Lender and includes modifications, refinancing, consolidations, and deferrals consummated within the Tribe's jurisdiction. A loan, as that term is defined herein, shall be deemed prima facie evidence of the consumer's intent to accept the territorial application of this Code and the terms of the Loan Agreement.

## CHAPTER 2.    DEFINITIONS

**10-2-201. Definitions.** In this Code, except where otherwise specifically provided or unless the context otherwise requires, the following terms and expressions shall have the following meanings:

a. "Account" means any banking, checking, credit union, commercial, savings, savings and loan, brokerage, investment, or other kind of depository account held by a Consumer.

b. "Applicant" means any Person who has applied for a License under the provisions of this Code.

c. "Application" means a request for the issuance of a License under the provisions of this Code.

d. "Arm of the Tribe" means a commercial entity formed pursuant to the Tribe's law, ultimately overseen by the Tribe, and through which the Tribe intends to serve its interests, including those of its members and to which the Tribe has extended and granted its sovereign immunity as a means to protect the interests of the Tribe and its members.

e. "Business Committee" means the Business Committee of the Tribe, as the governing body of the Tribe as defined and described in the Constitution and Bylaws of the Tribe.[4]

f. "Check" means a negotiable instrument that is drawn on a state, tribal or federal bank, credit union, or savings and loan association and is payable on demand.

g. "Code" or "Title" means the Chippewa Cree Tribal Lending and Regulatory Code as enumerated in this document. Code and Title may be used interchangeably and have the same meaning.

h. "Commissioner" means the Commissioner of the Tribal Consumer Protection Bureau as appointed by the Business Committee.[5]

---

[3] Chippewa Cree Tribe Resolution #54-16, June 2, 2016
[4] Chippewa Cree Tribe Resolution #54-16, June 2, 2016
[5] Chippewa Cree Tribe Resolution #54-16, June 2, 2016

-4-

i.  "Consumer" means a natural Person who, singly or jointly with another Person, is borrowing money from a Creditor for personal, family, household and/or small business purposes.

j.  "Consumer Financial Services" means the business of providing a Loan to a Consumer and collecting Interest as authorized under this Code, the business of providing services to a Consumer related to a Loan, or the business of providing services to a Licensee, including but not limited to origination, processing, and servicing, including but interaction directly with a Consumer.[6]

k.  "Creditor" means the Person or entity regularly engaged in the business of making Loans, authorized by the Tribe, in whose favor an obligation exists by reason of which it is, or may become, entitled to the payment of money.

l.  "Default" means a Consumer's failure to repay a Loan in compliance with the terms contained in a Loan Agreement or failure to comply with any other provision of the Loan Agreement.[7]

m.  "Federal Consumer Protection Laws" includes without limitation, the following, as applicable: 12 U.S.C. § 1031 Prohibiting Unfair, Deceptive or Abusive Acts or Practices; Truth in Lending Act, 15 U.S.C. §1601 et seq., and related regulations at 12 C.F.R. Part 226; Consumer Leasing Act, 15 U.S.C. §§ 1667 et seq., and related regulations at 12 C.F.R. Part 213; Fair Credit Billing Act, 15 U.S.C. § 1666a; Equal Credit Opportunity Act, 15 U.S.C. §1691 et seq., and related regulations at 15 C.F.R. Part 202; Electronic Fund Transfer Act, 15 U.S.C. § 1693 et seq., and related regulations at 12 C.F.R. Part 205; Fair Credit Reporting Act, 15 U.S.C. §1681 et seq. and related regulations at 12 C.F.R. Part 222); privacy provisions of Title V of the Gramm-Leach-Bliley Act, 15 U.S.C. §§ 6801 et seq., and related regulations at 16 C.F.R. Part 313 and 16 C.F.R. Part 314; Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq., and related regulations at 16 C.F.R. Part 901; Talent Amendment, 10 U.S.C. § 987, and related regulations of the Department of Defense at 32 C.F.R. part 232; and Service Members' Civil Relief Act, 50 U.S.C. App. §§ 501-596, and any other applicable federal and tribal consumer protection laws, each as amended from time to time.

n.  "Interest" means the compensation allowed by this Title 10 and any rules and regulations thereunder, or forbearance, or detention of money or its equivalent, may be at a fixed or variable rate and includes without limitation, points, Loan origination fees, credit service or carrying charges, charges for unanticipated late payments, and any other charges, direct or indirect, as an incident to or as a condition of the extension of credit agreed to between the Creditor and a Consumer in the Loan Agreement.  These charges do not include charges made by a third party.[8]

---

[6] Chippewa Cree Tribe Resolution #13-17, February 2, 2017

[5] Chippewa Cree Tribe Resolution #54-16, June 2, 2016

000005

o.  "Lender" means a Person wholly owned by the Tribe, operating within the Tribe's jurisdiction and on the Tribe's Indian Lands, and licensed by the TCPB who is regularly engaged in the Consumer Financial Services as authorized by this Code, and who originates Loans in whose favor an obligation exists by reason of which it is, or may become entitled to the payment of money.[9]

p.  "License" means the official, legal and revocable Financial Service License issued by the Commissioner of the TCPB.[10]

q.  "Licensee" means a Person or entity that is licensed by the Commissioner of the TCPB to engage in the business of providing Consumer Financial Services.[11] [12]

r.  "Loan" means an extension of secured or unsecured credit to a Consumer for any purpose permitted under Tribal law.

s.  "Loan Agreement" means a formal contract between the Tribal Lending Agency or Creditor and the Consumer which regulates the mutual promises made by each party in its Terms and Conditions, including consideration, applicable Interest, negative and positive covenants, terms of repayment and other provisions allowed by Tribal law.  A Loan Agreement is not enforceable until consummated by the parties.

t.  "Negotiable Instrument" means an unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order, if it:

    1.  Is payable to bearer or to order at the time it is issued or first comes into possession of a holder;

    2.  Is payable on demand or at a definite time; and

    3.  Does not state any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money[13]

u.  "Person" means a natural person, organization, or group of individuals acting as a unit, whether mutual, cooperative, fraternal, profit, nonprofit, or otherwise, provided that the term does not include the Federal Government or any agency thereof.

v.  "Servicer" means a person that collects interest, principal, payments, and deposits and receives notices under the Loan Agreement from a Consumer on a Loan issued

---

[9] Chippewa Cree Tribe Resolution #13-17, February 2, 2017
[10] Chippewa Cree Tribe Resolution #54-16, June 2, 2016
[11] Chippewa Cree Tribe Resolution #54-16, June 2, 2016
[12] Chippewa Cree Tribe Resolution #13-17, February 2, 2017
[13] Chippewa Cree Tribe Resolution #54-16, June 2, 2016

000006

by a Lender under this Code in exchange for fees or a revenue-share, and who has control and the ability to possess monies collected from Loans.[14]

w. "Tribal Consumer Protection Bureau" or "TCPB" means the agency delegated with the independent regulatory authority established and described in Chapter 4 of this Code.

x. "Tribe" means the Chippewa Cree Indians of the Rocky Boy's Reservation, Montana.

y. "Tribal Lending Agency" means an authorized economic lending Arm of the Tribe.

## CHAPTER 3.   LOAN REQUIREMENTS

### Part 1. EXTENSION OF CREDIT

**10-3-101. Extension of Credit.**  A Licensee may, subject to the provisions of this Title, extend credit to a Consumer in accordance with the terms and conditions set forth in any agreement between a Consumer and the Creditor and in connection therewith, may charge and collect Interest and other charges permitted by § 10-3-201 et. seq., and may take such security as collateral in connection therewith as may be acceptable to the Creditor.

### Part 2. USURY AND INTEREST RATES

**10-3-201. Rate of Interest Set by Written Agreement — No Maximum or Usury Restriction; Fees and Charges as Agreed Upon by the Creditor and the Consumer.**  Unless a maximum Interest rate or charge is specifically established elsewhere in this Title or the other laws of the Tribe, there is no maximum Interest rate or charge, or usury rate restriction between or among Persons if they establish the Interest rate or charge by written agreement.  The Creditor and the Consumer can agree upon what fees and charges may be assessed as set forth in any written agreement between the Creditor and the Consumer.

**10-3-202. Loan of Money — Presumption as to Interest.**  Whenever a Loan of money is made it is presumed to be made with Interest, unless it is otherwise expressly stipulated at the time in writing.[15]

**10-3-203. Annual Rate of Interest Where not Specified.**  When a rate of Interest is prescribed by a law or contract, without specifying the period of time by which such rate is to be calculated, it is to be deemed an annual rate.

**10-3-204. Maximum Rate of Interest Where No Rate Specified — Commencement Where Date Not Specified.**  Under an obligation to pay Interest, no rate being specified, Interest is payable at the maximum rate. Where no date is set for the accrual of debt, interest will accrue

---

[14] Chippewa Cree Tribe Resolution #13-17, February 2, 2017
[15] Chippewa Cree Tribe Resolution #54-16, June 2, 2016

000007

from the date of the incurrence of debt, unless the parties have otherwise agreed, and in the like proportion for a longer or shorter term.  In the computation of Interest for less than a year, three hundred sixty five days are deemed to constitute a year.[16]

**10-3-205. When Interest Becomes Part of Principal.**  The parties may, in any contract in writing whereby any debt is secured to be paid, agree that, if the Interest on such debt is not punctually paid, it shall become a part of the principal and thereafter bear the same rate of Interest as the principal debt.

