IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

DARLENE GIBBS, *et al.*,

    Plaintiffs,

v.                                                               Civil Action No. 3:17cv495

PLAIN GREEN, LLC, *et al.*,

    Defendants.

## MEMORANDUM OPINION

This matter comes before the Court on Plaintiffs Darlene Gibbs, Stephanie Edwards, Lula Williams, Patrick Inscho, and Lawrence Mwethuku's ("Plaintiffs") Motion to Permit Jurisdictional Discovery (the "Motion for Discovery"), (ECF No. 34), and Defendant Great Plains Lending, LLC's ("Great Plains") Motion to Stay Proceedings (the "Motion to Stay"), (ECF No. 64). Defendants Plain Green, LLC ("Plain Green") and Great Plains (collectively, "Defendants") responded to the Motion for Discovery, (ECF Nos. 43, 45), and Plaintiffs replied, (ECF Nos. 51, 55). Plaintiffs responded to Great Plains's Motion to Stay, (ECF No. 67), and Great Plains replied, (ECF No. 69).

Accordingly, the matters are ripe for disposition. The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process. The Court exercises jurisdiction pursuant to 28 U.S.C. §§ 1332[1] and 1367.[2] For the reasons that follow, the Court granted the Motion for Discovery and denied the Motion to Stay.[3]

---

[1] "The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332. Plaintiffs are residents of Virginia,

# I. Procedural and Factual Background

## A. Summary of Allegations in the Complaint[4]

Defendants operate internet lending websites offering short-term loans to consumers. Allegedly, Defendants offered loans to Plaintiffs in amounts ranging from $300 to $3,000, charging interest rates ranging from 118% to 448%. Plaintiffs bring this suit on behalf of themselves and all individuals similarly situated, alleging that Defendants' lending enterprises violate state and federal lending laws.

Specifically, Plaintiffs allege that Defendants structured their businesses to benefit from the protections of tribal sovereign immunity even though they do not constitute tribal entities. Defendants did so, Plaintiffs contend, in order to evade state and federal lending laws. Plaintiffs contend that Defendants' fraudulent posture as tribal entities eradicates any potential claim to the protection of tribal sovereign immunity.

According to Plaintiffs, Kenneth Rees,[5] not a tribal member, orchestrated the so-called "rent-a-tribe" scheme at issue in this case. (Compl. ¶ 26–27, ECF No. 1.) Under a "rent-a-tribe"

---

Plain Green is located in Montana, and Great Plains is located in Oklahoma. The Complaint alleges damages exceeding $75,000.

[2] The Court exercises supplemental jurisdiction over Plaintiffs' state usury claim pursuant to 28 U.S.C. § 1367(a) ("[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . .").

[3] Because the ruling on the Motion to Stay had the potential to obviate a discussion of the Motion for Discovery, the Court addresses the Motion to Stay first. The Court denied the Motion to Stay and granted the Motion for Discovery. (ECF No. 73.)

[4] For the purposes of the motions to dismiss, the Court will assume the well-pleaded factual allegations in the Complaint to be true and will view them in the light most favorable to Plaintiffs. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).

model, a non-tribal entity and a tribe agree to establish a lending company in the tribe's name. The tribe nominally establishes the company, ostensibly extending its sovereign immunity to the new tribal entity, in exchange for a small percentage of the revenue. This is designed to allow the company to evade compliance with state usury laws because, as an arm of the tribe, it cannot be sued by consumers or prosecuted by the government. *See, e.g., Thomas v. Dugan*, 168 F.3d 483 (4th Cir. 1998) ("Tribal entities and individual tribal officers acting within their representative capacity within the scope of their authority are also shielded by sovereign immunity.") The non-tribal entity retains the majority of the profits and controls the lending entity, from major business decisions to day-to-day operations.

Plaintiffs allege that in early 2011, Rees sent a letter to the Chippewa Cree Tribe proposing a joint lending venture with a company owned by Rees. Plaintiffs contend the tribe agreed to participate in the lending scheme within two weeks of receiving this letter, and subsequently formed Plain Green. Shortly thereafter, Rees allegedly contacted the Otoe-Missouria Tribe in Oklahoma with a similar proposal, and that tribe formed Great Plains.