**10-3-206. Interest on Judgments, Statutory Liens and Inverse Condemnations.  [Reserved]**

**10-3-207. Rate of Interest Stipulated by Contract after Breach.**  Any rate of Interest, as set forth by a contract, remains chargeable after a breach thereof, as before, until the contract is superseded by a judgement or other new obligation.[17]

**Part 3. LIMITATIONS ON LOANS [Reserved]**

**Part 4. CREDITOR REQUIREMENTS FOR LOANS**

**10-3-401. Creditor Disclosure.** The Creditor shall disclose in any Loan Agreement the following:

    a.  The amount and date of the Loan;

    b.  The amount of the down payment, if any;

    c.  The circumstances or dates any payments are due and the amount of payments;

    d.  The maturity date;

    e.  A list of any property used to secure the Loan;

    f.  Any liens or title filings required;

    g.  A description of the method used to compute the charges;

    h.  An explanation of any fee or charge, including the cost of the Loan as an annual percentage rate (APR);

    i.  Any fee or charge that may be applied for delinquency;

    j.  Refinancing requirements, including any fee or charge;

---

[16] Chippewa Cree Tribe Resolution #54-16, June 2, 2016
[17] Chippewa Cree Tribe Resolution #54-16, June 2, 2016

000008

    k.  Contact information for the TCPB and that any improprieties in making the Loan or in Loan practices may be referred to the TCPB;[18]

    l.  The following or a similar notice in a prominent place on each Loan contract in at least twelve-point bold type face for any Loan:[19]

        1.  **"THIS LOAN IS NOT INTENDED TO MEET LONG-TERM FINANCIAL NEEDS.  THIS LOAN SHOULD BE USED ONLY TO MEET SHORT-TERM CASH NEEDS."[20]**

    m.  A Consumer may prepay a Loan at any time without penalty.

**10-3-402. Copy of Loan Documents.**  The Creditor shall make available to the Consumer either an electronic or paper copy of the Loan documents described in § 10-3-401 to the Consumer upon consummation of the Loan.

**10-3-403. Privacy.**  The Creditor shall ensure that information obtained from the Consumer about the Consumer's Account remains confidential.

**10-3-404. Satisfaction of Loan — Release of assignments**.  If a Loan is secured by collateral and the payment of a Loan is satisfied in full, the Creditor shall release any liens against any property used as security, and release all assignments associated with the Loan Agreement.  The Creditor shall release any liens or assignments to the debtor within sixty days of receiving payment in full.

## Part 5. REQUIRED DISCLOSURES – LOAN AGREEMENT

**10-3-501. Notice to Consumer.**  Before entering into a Loan Agreement, the Creditor shall disclose in writing to the Consumer any information prepared by or at the direction of the Commissioner that:[21]

    a.  Explains, in simple language, the Consumer's rights and responsibilities in the Loan transaction;[22]

    b.  Includes contact information of the TCPB's office, or any other designated office as provided, that handles concerns or complaints by Consumers; and[23]

    c.  Informs Consumers that the TCPB's office can provide information about whether the Creditor is licensed and other legally available information.[24]

---

[18] Chippewa Cree Tribe Resolution #13-17, February 2, 2017
[19] Chippewa Cree Tribe Resolution #54-16, June 2, 2016
[20] Chippewa Cree Tribe Resolution #54-16, June 2, 2016
[21] Chippewa Cree Tribe Resolution #54-16, June 2, 2016
[22] Chippewa Cree Tribe Resolution #54-16, June 2, 2016
[23] Chippewa Cree Tribe Resolution #13-17, February 2, 2017
[24] Chippewa Cree Tribe Resolution #13-17, February 2, 2017

000009

**10-3-502. Specific Form Required.** Creditor shall provide consumers with a written agreement on a form specified or approved by the Commissioner that can be kept by the Consumer, which must include the following information:

    a.  The name, address, and phone number of the Creditor making the Loan;

    b.  The name, address, and phone number of the Consumer obtaining the Loan;

    c.  All disclosures required by the federal Truth in Lending Act, 15 U.S.C. 1601, et seq.; and

    d.  A clear description of the Consumer's payment obligations under the Loan.

## Part 6. RIGHT OF RESCISSION AND ARBITRATION

**10-3-601. Right of Rescission.**

    a.  The Loan Agreement must contain a provision allowing the Consumer to rescind the transaction in writing, including electronic transmission and fax, if, by 5 p.m. of the Creditor's first business day following the day that the Loan was executed, the Consumer provides the Creditor with cash or certified funds equaling 100% of the amount Loaned to the Consumer.

    b.  A Creditor may not charge a Consumer any fee or Interest if the Consumer rescinds the Loan as provided in § 10-3-601 (a).

    c.  Except as provided in § 10-3-601 (a), a Consumer does not have a right to rescind a Loan unless the Creditor agrees to the rescission in writing.

**10-3-602. Arbitration.**

    a.  A Loan Agreement may not contain a mandatory arbitration clause that is oppressive, unconscionable, unfair, or in substantial derogation of a Consumer's rights.

    b.  A mandatory arbitration clause that complies with the applicable standards of the American Arbitration Association must be presumed to not violate the provisions of § 10-3-602 (a).

## Part 7. PROHIBITED AND PERMITTED FEES – ATTORNEY FEES AND COSTS

**10-3-701. Permitted Fees.**

    a.  A Creditor may only charge or receive, directly or indirectly, any Interest, fees, or charges specifically authorized by the Loan Agreement.

    b.  If there are insufficient funds to pay a Check on the date of presentment, a Creditor may charge a fee as provided in the Loan Agreement.

000010

   c.  If the Loan involves an electronic deduction and there are insufficient funds to deduct on the date on which the payment is due and authorized, a Creditor may charge a fee as provided in the Loan Agreement.

   d.  Reasonable attorney fees and court costs may be awarded in any action on a Loan entered into pursuant to this part to the extent as specifically authorized in the Loan Agreement. At no time shall the Loan Agreement have a unilateral clause for the award of attorney's fees.

**10-3-702. Prohibited Acts.** A Creditor making Loans may not commit, or have committed on behalf of the Creditor, any of the following prohibited acts:

   a.  Operating as a Lender or Servicer unless the Commissioner has first issued a valid License;[25]

   b.  Threatening to use or using a criminal process in this or any other jurisdiction to collect on the Loan made to a Consumer in this jurisdiction or any civil process to collect the payment of Loans not generally available to Creditors to collect on Loans in Default;

   c.  Altering the date or any other information on a Check received from a Consumer;

   d.  Altering or changing the date upon which the Creditor and Consumer agreed to make any electronic deductions from the Consumer's Account unless the Consumer agrees, in writing, by voice, by electronic authorization or otherwise, to the change;

   e.  Making any false, misleading, or deceptive representation to a financial institution relating to a Consumer who has agreed to provide payment for a Loan through an electronic deduction;

   f.  Using any device or agreement that would have the effect of charging or collecting more fees, charges, or Interest than those allowed by this part;

   g.  Engaging in unfair, deceptive or abusive practices in the making or collection of a Loan;

   h.  Using or attempting to use the Consumer's authorization to deduct the amount set forth in the Loan Agreement or any other information obtained from the Consumer or the Consumer's financial institution for any purpose other than to collect the proceeds of the Loan;

   i.  Charging any Interest, fees, or charges other than those specifically authorized by this Title;[26]

---

[25] Chippewa Cree Tribe Resolution #13-17, February 2, 2017
[26] Chippewa Cree Tribe Resolution #13-17, February 2, 2017

000011

j. Making a misrepresentation of a material fact by an Applicant in obtaining or attempting to obtain a License;[27]

k. Violating Tribal or federal law or regulation, misappropriating Tribal assets, breaching any contract or agreement with the Tribe or a Licensee; or[28]

l. Posing a threat to the public interest or the effective regulation of Consumer Financial Services.[29]

## CHAPTER 4. THE TRIBAL CONSUMER PROTECTION BUREAU

**10-4-101. Purpose.** The TCPB shall implement and enforce this Title, and any future rules relating to Consumer Financial Services activities and associated licensing requirements under this Title. It is the purpose and intent of the Tribe in creating the TCPB that the operations of the TCPB be conducted on behalf of the Tribe in order to protect the Consumers of Tribally licensed financial services and for the sole benefit and interest of the Tribe, its members and the residents of the Reservation. In carrying out its purposes under this Title, the TCPB shall function as an independent regulatory Arm of the Tribe.[30]

**10-4-102. Regulatory Department.** The TCPB shall operate as the independent governmental regulatory subdivision of the Tribe located within the exterior boundaries of the reservation.

**10-4-103. Independent Governmental Regulatory Subdivision of the Tribe.** As an independent governmental regulatory subdivision of the Tribe, the TCPB has been delegated the right to exercise one or more of the substantial governmental functions of the Tribe. This delegation includes, regulating all Consumer Financial Services businesses within the jurisdiction of the Tribe pursuant to Tribal law. Notwithstanding any authority delegated to the TCPB under this Title, the Tribe reserves to itself, the right to bring suit against any Person or entity in its own right, on behalf of the Tribe or on behalf of the TCPB, whenever the Tribe deems it necessary to protect the sovereignty, rights and interests of the Tribe or the TCPB.[31]

**10-4-104. Express Delegation for Independent Regulatory Authority.** The TCPB, pursuant to the express delegation of independent regulatory authority from the Business Committee, shall regulate the conduct of all businesses providing Tribal Consumer Financial Services, including all third-party providers doing business with licensed Tribal Consumer Financial Services businesses as authorized by this Title.

**10-4-105. Tribal Consumer Protection Bureau.**

a. _Immunity from suit._ The TCPB, as a governmental subdivision of the Tribe, and Commissioner enjoys the same privileges and immunities as the Tribe under Tribal

---

[27] Chippewa Cree Tribe Resolution #13-17, February 2, 2017
[28] Chippewa Cree Tribe Resolution #13-17, February 2, 2017
[29] Chippewa Cree Tribe Resolution #13-17, February 2, 2017
[30] Chippewa Cree Tribe Resolution #54-16, June 2, 2016
[31] Chippewa Cree Tribe Resolution #54-16, June 2, 2016

000012

and federal law, including sovereign immunity from suit in any tribal, federal or state court.

b.  <u>No Waiver.</u> Nothing in this Title shall be deemed or construed to be a waiver of sovereign immunity of the TCPB from suit, which shall only be waived pursuant to § 10-4-105(d) below.

c.  <u>No Consent to Jurisdiction.</u> Nothing in the Title shall be deemed or construed to be consent of the TCPB to the jurisdiction of the United States or of any state or of any other tribe with regard to the business or affairs of the TCPB.

d.  <u>Waiver of Sovereign Immunity of the TCPB.</u> Sovereign immunity of the TCPB may be waived upon the recommendation of the TCPB and only by express resolution of the Business Committee of the Chippewa Cree Tribe.