Plain Green and Great Plains are structured almost identically. According to Plaintiffs, the Chippewa Cree Tribe and the Otoe-Missouria Tribe (collectively, the "Tribes") were paid a nominal fee for establishing the entities under their names, but "otherwise had no control over the income, expenses, or day-to-day operations of the entities." (Compl. ¶ 35.) Plaintiffs state that third parties who were not members of the tribes or located on the reservations performed nearly all activities associated with the companies, including processing payments, maintaining the call centers, and servicing the loans.

---

[5] Plaintiffs claim that Rees previously engaged in similarly questionable "rent-a-bank" schemes until the Federal Deposit and Insurance Corporation's penalties and sanctions effectively terminated the prohibited business practice.

3

Specifically, Plaintiffs claim Rees controls multiple companies that actually operate the lending businesses and reap the profits. For example, GPL Servicing, Ltd. ("GPLS"), owned by Rees, accepted consumer payments on behalf of the Tribes after loan agreements were executed rather than either Plain Green or Great Plains. GPLS, according to Plaintiffs, transferred no more than 4.5% of the revenue to the Tribes, though Plaintiffs allege the actual amount is even lower because "most of this money was siphoned for the personal benefit of certain tribal members." (Compl. ¶ 46.) Furthermore, Plaintiffs contend, the money lent to Plaintiffs was transferred from a bank account owned and operated by Think Finance, LLC, another company Rees owned. Allegedly, Tailwind Marketing, LLC, also owned by Rees, generated leads to identify potential consumers to solicit. Plaintiffs further contend that Rees's company TC Decision Sciences operated Defendants' websites, served as the administrator of their software, and handled customer service responsibilities at a monthly cost to Defendants. Although Defendants present themselves as the lenders of the loans they issued, Plaintiffs assert that Rees and the companies he formed control day-to-day operations and major business decisions on behalf of Defendants.

B. **Procedural Background**

Plaintiffs filed a five-count putative class action Complaint against Defendants alleging various state and federal violations associated with an illegally usurious loan enterprise.[6]

---

[6] Specifically, Count I alleges Defendants violated 18 U.S.C. § 1962(c) of the Racketeer Influenced and Corrupt Organizations Act ("RICO") through the "collection of unlawful debt" because all of the loans made to Virginia residents and collected by Defendants included an interest rate in excess of twice the enforceable rate in Virginia. Count II alleges Defendants violated 18 U.S.C. § 1962(d) of RICO by entering into a series of agreements to violate § 1962(c). Count III alleges Defendants violated Virginia usury laws by making loans to Virginia consumers using an interest rate greater than 12% in violation of Virginia Code § 6.2-303. Count IV alleges the choice of law and arbitration provisions in the lending agreements

4

Plaintiffs seek: (1) a declaratory judgment that the loan agreements are void and unenforceable; (2) injunctive relief ordering the defendants to divest themselves of any interest in the enterprise pled in the complaint, including the receipt of racketeering profits, prohibiting the defendants from continuing to engage in the enterprise, and ordering the dissolution of each defendant that has engaged in the enterprise; (3) compensatory damages; and, (4) costs and attorney's fees.

Plain Green filed a Motion to Dismiss without Leave to Amend or, in the Alternative, to Compel Arbitration. (ECF No. 26.) Great Plains filed three separate motions: (1) a Motion to Dismiss for Lack of Jurisdiction, (ECF No. 28); (2) a Motion to Compel Arbitration, (ECF No. 30); and, (3) a Motion to Transfer Case, (ECF No. 32). Defendants each moved to dismiss based on a claim of sovereign immunity under Rule 12(b)(1). (ECF Nos. 26, 28).

Plaintiffs filed the Motion for Discovery, seeking jurisdictional discovery on the issue of Defendants' claim of sovereign immunity. (ECF No. 34.) Defendants each opposed the Motion for Discovery. (ECF Nos. 43, 45.) The Court suspended briefing on Defendants' Motions to Dismiss pending its ruling on the Motion for Discovery. (ECF No. 42.) On May 9, 2018, Plaintiffs filed a Motion for Leave to File Supplemental Authority ("Plaintiffs' Motion to File Supplemental Authority"), (ECF No. 62) requesting leave to submit a recent court order in a case they allege is similar to the one at bar.[7]

On May 9, 2018, Great Plains filed the Motion to Stay based on a case development. (ECF No. 64.) Specifically, Great Plains has moved to consolidate and transfer this case in the Judicial Panel on Multidistrict Litigation ("JPML"). (ECF No. 64.) Great Plains seeks to

---

between Plaintiffs and Defendants are void and unenforceable as a matter of public policy. Count V alleges Defendants were unjustly enriched by their unlawful actions.