    1.  <u>Resolution Effectuating Waiver.</u> All waivers of sovereign immunity must be preserved by resolutions of continuing force and effect issued by the Business Committee of the Chippewa Cree Tribe.

    2.  <u>Policy on Waiver.</u> Waivers of sovereign immunity are disfavored and shall be granted only when necessary to secure a substantial advantage or benefit to the TCPB or the Tribe.

    3.  <u>Limited Nature of Waiver.</u> Waivers of sovereign immunity shall not be general but shall be specific and limited as to duration, grantee, transaction, property or funds, if any, of the TCPB subject thereto, and the court having jurisdiction pursuant thereto and law applicable thereto.

    4.  <u>Limited Effect of Waiver.</u> Neither the power to sue and be sued provided in § 10-4-105 (d), nor any express waiver of sovereign immunity by resolution of the Business Committee shall be deemed consent to the levy of any judgment, lien or attachment upon property of the TCPB or the Tribe.

**10-4-106. Sovereign Immunity of the Tribe.** With respect to the existence and activities of the TCPB, all inherent sovereign rights of the Tribe, as a Federally-recognized Indian Tribe, are hereby expressly reserved, including sovereign immunity from suit in any state, Federal or Tribal court. Nothing in this Code nor any action of the TCPB shall be deemed or construed to be a waiver of sovereign immunity from suit or counterclaim of the Tribe, a consent of the Tribe to the jurisdiction of the United States, any state or other tribe with regard to the business and affairs of the TCPB or the Tribe, a consent of the Tribe to any cause of action, counterclaim, case or controversy, or to the levy of any judgment, lien or attachment upon any property of the Tribe, a consent to suit or counterclaim in respect to any land within the exterior boundaries of the Tribe's reservation, or to be a consent to alienation, attachment or encumbrance of any such land.

**10-4-107. TCPB Composition.**

a.  In an effort to maintain the TCPB as an independent governmental subdivision of the Tribe, the TCPB shall be made up of and led by the Commissioner. The

-13-

Commissioner will have the authority to hire or retain employees and staff, as necessary. The Commissioner will always maintain independence, and at times may choose to hire independent contractors or consultants to perform compliance reviews to further this aim.[32]

b. The Commissioner shall be appointed by a majority vote of the Business Committee.

c. Qualifications. The Commissioner shall have a background in one or more following areas: 1) Consumer protection and/or former regulatory experience, and/or 2) Indian law and/or tribal legal experience, and/or 3) financial services and/or banking experience, All TCPB employees, including the Commissioner, may be asked to undergo a background check (by an appropriate third party provider or Tribal police).

d. No individual shall be eligible for any appointment to, or to continue to serve on the TCPB, who:

    1. Is a current Business Committee member;

    2. Is a current employee of the Tribal Lending Agency;

    3. Is a Person who has a financial or managerial interest in a vendor of the Tribal Lending Agency;[33]

    4. Is a Person who has been convicted of a felony or gaming offense, or any offense involving dishonesty or a breach of trust;

    5. Is a Person not considered suitable in accordance with the qualifications noted above.

e. The Commissioner may be removed from office by a majority vote of the Business Committee before the expiration of their term if, by a preponderance of the evidence, it is proven that the Commissioner demonstrated any:[34]

    1. Neglect of duty;

    2. Misconduct;

    3. Malfeasance;

    4. Failure to disclose an actual or perceived conflict of interest;

    5. Violation of this Code or any felonious Tribal, local, state or Federal law, or committal of any criminal activity involving dishonesty, or a breach of trust;

---

[32] Chippewa Cree Tribe Resolution #54-16, June 2, 2016
[33] Chippewa Cree Tribe Resolution #54-16, June 2, 2016
[34] Chippewa Cree Tribe Resolution #54-16, June 2, 2016

000014

    6.  Failure to maintain suitability requirements during the Commissioner's term;

    7.  Incompetence.

f.  <u>Due process provisions for removal of Commissioner.</u>  Prior to removal from the position of Commissioner:

    1.  The Business Committee must give a written notice to the Commissioner that he/she is going to be removed from the TCPB;

    2.  The written notice must notify the Commissioner of the date of the removal and the cause for which he/she is being removed;

    3.  The Commissioner must request a hearing before the Business Committee within fourteen (14) business days after receiving the written notice;

    4.  The Business Committee will schedule a special meeting/hearing within twenty (20) business days or receiving the Commissioner's written notice and will immediately upon scheduling the special meeting/hearing, deliver notice to the Commissioner that advises the Commissioner:

        i.  Of the date, time and place of the hearing;

        ii.  That the hearing is the Commissioner's sole opportunity to present any information, arguments, documents, witnesses on his/her behalf prior to the final decision by the Business Committee;

        iii.  That the hearing is informal and strict rules of evidence will not apply;

        iv.  That the hearing will be audio recorded and video recorded (if possible); and

        v.  That failure to appear for the scheduled hearing shall be cause for upholding the removal.

    5.  The decision of the Business Committee shall be in writing and state the reasons for the decision.

    6.  The decision of the Business Committee will be mailed via certified mail, return receipt requested, to the Commissioner within ten (10) business days after the special meeting; and

    7.  The decision of the Business Committee shall be final.

000015

g. Commissioner's Compensation. The Commissioner's compensation shall be subject to negotiation and approval by the Business Committee.[35]

h. Vacancy of Commissioner. In the case of a vacancy in the office of the Commissioner for any cause, and until such vacancy is filled, the Business Committee shall have and exercise all the powers and duties conferred by law or by the TCPB upon the Commissioner, with the same authority as if those powers and duties were exercised and performed by the Commissioner.[36][37]

i. Funding for the TCPB[38]

1. The Tribe shall establish a separate pre-funded bank account which shall only be used to pay operating expenses of the TCPB, including the compensation of the Commissioner.

2. The Tribe, TCPB and Commissioner shall have the ability to collect advances, reimbursements or licensing fees from Tribal Consumer Financial Services businesses to provide funding for the TCPB.

**10-4-108. Powers of the TCPB.** The TCPB has the authority and responsibility for the discharge of all duties imposed by law and this Code on the TCPB. The TCPB is authorized to exercise the following powers and responsibilities in addition to all powers conferred by this Title:[39]

a. To enforce rules furthering the purpose and provisions of this Title; provided that such rules were legally authorized by the Commissioner.[40]

b. To examine or inspect or cause to be examined or inspected each Licensee annually and more frequently if the TCPB considers it necessary.

c. To make or cause to be made reasonable investigations of any Licensee or Person as it deems necessary to ensure compliance with this Title or any lawful order of the TCPB, to determine whether any Licensee or Person has engaged, is engaging or is about to engage in any act, practice or transaction that constitutes an unsafe or unsound practice or violation of this Title, any applicable Federal Consumer Protection Laws or any order of the TCPB.

d. To establish procedures designed to permit detection of any irregularities such as fraud.

---

[35] Chippewa Cree Tribe Resolution #13-17, February 2, 2017
[36] Chippewa Cree Tribe Resolution #54-16, June 2, 2016
[37] Chippewa Cree Tribe Resolution #13-17, February 2, 2017
[38] Chippewa Cree Tribe Resolution #13-17, February 2, 2017
[39] Chippewa Cree Tribe Resolution #54-16, June 2, 2016
[40] Chippewa Cree Tribe Resolution #54-16, June 2, 2016

000016

e.  To review and respond in a timely manner to any complaints made to the TCPB regarding any Licensee.

f.  To employ such advisors as it may deem necessary.  Advisors may include, but are not limited to, lawyers, accountants, auditors, law enforcement specialists and financial service professionals.[41]

g.  To accept, review, approve or disapprove any Application for a License, including conducting or arranging for background investigations of all Applicants.

**10-4-109. Right to Entrance; Inspection.** The TCPB, during regular business hours, may enter upon any premises of any licensed consumer financial service business for the purpose of making inspections and examining the Accounts, books, papers, and documents of any such Licensee.  Such Consumer Financial Services business shall facilitate such inspection or examinations by giving every reasonable aid to the TCPB and to any properly authorized officer or employee of the TCPB.  The results of such inspection shall be duly reported by the TCPB and a copy of such report given to the licensed Consumer Financial Services business.

**10-4-110. TCPB Rules.** The Commissioner may promulgate rules as necessary to carry out the implementation and orderly performance of the TCPB's duties and powers regarding the following:[42]

a.  Perform any acts and to make any decisions incidental to or necessary for carrying out any functions specified by this Code or delegated by the Business Committee pursuant to this Code;[43]

b.  The making of findings or other information required by or necessary to implement this Code[44]

c.  Interpretation and application of this Code, as may be necessary to enforce the TCPB's duties and exercise its powers;[45]

d.  A regulatory system for overseeing Consumer Financial Services, including accounting, contacting, management and supervision;

e.  The conduct of inspections, investigations, hearings, enforcement actions and other powers of the TCPB authorized by this Code;[46]

f.  Specification of the amount and the schedule of applicable licensing and examination fees that shall be imposed by the TCPB; and[47]

---

[41] Chippewa Cree Tribe Resolution #54-16, June 2, 2016
[42] Chippewa Cree Tribe Resolution #54-16, June 2, 2016
[43] Chippewa Cree Tribe Resolution #54-16, June 2, 2016
[44] Chippewa Cree Tribe Resolution #13-17, February 2, 2017
[45] Chippewa Cree Tribe Resolution #13-17, February 2, 2017
[46] Chippewa Cree Tribe Resolution #13-17, February 2, 2017
[47] Chippewa Cree Tribe Resolution #13-17, February 2, 2017

-17-

    g.  Additional classifications of Licensees.[48]

        1.  No regulation of the TCPB shall be of any force or effect unless it is adopted by the TCPB by written resolution and subsequently approved by a resolution of the Business Committee.

        2.  The Tribal Court and any other court of competent jurisdiction shall take judicial notice of all Commission Regulations adopted pursuant to this Title.