[7] The Court granted Plaintiffs' Motion to File Supplemental Authority.

consolidate three cases in a multi-district litigation ("MDL").[8] Great Plains requests a stay of these proceedings pending the JPML ruling on Defendants' pending Motion for Consolidation and Transfer filed in *In Re: Great Plains Lending, LLC Litigation*, MDL No. 2851. The JPML was scheduled to hear the motion on July 26, 2018. No MDL exists until the JPML rules on the Motion for Consolidation and Transfer. On June 13, 2018, Great Plains filed a Motion for Leave to File Supplemental Authority ("Great Plains's Motion to File Supplemental Authority"), (ECF No. 71), requesting leave to submit a recent court order granting a stay in one of the two other cases that is part of its JPML request.[9]

## II. Great Plains's Motion to Stay

### A. Legal Standard for a Motion to Stay Proceedings

The decision of whether to stay proceedings is entrusted to the discretion of the district court. *See Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936). "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Id.* at 254.

"The party seeking a stay must justify it by clear and convincing circumstances outweighing potential harm to the party against whom it is operative." *Williford v. Armstrong World Indus., Inc.*, 715 F.2d 124, 127 (4th Cir. 1983). "In considering a motion to stay, a district court must 'weigh competing interests and maintain an even balance.'" *Sehler v. Prospect Mortg., LLC*, No. 1:13-CV-473 (JCC/TRJ), 2013 WL 5184216, at *2 (E.D. Va. Sept. 16, 2013)

---

[8] In addition to this action, Great Plains seeks to consolidate and transfer two other cases: *Brice v. Rees*, No. 3:18-cv-1200 (N.D. Cal.); and *Granger v. Great Plains Lending, LLC*, No. 1:18-cv-112 (M.D.N.C.). Great Plains represents that each case concerns the legality of loans made by Great Plains.

[9] The Court granted Great Plains's Motion to File Supplemental Authority.

(quoting *Yearwood v. Johnson & Johnson*, Civil Action No. RDB-12-1374, 2012 WL 2520865, at *3 (D. Md. June 27, 2012)).

Specifically, a district court should consider three factors: "(1) the interests of judicial economy; (2) hardship and equity to the moving party if the action is not stayed; [and,] (3) potential prejudice to the non-moving party." *Buzzell v. JP Morgan Chase Bank*, No. 3:13-CV-668, 2015 WL 5254768, at *2 (E.D. Va. Sept. 9, 2015) (quoting *Meyers v. Bayer AG*, 143 F. Supp. 2d 1044, 1049 (E.D. Wis. 2001)).

### B. The Court Finds that Balancing the Interests at Stake Weighs Against Granting a Stay

Great Plains asserts that Plaintiffs provide "no sound basis to deny the requested stay." (Reply Mot. Stay 1, ECF No. 69.) Great Plains mischaracterizes the applicable standard: the burden is on Great Plains, the party requesting a stay, to show "clear and convincing circumstances" justifying it. *Williford*, 715 F.2d at 127. Because Great Plains fails to meet its burden, the Court denied the Motion to Stay.

#### 1. The Interest of Judicial Economy Does Not Justify a Stay

Because the district court can resolve preliminary matters while the JPML deliberates, general delays are "rarely ... advisable." *Weisman v. Se. Hotel Props. Ltd. P'ship*, No. 91 Civ. 6232, 1992 WL 131080 at *6 (S.D.N.Y. 1992) (quoting *Manual for Complex Litigation, Second* § 31.121 (1986)). Furthermore, the JPML has expressly stated: "the use of stay orders by the district courts, particularly in the area of discovery, is usually undesirable." *Sehler*, 2013 WL 5184216, at *2 (quoting *In re Penn Cent. Sec. Litig.*, 333 F.Supp. 382, 384 n.4 (J.P.M.L. 1971)). Great Plains fails to show clear or convincing circumstances showing that the interest of judicial economy justifies granting a stay.

Because Great Plains seeks to consolidate only three cases in the JPML, the risk of needless duplication of work and waste of judicial resources is low. In the context of the motions to consolidate and transfer actions before the JPML, Defendants' three pending actions pale in comparison to the typical number of actions consolidated to MDL. This Court need not make any conclusion regarding the likelihood that the JPML will grant Great Plains's Motion for Consolidation and Transfer to conclude that judicial resources would not be wasted if the case at bar is allowed to proceed. The exceptionally low volume of actions that Great Plains seeks to consolidate and transfer to an MDL by itself evinces a very low risk of duplicative work and judicial waste, even if the actions are ultimately consolidated and transferred. The usual concerns about judicial work duplicated across tens, hundreds, or even thousands of pending actions simply do not pertain to the case at bar.