**10-4-111. Quarterly Report to the Business Committee.**  The TCPB shall file quarterly reports with the Business Committee summarizing reports received from each Tribal Lending Agency and make such comments as it deems necessary to keep the Business Committee fully informed as to the status of the TCPB's activities.  The TCPB shall define by rule, subject to approval of the Business Committee, the schedule for the submission of such reports.[49]

## CHAPTER 5.   LICENSING

### Part 1. LICENSE – APPLICATION REQUIREMENTS – BUSINESS LOCATIONS

**10-5-101. Licensing.**

    a.  A Person may not engage in or offer to engage in the business of Loans unless licensed by the Commissioner of the TCPB.  A License may be granted to:[50]

        1.  A Person located on the Tribe's reservation, subject to the jurisdiction of the Tribe, wholly-owned by the Tribe, and who uses the internet to conduct transactions with Consumers that are covered by this code;[51]

        2.  A Servicer that has contracted with a licensed Lender to service Loans and other transactions that are covered by this Code; and[52]

        3.  Any other Person subject to licensure by regulation.[53]

    b.  An Applicant for a License to engage in Consumer Financial Services shall pay to the TCPB a non-refundable License Application fee.[54]

    c.  The Application for licensure must be in writing, under oath, and in the form prescribed by TCPB.  The Application must contain, at a minimum:

        1.  The name of the Applicant;

---

[48] Chippewa Cree Tribe Resolution #13-17, February 2, 2017
[49] Chippewa Cree Tribe Resolution #54-16, June 2, 2016
[50] Chippewa Cree Tribe Resolution #13-17, February 2, 2017
[51] Chippewa Cree Tribe Resolution #13-17, February 2, 2017
[52] Chippewa Cree Tribe Resolution #13-17, February 2, 2017
[53] Chippewa Cree Tribe Resolution #13-17, February 2, 2017
[54] Chippewa Cree Tribe Resolution #13-17, February 2, 2017

000018

    2.  The date of formation of a business entity;

    3.  The physical address of each Loan office to be operated by the Applicant;

    4.  The name and resident address of the owner or partners or, if a corporation or association, of the directors, trustees, and principal officers; and

    5.  Any other pertinent information that the TCPB may require.

    6.  The Applicant shall timely update the information provided in the Application upon any change therein.[55]

d.  A License may not be issued for longer than 1 year.  The License year must coincide with the calendar year.

e.  The Commissioner may not issue or renew a License unless findings are made that:[56]

    1.  The financial responsibility, experience, character, and general fitness of the Applicant warrant the belief that the business will be operated lawfully and fairly and within the provisions of this part;

    2.  The Applicant has unencumbered assets of at least $25,000 for each location;

    3.  The Applicant has provided a sworn statement that the Applicant will not in the future, directly or indirectly, use a criminal process to collect the payment of Loans or any civil process to collect the payment of Loans not generally available to Creditors to collect on Loans in Default;

    4.  The criminal history of the employees of the Applicant demonstrates no convictions involving fraud or financial dishonesty and no adverse civil judgments involving fraudulent or dishonest financial dealings and no ongoing criminal investigations; and[57]

    5.  Other information that the Commissioner considers necessary has been provided.

f.  More than one place of business may not be maintained under the same License, but the Commissioner may issue more than one License to the same Licensee upon compliance with the provisions of this section governing issuance of a single License.

**10-5-102. Licensing Exemptions. Creditors Exempt from Licensing Requirements.**
The following entities are exempt from the licensing requirements of this part:[58]

---

[55] Chippewa Cree Tribe Resolution #54-16, June 2, 2016
[56] Chippewa Cree Tribe Resolution #54-16, June 2, 2016
[57] Chippewa Cree Tribe Resolution #13-17, February 2, 2017
[58] Chippewa Cree Tribe Resolution #13-17, February 2, 2017

    a.   Any state bank and its subsidiary;

    b.   Any national bank, its subsidiary, and its vendors;[59]

    c.   Any bank holding company, its subsidiary, and its vendors;[60]

    d.   Any other federally insured financial institution, its holding company, its subsidiary, and its vendors; and[61]

    e.   Any credit reporting agency or bureau, or any entity that provides a Lender information for the Lender to make or reach a credit decision.[62]

## Part 2. LICENSE RENEWAL FEE

### 10-5-201. Renewal:

    a.   A Person licensed under § 10-5-101 shall pay, on or before December 1st of each year, a License renewal fee for each License that the Person holds under this part. Notwithstanding the forgoing, a Servicer's licensee fee and renewal fee, shall not exceed $10,000 per annum.[63]

    b.   Failure to pay any yearly License renewal fee required by this section within the time prescribed will result in the automatic revocation of the License subject to renewal.

## Part 3. INVESTIGATIONS, DENIAL OF LICENSE AND LICENSE REVOCATION

### 10-5-301. Investigations.

    a.   The TCPB, upon complaint or upon its own initiative or whenever it may deem it necessary in the performance of its duties or the exercise of its powers, may investigate and examine the operation and premises of any Licensee. In conducting such investigation, the TCPB may proceed either with or without a hearing as it may deem best, but it shall make no order without affording the Licensee any affected party notice and an opportunity for a hearing pursuant to TCPB regulations.[64]

### 10-5-302. Denial of License.

    a.   The Commissioner may deny any new License or refuse to renew any License if:[65]

---

[59] Chippewa Cree Tribe Resolution #13-17, February 2, 2017
[60] Chippewa Cree Tribe Resolution #13-17, February 2, 2017
[61] Chippewa Cree Tribe Resolution #13-17, February 2, 2017
[62] Chippewa Cree Tribe Resolution #13-17, February 2, 2017
[63] Chippewa Cree Tribe Resolution #13-17, February 2, 2017
[64] Chippewa Cree Tribe Resolution #54-16, June 2, 2016
[65] Chippewa Cree Tribe Resolution #54-16, June 2, 2016

000020

1. Information that the Commissioner considers necessary has not been provided;[66]

2. The Applicant makes a material misstatement of fact or any material omission of fact in the Application; or[67]

3. The Applicant has committed any of the Prohibited Acts as described herein.[68]

b. The Commissioner shall provide written notice, within ten (10) business days, to the Applicant of the denial or refusal, setting forth in the notice, the grounds upon which the denial or refusal is based.

**10-5-303. License Revocation or Suspension — Restitution — Penalty.**

a. If there is cause for License revocation or suspension, a Commissioner shall provide a 10-day written notice of a proposed violation that includes a statement of the alleged violation and provision for a hearing or an opportunity for hearing. The notice must be based on a finding that any Person, Licensee, or officer, agent, employee, or representative, whether licensed or unlicensed, of the Person or Licensee has violated any of the provisions of this Title, has failed to comply with the rules, regulations, instructions, or orders promulgated by the Commissioner, has failed or refused to make required reports to the Commissioner, has furnished false information to the Commissioner, or has operated without a required License.[69]

b. The Commissioner may impose a civil penalty not to exceed $1,000 for each violation and not to exceed $5,000 for each administrative action and may issue an order revoking or suspending the right of the Person or Licensee, directly or through an officer, agent, employee, or representative, to do business in the jurisdiction of the Tribe as a Licensee or to engage in the business of making Loans. In addition, the Commissioner may order restitution to borrowers and reimbursement for the Commissioner's cost in bringing the administrative action, and order any appropriated equitable or injunctive relief.[70][71]

c. All notices, hearing schedules, and orders must be mailed to the Person or Licensee by certified mail to the address for which the License was issued or, in the case of an unlicensed business, to the last-known address of record.[72]

---

[66] Chippewa Cree Tribe Resolution #13-17, February 2, 2017
[67] Chippewa Cree Tribe Resolution #13-17, February 2, 2017
[68] Chippewa Cree Tribe Resolution #13-17, February 2, 2017
[69] Chippewa Cree Tribe Resolution #13-17, February 2, 2017
[70] Chippewa Cree Tribe Resolution #54-16, June 2, 2016
[71] Chippewa Cree Tribe Resolution #13-17, February 2, 2017
[72] Chippewa Cree Tribe Resolution #54-16, June 2, 2016

000021

d. A revocation, suspension, or surrender of a License does not relieve the Licensee from civil or criminal liability for acts committed prior to the revocation, suspension, or surrender of the License.

e. The Commissioner may reinstate any suspended or revoked License if there is not a fact or condition existing at the time of reinstatement that would have justified the Commissioner's refusal to originally issue the License. If a License has been suspended or revoked for cause, an Application may not be made for the issuance of a new License or the reinstatement of a suspended or revoked License for a period of six (6) months from the date of suspension or revocation.

f. All civil penalties collected pursuant to this section must be deposited in the Tribe's general fund.

## Part 4. LICENSEE INFORMATION

**10-5-401. Information.** Each Licensee shall keep and use books, Accounts, and records that will enable the Commissioner to determine if the Licensee is complying with the provisions of this Title and maintain any other records required by the Commissioner. The Commissioner is authorized to examine the records at any reasonable time. The records must be kept for two (2) years following the last entry on a Loan and must be kept according to generally accepted accounting procedures that include an examiner being able to review the recordkeeping and reconcile each Loan with documentation maintained in the Consumer's Loan file records. All Licensee records are records of the Tribe and may not be released to any entity unless authorized by this code or by order from the TCPB.[73]

## Part 5. EXAMINATION OF LICENSEE

**10-5-501. Examination.**

a. The TCPB may conduct an examination of each Licensee's lending operation to ensure that the License is in compliance with the provisions of this Title and any/all applicable federal laws.

b. A Licensee shall make available to a TCPB examiner the information requested by the Commissioner, required under this Title or required by applicable federal law.[74]

**10-5-502. Fees.**

a. The Licensee shall pay the TCPB a fee for each examiner required to conduct an examination.[75]

b. Fees are to be calculated from the beginning date of the examination.