Although denying a stay can risk waste, the opposite can also be true: *granting* a stay may waste judicial resources. *Hooker v. Sirius XM Radio, Inc.*, No. 4:13CV3, 2015 WL 10937407 at 3–4 (Sept. 25, 2015) ("Defendant asserts that not granting a stay would cause a 'waste of time,' but the Court concludes that granting the stay would likely be a greater waste of time."). Here, where parties have substantially briefed the Court on various issues and the Court has ruled on the Motion for Discovery, Great Plains falls well short of showing that a stay would serve the interest of judicial economy.

### 2. Potential Hardship to Great Plains Does Not Justify a Stay

With only three actions pending consolidation before the JPML, the potential hardship to Great Plains of having to defend multiple lawsuits across the country is minimal. The two other actions pending transfer to the proposed multi-district litigation pose especially small burdens on Defendants. As Great Plains informed the Court, the Northern District of California has ordered

a stay in *Brice v. Rees* pending the decision of the JPML. (Order Granting Mot. Stay 1, ECF No. 72-1.) The parties in *Granger v. Great Plains Lending* have agreed to a stay pending mediation. (Great Plains Reply Mot. Stay 4 (referring to No. 1:18-CV-112 (M.D.N.C.) (Orders Granting Joint Motion to Stay).) Great Plains's proferred evidence, therefore, actually weighs against granting a stay. Great Plains's concern that it will be burdened by the need to respond to litigation beyond the present action if a stay is not granted is largely unfounded.

More importantly, the potential inconvenience does not rise to the level of hardship that might justify a stay. *See Sehler*, 2013 WL 5184216 at *3. In *Sehler*, similar to the case at bar, the defendants requested a stay pending the JMPL's ruling on the defendants' motion to transfer and consolidate various pending actions across the country. *Id.* As part of the pending actions, the defendants had taken part in "over twenty Rule 26(f) conferences and been served with 'ten nearly identical sets of discovery.'" *Id.* at *3. Though the court recognized this "inconvenienced" the defendants, it ultimately denied the motion to stay. *Id.* at *3.

Indeed, the near-certainty of re-litigating complex matters does not alone justify a stay. *Williford*, 715 F.2d at 128. In *Willford*, the court found that even the foreseeable need to relitigate complex asbestosis claims across multiple courts at various times did not outweigh the plaintiff's right to a timely resolution of his case. *Id.* at 128. The potential burden on Great Plains is lower here than in *Williford* because fewer actions are pending.

Great Plains argues that subjecting a sovereign entity to "unnecessary and burdensome discovery" is an especially significant hardship that justifies granting a stay here. *See Crawford-El v. Britton*, 523 U.S. 574, 598 (1998) (analyzing the potential burden of discovery in the context of a claim of qualified immunity). Great Plains attempts to put the proverbial cart before the horse: Plaintiffs have accused Defendants of fraudulently presenting themselves as tribal

entities for the purpose of availing themselves of the protections of sovereign immunity. This distinguishes the case at hand from *Crawford-El*, where the officials' status was not in dispute. 523 U.S. 574.

Where, as here, the crux of the underlying controversy revolves around a challenge to Defendants' sovereign status, Great Plains's disputed claim of sovereign immunity neither clearly nor convincingly justifies a stay. In short, Defendants cannot invoke the protection of sovereign immunity when that very right to protection is contested. In a legally and factually analogous case, a court in this Division recently found that a lending company incorporated by a tribal entity was not entitled to sovereign immunity and subsequently denied the defendant lending company's motion to dismiss for lack of jurisdiction. *See* Order, *Williams et al. v. Big Picture Loans, LLC et al.*, No. 3:17-cv-461 (June 26, 2018). Great Plains has not presented circumstances that clearly and convincingly show an entitlement to the protection of sovereign immunity. The Court finds that the potential hardship imposed on Great Plains if a stay is denied is minimal and easily outweighed by both the interest of judicial economy and the potential prejudice to Plaintiffs if a stay is granted.