---

[73] Chippewa Cree Tribe Resolution #13-17, February 2, 2017
[74] Chippewa Cree Tribe Resolution #54-16, June 2, 2016
[75] Chippewa Cree Tribe Resolution #13-17, February 2, 2017

-22-

c. The TCPB may charge a Licensee for no more than three (3) exams a year under this section.[76]

## Part 6. ADJUDICATIVE HEARINGS AND PROCEDURES

### 10-5-601. Hearings.[77]

a. The TCPB shall afford a Licensee the opportunity for an adjudicative proceeding before suspending a Licensee except in cases where the circumstances call for immediate action to protect the public safety, general welfare, or the integrity of the Tribal Consumer Financial Services operation, and observing the hearing requirements would be contrary to the public interest, in which case the Licensee shall be entitled to a prompt post-suspension hearing.

b. No hearing will be conducted with respect to any adjudicative proceeding unless an Application for an adjudicative proceeding and request for hearing is timely filed by the Licensee with the TCPB in compliance with this Code. The Application must be made in writing on a form to be obtained from the TCPB, or a facsimile thereof, and must be received within fourteen (14) business days of the party's receipt of a notice of administrative charges and opportunity for an adjudicative proceeding. An Application for an adjudicative proceeding and request for hearing shall accompany all notices of administrative charges.

c. If an Application for an adjudicative proceeding is not timely filed, then the party affected shall have waived their right to a hearing on the allegations set forth in the notice of administrative charges. The party shall be deemed to be in default and the TCPB may take action against the party not to exceed the maximum penalty as stated in the notice of administrative charges and opportunity for an adjudicative proceeding, which action shall be final.

### 10-5-602. Notice of Hearing Requirements.

a. All parties that have filed a timely Application for adjudicated proceeding shall be served with a notice of hearing at least seven (7) calendar days before the date set for the hearing unless all parties consent to a shorter period. The notice shall state the time, place, and purpose of the hearing.[78]

b. Service of Process. Service of Process to effectuate notice shall be required for all hearings under this Code.

c. By Whom Served. The TCPB shall cause to be served all orders, notices, and other documents issued by the TCPB, together with any other documents, which the TCPB

---

[76] Chippewa Cree Tribe Resolution #13-17, February 2, 2017
[77] Chippewa Cree Tribe Resolution #54-16, June 2, 2016
[78] Chippewa Cree Tribe Resolution #54-16, June 2, 2016

-23-

000023

is required by law to serve.  Every other document shall be served by the party filing it.

d.  <u>Upon Whom Served.</u>  All papers served by either the TCPB or any party shall be served upon all counsel of record at the time of such filing and upon parties not represented by counsel or upon their agents designated by them or by law.  Any counsel entering an appearance after the initiation of the proceeding shall notify all other counsel then of record and all parties not represented by counsel of such fact.

e.  <u>Method of Service.</u>  Service of all orders, notices, and other documents shall be made personally or by first-class or certified mail. Facsimile service by the TCPB is prohibited.

f.  <u>When Service is Complete.</u>  Service of notices and other documents shall be regarded as complete as follows:

   1.  By personal service, upon delivery to the Person, attorney representing the party, designated agent of the party, any Person aged 18 or older residing at the residence of the party or corporate officer.

   2.  By mail, upon deposit in the United States mail properly stamped and addressed; service is complete on the third day after mailing, excluding the date of mailing.

g.  <u>Filing with the TCPB:</u>

   1.  Documents required to be filed with the TCPB shall be deemed filed upon actual receipt of the documents by the TCPB, regardless of method of delivery.

   2.  Documents may be transmitted for filing by hand delivery, U.S. mail, or courier.

   3.  The TCPB has the discretion to accept documents transmitted electronically or by facsimile. If the TCPB does not accept any documents which have been transmitted electronically or by facsimile, it shall, within three (3) business days, make good faith effort to notify the sending party that such service was not accepted.

   4.  The TCPB shall stamp all documents with the date and time of receipt.

   5.  Delivery of documents to any office of the TCPB other than the TCPB's office when said office is not occupied by the TCPB who can personally accept the documents shall not constitute a lawful filing of papers for any matter under the jurisdiction of the TCPB.

**10-5-603.  Informal  Proceedings:  Discovery  Limitations.**   In  all  proceedings  before  the Commission, discovery requests to the TCPB shall be limited to requests for production of written

000024

reports and supporting documents relevant to the charges.  Interrogatories and depositions shall not be allowed.

**10-5-604. Official Notice.**  The TCPB, upon request made before or during a hearing, or upon its own motion will officially notice:[79]

a.  Federal Law.  The Constitution; congressional acts, resolutions, records, journals and committee reports; decisions of federal courts and administrative agencies; executive orders and proclamations; and all rules, orders and notices published in the Federal Register.

b.  Tribal Law.  The Constitution of the Chippewa Cree Tribe; the Chippewa Cree Tribal Code, including Title 10, the Chippewa Cree Tribal Credit Transaction and Regulatory Code and all duly enacted rules of the Business Committee as they apply to the Tribal Consumer Financial Service Licensee.[80]

**10-5-605. Initial, Interim, or Final Order.** Every decision and order, whether initial, interim, or final, shall:[81]

a.  Be correctly captioned as to the name of the TCPB and name of proceeding;

b.  Designate all parties and counsel to the proceeding;

c.  Include a concise statement of the nature and the background of the proceeding;

d.  Be accompanied by appropriate numbered findings of fact and conclusions of law and a statement from the presiding officer of the credibility of the witnesses, and that the decision is based, all or in part, upon such findings;

e.  Include the reason or reasons for the particular order or remedy afforded.  Findings shall be accompanied by a concise and explicit statement of the underlying evidence of record to support the findings;

f.  Reference specific authority or rules and provisions considered or relied upon.

**10-5-606. Judicial Review.**  The TCPB's decision may be appealed to the Chippewa Cree Tribal Court within 45 days of the date the written decision was served upon the appealing party.  The Court's review should be based on and limited to a review of the TCPB's record of decision.  The Court may vacate a decision made by the TCPB only if it is arbitrary and capricious or contrary to applicable law.

**10-5-607. Computation of Time.**  For the purposes of this section, in computing any period of time prescribed or allowed by TCPB in future rules, an order of the TCPB, or by an applicable statute, the day of the act, event, or default after which the designated period of time begins to run is not to be included.  The last day of the period so computed is to be included, unless it is a

---

[79] Chippewa Cree Tribe Resolution #54-16, June 2, 2016
[80] Chippewa Cree Tribe Resolution #54-16, June 2, 2016
[81] Chippewa Cree Tribe Resolution #54-16, June 2, 2016

-25-

000025

Saturday, Sunday or a legal holiday, in which event the period runs until the end of the next day which is not a Saturday, Sunday, or a holiday. This section shall not apply to periods of License suspension.[82]

## CHAPTER 6.   CONSUMER PROTECTION PROCEDURES.

### Part 1. COMPLAINT PROCEDURE - RESPONSIBILITIES

#### 10-6-101. Consumer Rights.

a.  The Consumer, at any time before/during/after the Loan process, may file a complaint with the TCPB.[83]

b.  The Consumer has the legal right to file a complaint that alleges any/all violations of this Title and any/all applicable Federal laws relating to their Loan.

c.  The Consumer has the legal right to request all Loan documents related to their Loan activity, including, but not limited to copies of the original Loan documents, history of payment processing, and any/all authorizations provided by the Consumer directly related to Loan and payment authorization.

#### 10-6-102. Licensee Responsibilities.

a.  Each Licensee shall appoint a resident agent for service of process and provide notice of such appointment to the TCPB.[84]

b.  Licensee shall, upon request by the TCPB, provide all documents requested within (10) ten business days of request.[85]

#### 10-6-103. TCPB Responsibilities.

a.  The TCPB shall maintain a list of Licensees that is available to interested Persons and to the general public.[86]

b.  The TCPB shall also establish by rule a procedure under which an aggrieved Consumer or any member of the public may file a complaint against a Licensee or an unlicensed Person who violates any portion of this Title.[87]

c.  The TCPB may hold hearings, subject to this Title, upon the request of a party to the complaint, make findings of fact or conclusions of law, issue cease and desist orders, refer the matter to the appropriate law enforcement agency for prosecution for a

---

[82] Chippewa Cree Tribe Resolution #54-16, June 2, 2016
[83] Chippewa Cree Tribe Resolution #54-16, June 2, 2016
[84] Chippewa Cree Tribe Resolution #54-16, June 2, 2016
[85] Chippewa Cree Tribe Resolution #54-16, June 2, 2016
[86] Chippewa Cree Tribe Resolution #54-16, June 2, 2016
[87] Chippewa Cree Tribe Resolution #54-16, June 2, 2016

000026

violation of this Title, seek injunctive or other relief in any Tribal court, or suspend or revoke a License granted under this Title.[88]

## Part 2. CIVIL REMEDIES

### 10-6-201. Remedies.

a. The remedies provided in this section are exclusive and cumulative and apply to Consumers, Licensees and unlicensed Persons to whom this Title applies. Except with respect to any arbitration provision set forth in the Loan Agreement, the courts of the Chippewa Cree Tribe have exclusive jurisdiction to apply and enforce the provisions of this Title, including this part.[89]

   1. Any Person found to have intentionally violated this part is liable to the Consumer for actual damages. Costs and attorney's fees shall not be awarded unless specifically provided for in the Loan Agreement.

   2. A Consumer may sue for injunctive and other similar equitable relief to stop a Person from violating any provisions of this Title.

   3. The Consumer may not bring a class action suit for any violation of this Title, acts in furtherance of this Title, or to enforce this Title.[90]

b. The Consumer and the Licensee or unlicensed Person may agree to arbitration in accordance with the terms of the Loan Agreement.

c. The remedies provided in this section are intended to be the exclusive remedies available to a Consumer for a violation of this Title.