### 3.     A Stay May Substantially Prejudice Plaintiffs

Courts must consider the potential prejudice to the non-moving parties if a stay is granted. *Buzzell*, 2015 WL 5254768. Courts consider the length of the proposed delay, as well as potential for ongoing harm to the non-moving parties. *Sehler*, 2013 WL 5184216. Both factors weigh against granting a stay in the case at bar and Great Plain does not present clear or convincing evidence otherwise.

### a. Awaiting the JPML's Decision Risks Significant Delay

A non-moving party can suffer prejudice when a stay is reasonably expected to cause a significant delay in proceedings. *See Sehler*, 2013 WL 5184216 at *3 (finding a potential delay of four to six months to be "significant" and therefore prejudicial to the non-moving party); *see also Fisher v. United States*, No. CIV.A. 3:13-MC-08, 2013 WL 6074076, at *5 (E.D. Va. Nov. 18, 2013) (denying a motion to stay because the court could not estimate an exact period of delay and could not rule out the potential that the delay might be significant). Because the JPML has not ruled on the Motion for Consolidation and Transfer, no MDL currently exists for actions related to this case and no conditional transfer has been granted—both factors that weigh against granting a stay. *See, e.g., Sehler*, 2013 WL 5184216, at *4 (noting the increased risk of delay due to the fact that no conditional transfer of the case had been granted).

When courts *do* grant a stay, it is often early in litigation, to minimize prejudice to either party. *See Virginia ex rel. Integra Rec LLC v. Countrywide Sec. Corp.*, No. 3:14CV706, 2015 WL 222312, at *5 (E.D. Va. Jan. 14, 2015) ("[T]he . . . case [has] only just commenced . . . . As such, the Commonwealth can claim little prejudice regarding the progress . . . ."); *Pagliara v. Fed. Home Loan Morg. Corp.*, No. 1:6CV337, 2016 WL 2343921 at *3 (E.D. Va. May 4, 2016) (granting a motion to stay just six weeks into litigation).

In the present matter, the hearing before the JPML was scheduled to occur on July 26, 2018. Although Great Plains asserts that JPML decisions generally take only two weeks, this is pure speculation. Plaintiffs, on the other hand, contend that a JPML decision is "unlikely until months after the hearing." (Resp. Mot. Stay 7, ECF No. 67.) Great Plains's unsupported assertion that the JPML is likely to rule within two weeks does not suffice to show, clearly and convincingly, that a stay would not prejudice Plaintiffs.

11

Finally, this case has a longer history than either *Pagliara* or *Integra*. *Pagliara* was only six weeks into litigation, while the present case was filed over a year ago. *Pagliara*, 2016 WL 2343921 at *3. In *Integra*, no pretrial activity had commenced and the defendants moved to transfer the action to the JPML within a month of the action being removed to federal court. 2015 WL 222312, at *2. In contrast, multiple motions have been filed in this case and the parties have briefed this Court on various issues. Granting a stay would further delay a resolution in this case and could significantly delay proceedings, causing undue prejudice to Plaintiffs.

### b. Plaintiffs Allege Continuing Harm from Defendants' Actions

A plaintiff's plausible allegations of ongoing harm can weigh against granting a stay because of the potential for prejudice in such a circumstance. *See Yadkin Riverkeeper, Inc. v. Duke Energy Carolinas, LLC*, 141 F. Supp. 3d 428, 452 (M.D.N.C. 2015) (finding that the balance of factors weighed against a stay because a stay would allow the defendants to continue committing the alleged environmental violations that put the plaintiffs' health and safety at risk); *Henry v. N.C. Acupuncture Licensing Bd.*, No. 1:15CV831, 2017 WL 401234, at *9 (M.D.N.C. Jan. 30, 2017) (finding that the alleged threat of ongoing purported anticompetitive conduct by the defendant weighed against a stay).

Great Plains argues that the Court "cannot simply assume" that Plaintiffs will suffer harm from paying illegal loans because the legality of the loans is disputed. (Reply Mot. Stay 3.) The Court makes no such assumption. The Court considers the *potential* for prejudice to Plaintiffs. *Buzzell*, 2015 WL 5254768 at *2.

Here, Plaintiffs allege that Defendants have unlawfully collected more than $18.4 million dollars from May 2013 to October 2017. Plaintiffs allege loan interest rates as high as 448% in violation of Virginia state usury laws limiting the interest rate to 12%. Because "[c]ollection is

ongoing," a stay would force Plaintiffs to make payments on potentially unlawful loans for longer than they might otherwise. (Resp. Mot. Stay 5.) This factor weighs heavily against granting a stay.