## Part 3. INVESTIGATIONS BY COMMISSIONER — SUBPOENAS — OATHS — EXAMINATION OF WITNESSES AND EVIDENCE

**10-6-301. Investigations.** The Commissioner may investigate any matter, upon complaint or otherwise, if it appears that a Person has engaged in or offered to engage in any act practice that is in violation of any provision of this Title or any rule adopted or order issued by the Commissioner pursuant to this Title.[91]

### 10-6-302. Subpoenas-Oaths-Examination of Witness-Evidence.

a. The Commissioner may issue subpoenas to compel the attendance of witnesses and the production of documents, papers, books, records, and other evidence before it in any matter over which it has jurisdiction, control, or supervision pertaining to this

---

[88] Chippewa Cree Tribe Resolution #54-16, June 2, 2016
[89] Chippewa Cree Tribe Resolution #54-16, June 2, 2016
[90] Chippewa Cree Tribe Resolution #54-16, June 2, 2016
[91] Chippewa Cree Tribe Resolution #54-16, June 2, 2016

000027

Title.  The Commissioner may administer oaths and affirmations to a Person whose testimony is required.

b.  If a Person refuses to obey a subpoena or to give testimony or produce evidence as required by the subpoena, a judge of any court of the Tribe may, upon application and proof of the refusal, issue a subpoena or subpoena duces tecum for the witness to appear before the Commissioner to give testimony and produce evidence as may be required.  The clerk of court shall then issue the subpoena, as directed, under the seal of the court, requiring the Person to whom it is directed to appear at the time and place designated in the subpoena.

c.  If a Person served with a subpoena refuses to obey the subpoena or to give testimony or produce evidence as required by the subpoena, the Commissioner may proceed under the contempt provisions or as otherwise provided by the law of the Tribe.

**10-6-303. Alternative Procedure. Production of Records Located Outside State — Alternate Procedures — Designated Record Inspectors.**  If the Commissioner requires the production of records that are located outside the jurisdiction of the Tribe, the party shall either make them available to the Commissioner at a convenient location within the Reservation of the Tribe or pay the reasonable and necessary expenses for the Commissioner to examine them at the place where they are maintained.  The Commissioner may designate representatives to inspect them on the Commissioner's behalf.

**Part 4. CEASE AND DESIST ORDERS**

**10-6-401. Cease and Desist.** If it appears to the Commissioner that a Person has engaged in or is about to engage in any act or practice constituting a violation of any provision of this Title or any rule adopted or order issued by the Commissioner pursuant to this Title, the Commissioner may issue an order directing the Person to cease and desist from continuing the act or practice after reasonable notice and opportunity for a hearing.  The order may apply only to the alleged act or practice constituting a violation of this Title.

**10-6-402. Temporary Order.** The Commissioner may issue a temporary order pending the hearing that:
    a.  Remains in effect until ten (10) days after the hearings examiner issues proposed findings of fact and conclusions of law and a proposed order; or

    b.  Becomes final if the Person to whom notice is addressed does not request a hearing within ten (10) days after receipt of the notice.

**10-6-403. Violation.** A violation of an order issued pursuant to this section is subject to the penalty provisions of this Title and the laws of the Tribe.

**Part 5. INJUNCTIONS —RECEIVERS**

**10-6-501. Injunction.**

000028

    a.   Whenever the Commissioner has reason to believe that a Person is using, has used, or is about to knowingly use any method, act, or practice that violates any provision of this Title or any rule adopted or order issued by the Commissioner pursuant to this Title, the Commissioner, upon determining that proceeding would be in the public interest, may bring an action in the name of the Tribe against the Person to restrain by temporary or permanent injunction or temporary restraining order the use of the unlawful method, act, or practice.

    b.   An action under this section may be brought in the any court of the Tribe.

    c.   A Tribal court may issue temporary or permanent injunctions or temporary restraining orders to restrain and prevent violations of this Title, and an injunction must be issued without bond to the Commissioner.  If the Commissioner is successful in obtaining an injunction or restraining order under this section, the Commissioner is entitled to an award of reasonable attorney's fees and costs.

**10-6-502. Receiver.** In addition to all other means provided by law for the enforcement of a restraining order or injunction, the TCPB or any court of competent jurisdiction in which the action is brought may impound and appoint a receiver for the property and business of the defendant, including books, papers, documents, or records pertaining to the property or business, or as much of the property or business as the court considers reasonably necessary to prevent violations of this part.  The receiver, when appointed and qualified, has the powers and duties as to custody, collection, administration, winding up, and liquidation of the property and business that are conferred upon the receiver by the court.[92]

**10-6-503. Notice.** The notice for an action pursuant to § 10-6-501 must state generally the relief sought and be served at least twenty (20) days before the hearing of the action in which the relief sought is a temporary or permanent injunction.  The notice for a temporary restraining order is governed by the laws of the Tribe.[93]

## CHAPTER 7. RULEMAKING.

### Part 1. NOTICE OF RULEMAKING

**10-7-101. Adopting Rules.** In adopting rules under this Code, the TCPB shall, before adopting any rule, except an emergency rule or a housekeeping rule, do each of the following:

    a.   Publish a notice of proposed rulemaking at least sixty (60) calendar days before the expiration of the public hearing and comment period for the proposed rulemaking action. In addition to publication, a copy of the notice shall be sent via first-class mail or hand delivered on or before the date of publication to any existing Licensee or pending Applicant for a License whose rights or duties will be substantially affected by the proposed rule.

---

[92]Chippewa Cree Tribe Resolution #13-17, February 2, 2017
[93] Chippewa Cree Tribe Resolution #54-16, June 2, 2016

000029

b. Conduct, on the date and at the time designated in the notice at the Rocky Boy's Reservation, Montana, a public hearing at which any Person affected by the proposed rule, may appear and be heard in person, by attorney, or both, and may present the Person's position or contentions orally or in writing. The hearing date should be the last day of the public hearing and comment period:[94]

1. The TCPB shall make effort to allow all interested parties to make a full presentation of their oral comments, but the TCPB may, at its discretion, limit the time available to each commenter to whatever extent is necessary to conclude the meeting by the end of the business day. The TCPB may, if necessary and at its discretion, extend a hearing for an additional day.[95]

2. The hearing may be held as a part of a regular or special meeting of the TCPB.[96]

3. The hearing shall be recorded or detailed minutes shall be taken.[97]

## Part 2. REVIEW AND CONSIDERATION OF ALL SUBMITTED COMMENTS

**10-7-201. Comments.** Interested parties may submit written comments during the public hearing and comment period. The comments must be received by the TCPB before the comment period ends. Oral comments may be made in lieu of, or in addition to, written comments. The oral comments may be made only at the scheduled hearing.

a. If substantial changes to the proposed rule are made after the hearing and review of the submitted comments, a supplemental notice will be issued. An additional comment period shall be open for at least sixty (60) days. An additional hearing may be held at the discretion of the TCPB.

b. If substantial changes to the proposed rule are not made, or they have been made and the additional comment period has passed and no additional substantial changes are made, then the TCPB shall vote on the final rule. If the final rule passes the TCPB, the TCPB shall submit the final rule to the Business Committee for the Business Committee's consideration and vote.[98]

c. If the Tribal Business Committee passes the final rule, then the TCPB shall publish the rulemaking order of adoption. The order of adoption must contain an effective date, and the effective date must be at least thirty (30) days after the adoption date.

---

[94] Chippewa Cree Tribe Resolution #54-16, June 2, 2016
[95] Chippewa Cree Tribe Resolution #54-16, June 2, 2016
[96] Chippewa Cree Tribe Resolution #54-16, June 2, 2016
[97] Chippewa Cree Tribe Resolution #54-16, June 2, 2016

[98] Chippewa Cree Tribe Resolution #54-16, June 2, 2016

-30-

## Part 3. HOUSEKEEPING RULEMAKING; EMERGENCY RULEMAKING

**10-7-301. Housekeeping Rulemaking**. The TCPB may hold a public hearing for a proposed housekeeping rule at its discretion. If the TCPB chooses to hold a public hearing, the hearing is subject to the requirements contained herein.

**10-7-302. Emergency Rulemaking Criteria**. Emergency rulemaking is appropriate under the following circumstances:

    a. The circumstances call for immediate action to protect the public safety, general welfare, or the integrity of the Tribal Consumer Financial Services operation, and observing the notice and hearing requirements of regular rulemaking would be contrary to the public interest; or

    b. Binding law or regulation requires immediate adoption of a rule to protect the public or the Tribal Consumer Financial Services operation.

**10-7-303. Emergency Rulemaking Procedure.**

    a. Emergency rulemaking is exempt from the notice requirement given in § 10-7-101 to address the emergency. The TCPB will vote on a proposed emergency rule as soon as possible, without a comment period.

    b. Upon adoption of an emergency rule by the TCPB, the emergency rule shall be submitted to the Tribal Business Committee for consideration and vote.

    c. Upon Adoption of the emergency rule by the Business Committee, the TCPB shall publish the rulemaking order of adoption. The order of adoption must contain an effective Date, and the effective date will be the day of adoption. The order of adoption shall contain a notice that interested parties may petition for the amendment or abrogation of the emergency rule.[99]

**10-7-304. Petition for Rulemaking**. An interested party may at any time petition for the issuance, amendment, or abrogation of a rule. The petition must be signed and filed with the TCPB. The TCPB shall consider the petition and may, at its discretion, begin a rulemaking.

**10-7-305. Rulemaking-Commission Discharge of Duties**. The TCPB shall diligently discharge the duties imposed by this section, but a minor failure of publication or a failure to mail any notice or copy of a proposed rule does not necessarily invalidate any rule.

**10-7-305. Computation of Time.** For the purposes of this section, in computing any period of time prescribed or allowed by TCPB regulation, an order of the TCPB, or by an applicable statute, the day of the act, event, or default after which the designated period of time begins to run is not to be included. The last day of the period so computed is to be included, unless it is a Saturday, Sunday or a legal holiday, in which event the period runs until the end of the next day

---

[99] Chippewa Cree Tribe Resolution #54-16, June 2, 2016

000031

which is not a Saturday, Sunday, or a holiday. This section shall not apply to periods of License suspension.

## CHAPTER 8. GENERAL PROVISIONS

**10-8-101. Governing Law.** Except as otherwise provided in this Code or the other laws of the Tribe, Loan Agreement between any Creditor authorized by the Tribe to lend money and a Consumer shall be governed by this Code and the laws of the Tribe notwithstanding any federal or Tribal law to the contrary.

**10-8-102. Severability.** If the application of any provision or clause of this Code is held invalid by a court of competent jurisdiction, such invalidity shall not affect other provisions or application of this Code if the remaining provisions can still be given effect without the invalid provision(s) or application(s).