### 4. The Court Denied the Motion to Stay

The Court has broad discretion to grant or deny a motion to stay. *Landis*, 299 U.S. 248. The burden is on Great Plains to show clear and convincing circumstances that justify a stay. *Williford*, 715 F.2d at 127. Great Plains fails to meet its burden. The Court concludes that Great Plains did not present circumstances showing that a stay would serve judicial economy given the low number of related actions and because of the progress this action has already made in this Court. The Court recognizes that Defendants may be inconvenienced by potentially duplicative litigation, but this potential inconvenience is outweighed by the other factors. The Court finds that the potential prejudice to Plaintiffs is high and weighs heavily against granting a stay. Great Plains does not present clear and convincing circumstances justifying a stay. Based on this balancing test, the Court denied the Motion to Stay.

## III. Plaintiffs' Motion to Permit Jurisdictional Discovery

### A. Legal Standard for a Motion to Permit Jurisdictional Discovery

Discovery under the Federal Rules of Civil Procedure is generous in scope and freely permitted, and district courts "have broad discretion in [their] resolution of discovery problems that arise in cases pending before [them]." *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 64 (4th Cir. 1993) (alterations in original) (quoting *In re Multi–Piece Rim Prods. Liab. Litig.*, 653 F.2d 671, 679 (D.C. Cir. 1981)). A district court does not abuse its discretion by denying jurisdictional discovery "[w]hen a plaintiff offers only speculation or conclusory assertions[.]" *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 402 (4th Cir. 2003); *see*

*also Base Metal Trading, Ltd v. OJSC "Novokuznetsky Aluminum Factory"*, 283 F.3d 208, 216 n.3 (4th Cir. 2002) (finding the district court did not abuse its discretion in denying jurisdictional discovery where "the plaintiff simply want[ed] to conduct a fishing expedition in the hopes of discovering some basis of jurisdiction"); *Reynolds & Reynolds Holdings, Inc. v. Data Supplies, Inc.*, 301 F. Supp. 2d 545, 554 (E.D. Va. 2004) ("The court does not abuse its discretion to deny jurisdictional discovery when the plaintiff raises only 'bare allegations' to dispute defendant's affidavits denying jurisdictional acts or contacts.").

Jurisdictional discovery can be appropriate when a plaintiff files a motion containing "specific and substantive" allegations regarding a court's jurisdiction, *see, e.g., Mamo v. BP P.L.C.*, No. 1:05cv1323, 2006 WL 572327, at *2 (E.D. Va. Mar. 7, 2006), or when "'significant gaps in the record' exist[]" regarding the court's jurisdiction over the defendant. *Weinstein v. Todd Marine Enters.*, 115 F. Supp. 2d 668, 676 (E.D. Va. 2000) (quoting *Coastal Video Commc'ns Corp. v. The Staywell Corp.*, 59 F. Supp. 2d 562, 571 (E.D. Va. 1999)).

### B. Plaintiffs Plead Specific and Substantive Allegations Challenging Defendants' Claim of Sovereign Immunity

Plaintiffs state specific and substantive allegations challenging Defendants' claimed status as a sovereign entity.[10] Plaintiffs assert that the Tribes received just a fraction of the profits made from Defendants' loans, citing an agreement between the Chippewa Cree Tribe and Think Finance, (ECF No. 35-1), and an internal Think Finance presentation, (ECF No. 35-5). Plaintiffs also argue that it is unlikely that Defendants provided jobs for members of the Tribes

---

[10] Great Plains expends considerable time arguing that the Court should disregard Plaintiffs' evidence because the evidence predates the time of filing. This argument in unsupported by existing case law, including the *Breakthrough* factors discussed below. *See, e.g., Breakthrough Management Group, Inc. v. Chukchansi Gold Casino and Resort*, 629 F.3d 1173, 1184 (10th Cir. 2010) (considering evidence of the tribal entity's formation, a necessarily past-looking inquiry).

14

based on Think Finance documents allegedly suggesting that Think Finance's control of operations. (ECF No. 35-7, 35-8.)

Plaintiffs also make specific and substantive allegations related to the management and control of Defendants' operations. Specifically, Plaintiffs claim Think Finance, rather than the Tribes, controlled Defendants' day-to-day operations. Plaintiffs assert that Think Finance controlled "application requirements, application processing timelines, the application rejection rules, when to resell loans, pricing and loan amounts, the states where loans would be offered, funding options, payment rules, and the fee waiver policy." (Reply Plain Green's Opp. Mot. Disc. 10, ECF No. 51.) Plaintiffs attach several other exhibits to substantiate their allegations. (ECF Nos. 35-1–35-8.)