**10-8-103. Administration.** The Commissioner of the TCPB shall be charged with the administration of this Code. The Commissioner is authorized to promulgate rules regarding those matters designated to be governed by this Code.[100]

**10-8-104. Limited Debt Collection Exemption.** The Chippewa Cree Tribal Departments shall have a five (5) year grace period after the effective date of this Code to pursue and collect any unpaid employee loan debt in accordance with departmental policies.[101]

**10-8-105. Limited Loan Exemptions.** Home mortgage loans and governmental issued small business loans are exempt from this Code.[102]

**10-8-106. Effective Date.** This Code shall take effect and be in full force and effect from and after the date of its final passage and approval of the Business Committee.[103]

---

[100] Chippewa Cree Tribe Resolution #54-16, June 2, 2016
[101] Chippewa Cree Tribe Resolution #98-16, September 1, 2016
[102] Chippewa Cree Tribe Resolution #98-16, September 1, 2016
[103] Chippewa Cree Tribe Resolution #98-16, September 1, 2016

000032

# The Chippewa Cree Tribe of the Rocky Boy's Reservation

Phone: (406) 395-4478 or 4210 - Finance Office
(406) 395-4282 or 4321 - Business Committee

31 Agency Square
Box Elder, Montana 59521

Resolution No. $13-17$

## HEREBY AMENDING TITLE 10 – THE CHIPPEWA CREE TRIBAL LENDING AND REGULATORY CODE TO INCORPORATE ALL PROPOSED CHANGES DESCRIBED HEREIN THIS RESOLUTION

**WHEREAS,** the Business Committee is the governing body of the Chippewa Cree Tribe of the Rocky Boy's Federal Indian Reservation, located in Box Elder, Montana, ("Tribe") by the authority of the Constitution and Bylaws of the Tribe approved on November 23, 1935; and

**WHEREAS,** pursuant to the Tribe's inherent sovereignty and Constitution and Bylaws of the Tribe, the Business committee is charged with the duty to promote and protect the health, security, and general welfare of the Tribe; and

**WHEREAS,** the Business Committee adopted Title 10 the Chippewa Cree Tribal Lending and Regulatory Code to continue the development of the economy of the Tribe to improve the Tribe's economic self-sufficiency, to enable the Tribe to better serve the social, economic, educational, health, and safety needs of its members and visitors, and to provide its members and visitors the opportunities to improve their own economic circumstances; and

**WHEREAS,** the Business Committee wishes to amend Title 10 the Chippewa Cree Tribal Lending and Regulatory Code with the Emergency Rulemaking Procedure; and

**WHEREAS,** the Business Committee understands that the amendments outlined within this Resolution aim to create greater consumer protection, consistency, and accuracy of the intent of the creation and policy of Title 10 the Chippewa Cree Tribal Lending and Regulatory Code; and

**WHEREAS,** Richard Fulkerson, the Commissioner ("Commissioner") has had an opportunity to review, opine, and not object to the proposed amendments; and

**WHEREAS,** the Business Committee agree to the following amendments:

### CHAPTER 1. FINDINGS, INTENT, POLICY
### 10-1-101. Findings.

b. The Tribe, shall establish the Tribal Consumer Protection Bureau (the "TCPB") and delegate to the TCPB the independent regulatory authority to license and regulate all Tribal Consumer Financial Services businesses within the jurisdiction of the Tribe

Error! Unknown document property name.

REVIEWED
BY CCT-OAG

000033

## CHAPTER 2. DEFINITIONS
### 10-2-201. Definitions

j. "Consumer Financial Services" means the business of providing a Loan to a Consumer and collecting Interest as authorized under this Code, the business of providing services to a Consumer related to a Loan, or the business of providing services to a Licensee, including but not limited to origination, processing, and servicing, including interaction directly with a Consumer.

o. "Lender" means a Person wholly owned by the Tribe, operating within the Tribe's jurisdiction and on the Tribe's Indian Lands, and licensed by the TCPB who is regularly engaged in the Consumer Financial Services as authorized by this Code, and who originates Loans in whose favor an obligation exists by reason of which it is, or may become entitled to the payment of money.

q. "Licensee" means a Person or entity that is licensed by the Commissioner of the TCPB to engage in the business of providing Consumer Financial Services.

v. "Servicer" means a Person that collects interest, principal, payments, and deposits and receives notices under the Loan Agreement from a Consumer on a Loan issued by a Lender under this Code in exchange for fees or a revenue-share, and who has control and the ability to possess monies collected from Loans.

## CHAPTER 3. LOAN REQUIREMENTS
### Part 2. Usury and Interest Rates

**10-3-207. Rate of Interest Stipulated by Contract after Breach.** Any rate of Interest, as set forth by a contract, remains chargeable after a breach thereof, as before, until the contract is superseded by a judgment or other new obligation.

### Part 4. CREDITOR REQUIREMENTS FOR LOANS
**10-3-401. Creditor Disclosure.** The Creditor shall disclose in any Loan Agreement the following:

    a.    The amount and date of the Loan;

    b.    The amount of the down payment, if any;

    c.    The circumstances or dates any payments are due and the amount of payments;

    d.    The maturity date;

    e.    A list of any property used to secure the Loan;

    f.    Any liens or title filings required;

    g.    A description of the method used to compute the charges;

000034

h.   An explanation of any fee or charge, including the cost of the Loan as an annual percentage rate (APR);

i.   Any fee or charge that may be applied for delinquency;

j.   Refinancing requirements, including any fee or charge;

k.   Contact information for the TCPB and that any improprieties in making the Loan or in Loan practices may be referred to the TCPB;

l.   The following or a similar notice in a prominent place on each Loan contract in at least twelve-point bold type face for any Loan:

**"THIS LOAN IS NOT INTENDED TO MEET LONG-TERM FINANCIAL NEEDS. THIS LOAN SHOULD BE USED ONLY TO MEET SHORT-TERM CASH NEEDS."**

m.   A Consumer may prepay a Loan at any time without penalty.

## Part 5. REQUIRED DISCLOSURES – LOAN AGREEMENT

**10-3-501. Notice to Consumer.** Before entering into a Loan Agreement, the Creditor shall disclose in writing to the Consumer any information prepared by or at the direction of the Commissioner that:

a.   Explains, in simple language, the Consumer's rights and responsibilities in the Loan transaction;

b.   Includes contact information of the TCPB's office, or any other designated office as provided, that handles concerns or complaints by Consumers; and

c.   Informs Consumers that the TCPB's office can provide information about whether the Creditor is licensed and other legally available information.

## Part 7. Prohibited and Permitted Fees – Attorneys Fees and Costs

**10-3-702. Prohibited Acts.** A Creditor making Loans may not commit, or have committed on behalf of the Creditor, any of the following prohibited acts:

a.   Operating as a Lender or Servicer unless the Commissioner has first issued a valid License;

b.   Threatening to use or using a criminal process in this or any other jurisdiction to collect on the Loan made to a Consumer in this jurisdiction or any civil process to collect the payment of Loans not generally available to Creditors to collect on Loans in Default;

000035

c. Altering the date or any other information on a Check received from a Consumer;

d. Altering or changing the date upon which the Creditor and Consumer agreed to make any electronic deductions from the Consumer's Account unless the Consumer agrees, in writing, by voice, by electronic authorization or otherwise, to the change;

e. Making any false, misleading, or deceptive representation to a financial institution relating to a Consumer who has agreed to provide payment for a Loan through an electronic deduction;

f. Using any device or agreement that would have the effect of charging or collecting more fees, charges, or Interest than those allowed by this part;

g. Engaging in unfair, deceptive or abusive practices in the making or collection of a Loan;

h. Using or attempting to use the Consumer's authorization to deduct the amount set forth in the Loan Agreement or any other information obtained from the Consumer or the Consumer's financial institution for any purpose other than to collect the proceeds of the Loan;

i. Charging any Interest, fees, or charges other than those specifically authorized by this Title;

j. Making a misrepresentation of a material fact by an Applicant in obtaining or attempting to obtain a License;

k. Violating Tribal or federal law or regulation, misappropriating Tribal assets, breaching any contract or agreement with the Tribe or a Licensee; or

l. Posing a threat to the public interest or the effective regulation of Consumer Financial Services.

**10-4-107. TCPB Composition.**

g. Commissioner's Compensation. The Commissioner's compensation shall be subject to negotiation and approval by the Business Committee.

h. Vacancy of Commissioner. In the case of a vacancy in the office of the Commissioner for any cause, and until such vacancy is filled, the Business Committee shall have and exercise all the powers and duties conferred by law or by the TCPB upon the Commissioner, with the same authority as if those powers and duties were exercised and performed by the Commissioner.

000036

i.     Funding for the TCPB

    1.    The Tribe shall establish a separate pre-funded bank account which shall only be used to pay operating expenses of the TCPB, including the compensation of the Commissioner.

    2.    The Tribe, TCPB and Commissioner shall have the ability to collect advances, reimbursements or licensing fees from Tribal Consumer Financial Services businesses to provide funding for the TCPB.

## CHAPTER 4. THE TRIBAL CONSUMER PROTECTION BUREAU

**10-4-110. TCPB Rules.** The Commissioner may promulgate rules as necessary to carry out the implementation and orderly performance of the TCPB's duties and powers regarding the following:

a.    Perform any acts and to make any decisions incidental to or necessary for carrying out any functions specified by this Code or delegated by the Business Committee pursuant to this Code;

b.    The making of findings or other information required by or necessary to implement this Code

c.    Interpretation and application of this Code, as may be necessary to enforce the TCPB's duties and exercise its powers;

d.    A regulatory system for overseeing Consumer Financial Services, including accounting, contracting, management and supervision;

e.    The conduct of inspections, investigations, hearings, enforcement actions and other powers of the TCPB authorized by this Code;

f.    Specification of the amount and the schedule of applicable licensing and examination fees that shall be imposed by the TCPB; and

g.    Additional classifications of Licensees.

    1.    No regulation of the TCPB shall be of any force or effect unless it is adopted by the TCPB by written resolution and subsequently approved by a resolution of the Business Committee.