Plaintiffs' allegations and supporting evidence raise legitimate questions about Defendants' claim to sovereign immunity, going beyond mere speculation or conclusory statements. *See Carefirst*, 334 F.3d at 402. Limited jurisdictional discovery is appropriate to clarify the true nature of the relationship between Defendants and the Tribes.

### C. Limited Jurisdictional Discovery Is Necessary to Resolve Defendants' Claim to Tribal Status

Plaintiffs and Defendants agree that the six factors discussed in *Breakthrough Management Group, Inc. v. Chukchansi Gold Casino and Resort* (the "*Breakthrough* factors") provide a proper framework to analyze whether an entity should be considered an arm of a tribe and share in its immunity. 629 F.3d 1173, 1184 (10th Cir. 2010). The *Breakthrough* factors include:

> (1) the method of creation of the economic entities; (2) their purpose; (3) their structure, ownership, and management, including the amount of control the tribe has over the entities; (4) the tribe's intent with respect to the sharing of its sovereign immunity . . . (5) the financial relationship between the tribe and the entities . . . [and, (6)] the policies underlying tribal sovereign immunity and its

15

connection to tribal economic development, and whether those policies are served by granting immunity to the economic entities.

*Id.* at 1187. The United States Court of Appeals for the Fourth Circuit—which has not addressed the issue—has not adopted this framework, but courts within this circuit have. *See, e.g., Everette v. Mitchem*, 146 F. Supp. 3d 720 (D. Md. 2015).

Plaintiffs request specific information and documents related to four out of the six *Breakthrough* factors. The information Plaintiffs request will be necessary for this Court to determine whether Defendants share in the Tribes' sovereign immunity. In fact, before denying the motion to dismiss based on sovereign immunity, the court in *Williams* ordered that jurisdictional discovery commence so it could properly decide the issue. *See* Order, *Williams et al. v. Big Picture Loans, LLC et al.*, No. 3:17-cv-461 (Sept. 1, 2017).

### 1. <u>Circumstances of Tribal Entity's Formation</u>

In order to determine whether Defendants can claim sovereign immunity, the Court will analyze the circumstances of Plain Green and Great Plains's formation as tribal entities. *See Breakthrough*, 629 F.3d at 1187, 1191–92. Although Plaintiffs have obtained some information showing that the Tribes did not initiate a business relationship with Rees or Think Finance, questions remain about Defendants' formation. Plaintiffs seek discovery regarding who initiated conversations with the Tribes, details as to the Tribes' involvement in drafting and negotiating contracts with non-tribal entities, whether tribal members were informed or voted on the decision to start the lending enterprises, and other relevant information.

### 2. Information Related to the Extent to Which Defendants Serve their Intended Purpose

The parties agree that resolving Defendants' assertion of sovereign immunity will require the Court to analyze the extent to which Defendants serve their intended purpose of financially

benefitting the Tribes and enabling them to engage in self-governance. *Id.* at 1192. Outside of the small percentage of Defendants' profits purportedly directed to the Tribes, there is very little evidence regarding the extent to which Defendants benefit the Tribes economically. Plaintiffs, therefore, request discovery as to the number of jobs Defendants have created for tribe members, specific policies in place to distribute revenue among tribe members, and which parties or individuals are most enriched by Defendants' lending practices.

### 3. Plaintiffs' Requests Concerning the Amount of Control Exercised by the Tribes Over the Lending Business Inform the Court's Decision

To decide whether Defendants properly claim sovereign immunity, the Court will analyze Defendants' "structure, ownership, and management, including the amount of control the Tribe[s] has over [Defendants]." *Breakthrough*, 629 F.3d at 1191. In *Finn v. Great Plains Lending, LLC*, the United States Court of Appeals for the Tenth Circuit noted that "the control factor examines the degree to which the tribe actually, not just nominally, directs the entity's activities . . . ." 689 F. App'x 608, 611 (10th Cir. 2017) (quoting *People ex rel. Owen v. Miami Nation Enters.*, 386 P.3d 357, 371 (Ca. 2016)). The Court will consider "not only the legal or organizational relationship between the tribe and the entity, but also the practical operation of the entity in relation to the tribe." *Id.* at 611.