    2.    The Tribal Court and any other court of competent jurisdiction shall take judicial notice of all Commission Regulations adopted pursuant to this Title.

000037

## CHAPTER 5.  LICENSING
**10-5-101. Licensing.**

a.  A Person may not engage in or offer to engage in the business of Loans unless licensed by the Commissioner of the TCPB.  Any Loan extended or serviced by a non-licensed Person is invalid and null and void.  A License may be granted to:

    1.  A Person located on the Tribe's reservation, subject to the jurisdiction of the Tribe, wholly-owned by the Tribe, and who uses the internet to conduct transactions with Consumers that are covered by this Code;

    2.  A Servicer that has contracted with a licensed Lender to service Loans and other transactions that are covered by this Code; and

    3.  Any other Person subject to licensure by regulation.

b.  An Applicant for a License to engage in Consumer Financial Services shall pay to the TCPB a non-refundable License Application fee.

c.  The Application for licensure must be in writing, under oath, and in the form prescribed by TCPB. The Application must contain, at a minimum:

    1.  The name of the Applicant;

    2.  The date of formation of a business entity;

    3.  The physical address of each Loan office to be operated by the Applicant;

    4.  The name and resident address of the owner or partners or, if a corporation or association, of the directors, trustees, and principal officers; and

    5.  Any other pertinent information that the TCPB may require.

    6.  The Applicant shall timely update the information provided in the Application upon any change therein.

d.  A License may not be issued for longer than 1 year. The License year must coincide with the calendar year.

e.  The Commissioner may not issue or renew a License unless findings are made that:

    1.  The financial responsibility, experience, character, and general fitness of the Applicant warrant the belief that the business will be operated

000038

lawfully and fairly and within the provisions of this part;

2.    The Applicant has unencumbered assets of at least $25,000 for each location;

3.    The Applicant has provided a sworn statement that the Applicant will not in the future, directly or indirectly, use a criminal process to collect the payment of Loans or any civil process to collect the payment of Loans not generally available to Creditors to collect on Loans in Default;

4.    The criminal history of the employees of the Applicant demonstrates no convictions involving fraud or financial dishonesty and no adverse civil judgments involving fraudulent or dishonest financial dealings and no ongoing criminal investigations; and

5.    Other information that the Commissioner considers necessary has been provided.

f.    More than one place of business may not be maintained under the same License, but the Commissioner may issue more than one License to the same Licensee upon compliance with the provisions of this section governing issuance of a single License.

**10-5-102. Licensing Exemptions. Creditors Exempt from Licensing Requirements.**
The following entities are exempt from the licensing requirements of this part:

a.    Any state bank and its subsidiary;

b.    Any national bank, its subsidiary, and its vendors;

c.    Any bank holding company, its subsidiary, and its vendors;

d.    Any other federally insured financial institution, its holding company, its subsidiary, and its vendors; and

e.    Any credit reporting agency or bureau, or any entity that provides a Lender information for the Lender to make or reach a credit decision.

**Part 2. LICENSE RENEWAL FEE**
**10-5-201. Renewal:**

a.    A Person licensed under § 10-5-101 shall pay, on or before December 1st of each year, a License renewal fee for each License that the Person holds under this part. Notwithstanding the forgoing, a Servicer's licensee fee and renewal fee, shall not exceed $10,000 per annum.

b.    Failure to pay any yearly License renewal fee required by this section within

000039

the time prescribed will result in the automatic revocation of the License subject to renewal.

## Part 3. INVESTIGATIONS, DENIAL OF LICENSE AND LICENSE REVOCATION

### 10-5-302. Denial of License.

a.   The Commissioner may deny any new License or refuse to renew any License if:

    1.   Information that the Commissioner considers necessary has not been provided;

    2.   The Applicant makes a material misstatement of fact or any material omission of fact in the Application; or

    3.   The Applicant has committed any of the Prohibited Acts as described herein.

b.   The Commissioner shall provide written notice, within ten (10) business days, to the Applicant of the denial or refusal, setting forth in the notice, the grounds upon which the denial or refusal is based.

### 10-5-303. License Revocation or Suspension — Restitution — Penalty.

a.   If there is cause for License revocation or suspension, the Commissioner shall provide a 10-day written notice of a proposed violation that includes a statement of the alleged violation and provision for a hearing or an opportunity for hearing. The notice must be based on a finding that any Person, Licensee, or officer, agent, employee, or representative, whether licensed or unlicensed, of the Person or Licensee has violated any of the provisions of this Title, has failed to comply with the rules, regulations, instructions, or orders promulgated by the Commissioner, has failed or refused to make required reports to the Commissioner, has furnished false information to the Commissioner, or has operated without a required License.

b.   The Commissioner may impose a civil penalty not to exceed $1,000 for each violation and not to exceed $5,000 for each administrative action and may issue an order revoking or suspending the right of the Person or Licensee, directly or through an officer, agent, employee, or representative, to do business in the jurisdiction of the Tribe as a Licensee or to engage in the business of making Loans. In addition, the Commissioner may order restitution to Consumers and reimbursement for the Commissioner's cost in bringing the administrative action, and order any appropriate equitable or injunctive relief.

c.   All notices, hearing schedules, and orders must be mailed to the Person or Licensee by certified mail to the address for which the License was issued or,

000040

in the case of an unlicensed business, to the last-known address of record.

d.    A revocation, suspension, or surrender of a License does not relieve the
      Licensee from civil or criminal liability for acts committed prior to the
      revocation, suspension, or surrender of the License.

e.    The Commissioner may reinstate any suspended or revoked License if there is
      not a fact or condition existing at the time of reinstatement that would have
      justified the Commissioner's refusal to originally issue the License. If a
      License has been suspended or revoked for cause, an Application may not be
      made for the issuance of a new License or the reinstatement of a suspended or
      revoked License for a period of six (6) months from the date of suspension or
      revocation.

f.    All civil penalties collected pursuant to this section must be deposited in the
      Tribe's general fund.

## Part 4. LICENSEE INFORMATION

**10-5-401. Information.** Each Licensee shall keep and use books, Accounts, and records that
will enable the Commissioner to determine if the Licensee is complying with the provisions of
this Title and maintain any other records required by the Commissioner.  The Commissioner is
authorized to examine the records at any reasonable time. The records must be kept for two (2)
years following the last entry on a Loan and must be kept according to generally accepted
accounting procedures that include an examiner being able to review the recordkeeping and
reconcile each Loan with documentation maintained in the Consumer's Loan file records.  All
Licensee records are records of the Tribe and may not be released to any entity unless
authorized by this Code or by order from the TCPB.

## Part 5. EXAMINATION OF LICENSEE

**10-5-502. Fees.**

a.    The Licensee shall pay the TCPB a fee for each examiner required to
      conduct an examination.

b.    Fees are to be calculated from the beginning date of the examination.

c.    The TCPB may charge a Licensee for no more than three (3) exams a year
      under this section.

## CHAPTER 6. CONSUMER PROTECTION PROCEDURES

## Part 5. INJUNCTIONS — RECEIVERS

**10-6-502. Receiver.** In addition to all other means provided by law for the enforcement of a
restraining order or injunction, the TCPB or any court of competent jurisdiction in which the
action is brought may impound and appoint a receiver for the property and business of the

000041

defendant, including books, papers, documents, or records pertaining to the property or business, or as much of the property or business as the court considers reasonably necessary to prevent violations of this part. The receiver, when appointed and qualified, has the powers and duties as to custody, collection, administration, winding up, and liquidation of the property and business that are conferred upon the receiver by the court.

**WHEREAS**, the effective date of this adoption shall be February 2, 2017; and

**WHEREAS**, the Business Committee affirms that all resolutions, or parts of the same, are consistent with the provisions with this Resolution, are hereby repealed to the extent of such inconsistency; and

**NOW, THEREFORE, BE IT RESOLVED** that the Business Committee hereby amends Title 10 of the Chippewa Cree Tribal Lending and Regulatory Code to incorporate all proposed changes described within this Resolutions; and

**BE IT FINALLY RESOLVED,** that the Tribal Chairman is authorized to sign all documents pertaining to this matter. The Commissioner who administers the Tribal Consumer Protection Bureau ("TCPB") shall publish the rulemaking Order of adoption. Interested parties may petition for the amendment and abrogation of the emergency rule in accordance with Title 10 the Chippewa Cree Tribal Lending and Regulatory Code.

## C E R T I F I C A T I O N

We, the undersigned, as the Chairman and as the Secretary of the Business Committee of the Chippewa Cree Tribe hereby certify that the Business Committee is composed of nine (9) members of whom **seven (7)** members constituting a quorum were present at the meeting thereof, duly and specially called, noticed, convened and held this **2nd** day of February, 2017, and that the foregoing Resolution was duly adopted at said meeting by the affirmative vote of **six (6)** members for and **zero (0)** members against; **zero (0)** members abstained and that the Resolution has not been rescinded or amended in any way.

_____
Chairman, Chippewa Cree Tribe

_____
Secretary, Chippewa Cree Tribe

000042

# EXHIBIT G

THIS LICENSE MUST BE POSTED IN PUBLIC VIEW

0299

## Chippewa Cree Tribe
## Rocky Boy's Reservation • Box Elder, Montana

## LICENSE TO CONDUCT BUSINESS

To: ___Plain Green LLC/93 Mack Road, Suite 600, Box Elder  MT 59521___
Name of Business

Pursuant to Tribal Ordinance #2-91 "Adopting A Business License Code" and Resolution #92-91 "Establishing a Business License Fee" through the Chippewa Cree Tribal Constitutional powers vested in the business committee, the business committee hereby grants the above named business "A License" to conduct business within the exterior boundaries of the reservation for a period of

_____January 1,_____, 20 _17_ to ___December 31_____, 20 _17___, which at this time is subject to be renewed.

Failure to comply with Ordinance #2-91 and Resolution #92-91 can or will result in court action.

Tribal Secretary

Tribal Chairman

Date ___February 10, 2017___

SEAL     Ex. G
         PG- Motion to Dismiss

000001