Defendants claim that the Tribes fully control their day-to-day operations. Plaintiffs challenge this, alleging that Defendants' lending practice is primarily controlled and operated by third-party companies that report to Think Finance. As the Tenth Circuit found in *Finn*, which also involved Great Plains, "a more satisfactory showing regarding the actual workings of Great Plains and its financial relationship with the Tribe is necessary" to determine whether the tribal entities share in that tribe's sovereign immunity. *See Finn*, 689 F. App'x at 610–11. The same is true for Defendants here.

To resolve the parties' disputes regarding the tribal entities' structure, Plaintiffs request discovery regarding the Tribes' management and the degree of control the tribes exercise over Defendants.

### 4. Tribes' Financial Relationship with Defendants

A determination of Defendants' entitlement to sovereign immunity will require the Court to analyze the financial relationship between Defendants and the Tribes. *Breakthrough*, 629 F.3d at 1187. Similar to the aforementioned "purpose factor," this factor considers whether each of the Tribes "depend[s] . . . on [Defendants] for revenue to fund its governmental function, its support of tribal members, and its search for other economic development opportunities." *Id.* at 1195.

The degree to which a judgment against the tribal entities would affect the Tribes' assets also speaks to the financial relationship between the Tribes and Defendants. *People v. Miami Nation Enterprises*, 386 P.3d 357, 373 (2016) ("[I]f a judgment against the entity would significantly affect the tribal treasury, this factor will weigh in favor of immunity."). Plaintiffs reference documents submitted by Plain Green indicating that the Chippewa Cree Tribe is not liable for any judgment against Plain Green. Plaintiffs ask for discovery about any similar limitation on the Otoe-Missouria Tribe's liability for Great Plains.

### D. Granting Jurisdictional Discovery Will Not Undermine Principles of Sovereign Immunity in this Case

Although Defendants agree that the *Breakthrough* factors apply, they nevertheless argue that granting Plaintiffs' motion to permit jurisdictional discovery would undermine the principles of sovereign immunity. Defendants' reliance on a few cases for this proposition is misplaced: unlike the defendants in those cases, Defendants' sovereignty as arms of the tribes is seriously contested here. *See Simmons v. Corizon Health, Inc.*, 122 F. Supp. 3d 255, 272 (M.D.N.C. 2015)

18

(denying the plaintiffs' request for jurisdictional discovery "[i]n the absence of some reason to question" the defendant's sovereign immunity); *Everette*, 146 F. Supp. 3d at 723 ("[T]here is no evidence that tribes do not own and control MobiLoans and Riverbend, and permitting jurisdictional discovery would undermine the purposes of the sovereign immunity doctrine . . . ."); *White v. Univ. of Cal.*, 765 F.3d 1010, 1025 (9th Cir. 2014) (characterizing arguments against the Repatriation Committee's sovereign immunity as "only speculative"); *see also*, Order, *Williams et al. v. Big Picture Loans, LLC et al.*, No. 3:17-cv-461 (June 26, 2018) (denying a nominally-tribal-owned lending company's motion to dismiss for lack of jurisdiction based on a claim of sovereign immunity).

As stated in a similar case in this district, "Plain Green [and in the case at bar, Great Plains] is only entitled to tribal immunity if it is an 'arm of the tribe.' The method of analyzing that question cannot impose a judicial restraint on 'immunity' when the existence of immunity is conditioned on the outcome of that analysis in the first instance." *Howard v. Plain Green*, LLC, 2017 WL 3669565 (E.D. Va. 2017).

Plaintiffs' specific and substantive allegations against Defendants justify jurisdictional discovery to determine whether Defendants share in the Tribes' sovereign immunity. Limited jurisdictional discovery, therefore, will not undermine the principles of sovereign immunity.

### IV. Conclusion

For the foregoing reasons, the Court granted Plaintiffs' Motion to File Supplemental Authority and Great Plains's Motion to File Supplemental Authority. The Court denied the Motion to Stay and granted the Motion for Discovery. Because the jurisdictional discovery will likely affect the parties' briefings, the Court dismissed without prejudice Plain Green's Motion to
19

Dismiss, Great Plain's Motion to Dismiss, Great Plain's Motion to Compel Arbitration, and Great Plains's Motion to Transfer.

An appropriate Order issued.

/s/
M. Hannah Lauck
United States District Judge

Date: 7/27/18
Richmond, Virginia